SEAN CUNNINGHAM (Bar No. 174931)
sean.cunningham@us.dlapiper.com
ERIN P. GIBSON (Bar No. 229305)
erin.gibson@us.dlapiper.com
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401

BRENT K. YAMASHITA (Bar No. 206890)
Brent.Yamashita@us.dlapiper.com
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

HELENA D. KIEPURA (*pro hac vice forthcoming*)
helena.kiepura@us.dlapiper.com
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000

AMY LYDON (*pro hac vice forthcoming*)
Amy.Lydon@us.dlapiper.com
CLAIRE SCHUSTER (*pro hac vice forthcoming*)
claire.schuster@us.dlapiper.com
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100

**Attorneys for Plaintiff HEWLETT PACKARD ENTERPRISE COMPANY**

[*Additional Counsel Listed on Next Page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INSPUR GROUP CO., LTD., a Chinese Corporation; INSPUR ELECTRONIC INFORMATION INDUSTRY COMPANY, LTD., a Chinese company; AIVRES SYSTEMS INC., f/k/a INSPUR SYSTEMS, INC., a California corporation; BETAPEX INC., f/k/a INSPUR ASSET HOLDINGS, INC., a California corporation; INSPUR USA INC., a Washington corporation; and KAYTUS SINGAPORE PTE. LTD., a Singapore company.<br><br>Defendants. | Case No.  5:24-cv-2220<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

MICHAEL L. BURNS (*pro hac vice forthcoming*)
michael.burns@us.dlapiper.com
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301

STEPHANIE M. PIPER (*pro hac vice forthcoming*)
stephanie.piper@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone: (212) 335-4726
Facsimile: (212) 884-8526

AIMA MORI (*pro hac vice forthcoming*)
aima.mori@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
Telephone: (312) 251-5710
Facsimile: (312) 236-7516

MICHAEL SAULNIER (*pro hac vice forthcoming*)
Michael.saulnier@us.dlapiper.com
DLA PIPER LLP (US)
303 Colorado St., Suite 3000
Austin, TX 78701
Telephone: (512) 457-7234
Facsimile: (512) 721-2234

COMPLAINT FOR PATENT INFRINGEMENT
CASE NO. 5:24-CV-2220

Plaintiff Hewlett Packard Enterprise Company ("HPE"), for its Complaint against Defendants Inspur Group Co., Ltd. ("Inspur Group"); Inspur Electronic Information Industry Co., Ltd., also known as IEIT Systems Co., Ltd. or Inspur Information ("IEIT Systems"); Aivres Systems Inc., formerly known as Inspur Systems, Inc. ("Aivres"); Betapex Inc., formerly known as Inspur Asset Holdings, Inc. ("Betapex"); Inspur USA Inc. ("Inspur USA"), and KAYTUS Singapore Pte. Ltd. ("KAYTUS") (collectively the "Inspur Defendants"), alleges as follows:

## INTRODUCTION

1.      Plaintiff HPE is a global edge-to-cloud company that pioneers innovative technology to advance the way people live and work, including its industry-leading general-purpose servers, rack servers, high density servers, and AI servers. HPE devotes considerable time, effort, and money to develop its products and services and its robust patent portfolio, comprising 10,000 active patents, supports HPE's industry leading products and services, and also supports HPE's technology transfer, licensing, sales, and collaboration initiatives.

2.      The Inspur Defendants, a group of related companies comprising Inspur Group and its related entities, have been infringing and continue to infringe the HPE Asserted Patents without authorization to unfairly benefit from HPE's innovation and investment. HPE repeatedly sought a meeting with the Inspur Defendants to discuss their infringement of HPE's patents and Inspur's need for a license, but the Inspur Defendants refused to respond to or acknowledge HPE's calls and letters seeking a business solution to this dispute. Instead, the Inspur Defendants have continued to use HPE's patented technology to offer infringing products in the United States. On information and belief, the Inspur Defendants also have sought to conceal their infringing conduct, such as by removing Inspur branding from products sold in the United States. On information and belief, much of the Inspur Defendants' deceptive conduct has taken place in the wake of their placement on the Department of Commerce Bureau of Industry and Security Entity List, which "identifies entities for which there is reasonable cause to believe, based on specific and articulable facts, that the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States … ." Ex. 12 at 13673, 13680.

3.     The Inspur Defendants' infringing conduct has harmed HPE and will continue to harm HPE if their wrongful conduct is permitted to continue, including harm to HPE's business relationships, market standing, sales, and profits. HPE therefore brings this action to protect its business, its reputation, and its intellectual property rights from the harm caused by the Inspur Defendants' ongoing infringement.

## THE PARTIES

### A.     Plaintiff Hewlett Packard Enterprise Company

4.     Plaintiff HPE is a global technology leader focused on developing intelligent solutions that allow customers to capture, analyze, and act upon data seamlessly from edge to cloud. Formed in 2015 from the separation of Hewlett-Packard Company, HPE is a Delaware corporation having a regular and established place of business at 6280 America Center Dr., San Jose, California 95002.

5.     Founded in 1939 in a Palo Alto, California garage, HPE's predecessor Hewlett-Packard Company is regarded as the founder of Silicon Valley and the original Silicon Valley startup. That garage is now a museum and an official California Historic Landmark known as the "Birthplace of Silicon Valley." Propelled by its innovations, the company's products include its breakthrough audio oscillator, which was used by Walt Disney Studios in the making of the movie "Fantasia" and by the Naval Research Laboratories during World War II, the first ever hand-held scientific calculator, and the first mass-marketed personal inkjet printer.

6.     In 2015, Hewlett-Packard Company split into two new publicly traded companies: (a) Plaintiff HPE, comprised of Hewlett-Packard Company's enterprise technology infrastructure, software, and services business; and (b) HP Inc., comprised of Hewlett-Packard Company's personal systems and printing business. At launch and today, HPE has been an industry-leading company in software, infrastructure, services, and cloud, delivering leading IT solutions to customers in four critical areas: transforming to a hybrid infrastructure; protecting the digital enterprise; enabling workplace productivity; and empowering a data-driven organization. HPE now deploys an edge-to-cloud strategy that capitalizes on emergent megatrends and delivers a data-first modernization approach for customers, with innovative

solutions across connectivity, cloud, and data. Those solutions are delivered as-a-service through the HPE GreenLake edge-to-cloud platform across HPE's Intelligent Edge, Server, and Hybrid Cloud business segments.

7.      HPE's patent portfolio reflects the rich legacy of HPE's predecessor Hewlett-Packard Company and is foundational to modern computing platforms. With more than 10,000 active patents, HPE's patent portfolio supports HPE's wide-ranging products and industry leading technology and also supports HPE's diverse technology transfer, licensing, sales, and collaboration initiatives. HPE has invested and continues to invest so that it can remain on the cutting edge of innovation, with over $8 billion in R&D investment in the last five years alone.

8.      In addition to having been founded in this judicial district, HPE has a significant presence in this judicial district. For example, HPE has two major facilities in this District, one located in San Jose and another located in Milpitas. Between these two locations, HPE employs more than 2,500 people in this District.

**B.      The Inspur Defendants**

9.      On information and belief, Defendant Inspur Group is a corporation existing under the laws of China and having a principal place of business at 1036 Langchao Rd., City of Jinan, Shandong Province, China.

10.      On information and belief, Defendant IEIT Systems is a corporation existing under the laws of China and having a principal place of business at Building C, Number 2-1, Number 2 Shangdi Information Rd., Haldian District, Beijing, China. IEIT Systems operates under the name Inspur Electronic Information Industry Company, Ltd. and is also known as IEIT Systems and Inspur Information.

11.      On information and belief, Defendant Aivres is a corporation formed under the laws of the State of California, having the entity number C3815827 and a principal place of business at 1501 McCarthy Blvd., Milpitas, California. Aivres also operates a research and development technology center at 3347 Gateway Blvd., Fremont, California and an operations center at 615 North King Rd., San Jose, California.

/////

12.     On information and belief, Defendant Betapex is a corporation formed under the laws of the State of California, having the entity number C4172190 and a principal place of business at 1501 McCarthy Blvd., Milpitas, California.

13.     On information and belief, Defendant Inspur USA is a corporation formed under the laws of the State of Washington, having a principal place of business at 2010 156th Avenue Northeast, Suite 150, Bellevue, Washington.

14.     On information and belief, Defendant KAYTUS Singapore Pte. Ltd. is a company formed under the laws of Singapore, having a principal place of business at 150 Beach Rd., #14-05/08, Gateway West, Singapore 189720.

15.     On information and belief, the Inspur Defendants are a group of related companies that, each alone or working in concert, make, use, offer for sale, and sell in the United States, and/or import into the United States products that infringe the HPE Asserted Patents. On information and belief, Defendant IEIT Systems is one of three listed Chinese companies that comprise Defendant Inspur Group. On information and belief, Aivres, Betapex, and KAYTUS are wholly-owned and controlled indirect subsidiaries of IEIT Systems. On information and belief, Inspur USA is part of the Defendant Inspur Group and is a related company to IEIT Systems that is controlled by the same controlling shareholder as IEIT Systems.

## FACTUAL BACKGROUND

16.     This Complaint focuses on five HPE patents directed to various aspects of server technology (collectively "the HPE Asserted Patents").

17.     HPE is the current owner by assignment of right, title, and interest in and to U.S. Patent No. 8,218,566 ("the '566 Patent"), titled "Systems and methods for making serial ports of existing computers available over a network." The '566 Patent issued on July 10, 2012. The patent is generally directed to computer networks. A true and correct copy of the '566 Patent is attached as Exhibit 1.

18.     HPE is the current owner by assignment of right, title, and interest in and to U.S. Patent No. 7,634,671 ("the '671 Patent"), titled "Determining power consumption in IT networks." The '671 Patent issued on December 15, 2009. The patent is generally directed to

power consumption in IT networks. A true and correct copy of the '671 Patent is attached as Exhibit 2.

19.     HPE is the current owner by assignment of right, title, and interest in and to U.S. Patent No. 9,229,737 ("the '737 Patent"), titled "Method and system of emulating devices across selected communication pathways through a terminal session." The '737 Patent issued on January 5, 2016. The patent is generally directed to communications between computer systems. A true and correct copy of the '737 Patent is attached as Exhibit 3.

20.     HPE is the current owner by assignment of right, title, and interest in and to U.S. Patent No. 8,335,891 ("the '891 Patent"), titled "Method and system for configuring a storage array." The '891 Patent issued on December 18, 2012. The patent is generally directed to storage arrays. A true and correct copy of the '891 Patent is attached as Exhibit 4.

21.     HPE is the current owner by assignment of right, title, and interest in and to U.S. Patent No. 8,108,508 ("the '508 Patent"), titled "Web server chip for network manageability". The '508 Patent issued on January 31, 2012. The patent is generally directed to computer network management. A true and correct copy of the '508 Patent is attached as Exhibit 5.

22.     On information and belief, the Inspur Defendants, either alone or in concert, make, use, offer for sale, and sell in the United States, and/or import into the United States products (the "Accused Products") that infringe the HPE Asserted Patents. The Accused Products include servers, storage devices, networking devices, and software, such as the Inspur NF5280M5 server, the Aivres KR2280 server, the KAYTUS KR2280 server, the Inspur SAS3008 RAID Adapter, and the Inspur Physical Infrastructure Manager ("ISPIM") software.

23.     For example, the Inspur NF5280M5 server includes each and every limitation of exemplary claim 1 of the '737 Patent, either literally or under the doctrine of equivalents, each and every limitation of exemplary claim 1 of the '891 Patent, either literally or under the doctrine of equivalents, and each and every limitation of exemplary claim 1 of the '508 Patent, either literally or under the doctrine of equivalents. *See* Exs. 8-10 (Claim Charts).

24.     On information and belief, Inspur's NF5280M5 server product has been sold in the United States by Inspur Systems, Inc. as Model No. 5280M5. On information and belief, the

server product sold as Inspur's NF5280M5 and Inspur Systems, Inc.'s 5280M5 has been rebranded for sale in the United States by Aivres as KR2280-X1. *See* https://aivres.com/product/kr2280-x1/ (last accessed April 11, 2024). As shown in the table below, the technical specifications for these two server products are substantially the same.

25.     On information and belief, Aivres' KR2280-X1 server product was succeeded by a new generation server product, branded by Aivres as KR2280-X2. On information and belief and as shown in the table below, Aivres' KR2280-X2 product is identical to KAYTUS' KR2280V2 server product.

26.     On information and belief, Inspur's NF5280M5, Aivres' KR2280-X1, Aivres' KR2280-X2, and KAYTUS' KR2280V2 are all substantially the same, such that information for the NF5280M5 is sufficient to show how these server products infringe, the '737, '891, and '508 Patents, either literally or under the doctrine of equivalents. *See* Exs. 8-10; *see also* https://www.inspur.com/eportal/fileDir/defaultCurSite/resource/cms/2020/08/2020081414060 237143.pdf (last accessed April 11, 2024); https://aivres.com/product/kr2280-x1/) (last accessed April 11, 2024); https://aivres.com/product/kr2280-x2/ (last accessed April 11, 2024); https://www.kaytus.com/product/server/11366.html (last accessed Dec. 8, 2023).

| | *Inspur NF5280M5* | *Aivres KR2280-X1* | *Aivres KR2280-X2* | *KAYTUS KR2280V2* |
|---|---|---|---|---|
| **Image** |  |  |  |  |
| **Form Factor** | 2U 2-socket rack mounted server | 2U dual socket | 2U Rack | 2U Rack Server |
| **Processor** | Supporting Skylake/Cascade Lake Intel® Xeon® Scalable Processor 1/2 | 2 x Intel® Scalable 3rd Gen. Processors | 2X 4th Gen. Intel Xeon Scalable processors | Up to one or two 4th Gen Intel Xeon Scalable Processors |
| **Memory** | DDR4 Registered, LRDMM | 32 x DDR4 DIMM, Support RDIMM/LRDMM/BPS | Up to 32x DDR 5 DIMMs | Up to 32 DDR5 DIMMs |
| **RAID Card** | RAID 0, 1, 3, 10, 1E, 5, 50, 6, 60 | 1x Internal Mezzanine Card | 1x RAID mezzanine and/or 1x Mezz raid card | RAID/SAS controller |

27. As a further example, the Inspur NF5180M5 includes each and every limitation of exemplary claim 1 of the '566 Patent, either literally or under the doctrine of equivalents. *See* Ex. 6.

28. On information and belief, Inspur's NF5180M5 server product was sold in the United States by Inspur Systems, Inc. and Aivres as 5180M5. *See* https://aivres.com/product/5180m6/ (last accessed Dec. 7, 2023). On information and belief, Aivres' 5180M5 has been rebranded for sale in the United States and is now sold by Aivres as KR1280-X1. *Compare* https://aivres.com/product/5180m6/ (last accessed Dec. 7, 2023) *with* https://aivres.com/product/kr1280-x1/ (last accessed April 11, 2024). On information and belief, Aivres' KR1280-X1 product was succeeded by a new generation product, branded by Aivres as KR1280-X2. *See* https://aivres.com/product/kr1280-x2/ (last accessed April 11, 2024). On information and belief, Aivres' KR1280-X2 product is identical to KAYTUS' KR1280V2 product. *See* https://www.kaytus.com/product/server/11868.html (last accessed Dec. 14, 2024). Therefore, on information and belief, the specifications for the NF5180M5 contain information sufficient to show how the Aivres KR1280-X1, Aivres KR1280-X2, and KAYTUS KR1280V2 infringe, either literally or under the doctrine of equivalents, the '566 Patent. *See* Ex. 6.

29. Aivres and KAYTUS offer or have offered for sale, and sell or have sold, other server products in the United States which on information and belief have substantially the same components arranged in substantially the same way, and operate in substantially the same way, as the exemplary Inspur NF5280M5 and NF5180M5, including at least the following server products: KR1180V2, KR2180V2, KR1280V2, KR2280V2, KR1180V1, KR2180V1, KR1280V1, KR2280V1, KR2260V1, KR2460V2, KR4480V2, KR6680V2, KR2460V1, KR4480V1 (collectively the "Accused Server Products"). Upon information and belief, other servers sold under at least the Inspur brand name prior to the rebranding also comprise the "Accused Server Products," which is not limited to the exemplary server products listed herein.

30. The Inspur ISPIM software includes each and every limitation of exemplary claim 1 of the '671 Patent, either literally or under the doctrine of equivalents. *See* Ex. 7. On information and belief, Inspur's ISPIM software is provided to customers either upon the sale of

an Inspur, Aivres, or KAYTUS server product in the United States, or upon customer request. On information and belief and as shown below, Inspur's ISPIM software controls the operation and control of Inspur, Aivres, KAYTUS server products that are sold in the United States. On information and belief, Inspur's ISPIM software is also capable of controlling the operation and control of servers manufactured and sold by third parties.

31.     HPE made multiple attempts to meet with the Inspur Defendants regarding their infringement of HPE's patents, but has been unsuccessful in doing so. On August 11, 2021, HPE sought meetings with Inspur through the US and China Inspur "Contact Request" forms on the Inspur websites. HPE did not receive a response to either request. HPE thereafter sent a first letter to Mr. Leon Zheng, CEO of Inspur Systems, Inc., in Milpitas, California, on August 24, 2021. *See* Ex. 11. HPE followed that letter up with phone calls to Mr. Zheng that went to voice mail and, again, HPE received no response. On October 8, 2021, HPE sent a letter to Mr. Peng Zhen, Vice Chairman/President/CEO, and Mr. Wang Xun, Group Legal and Investment AGM, both of Inspur Electronic Information Co., Ltd. in Shandong, China. *See* Ex. 11. Again, HPE received no response. HPE sent another letter on February 4, 2022, addressed to Mr. Leon Zheng, CEO of Inspur Systems Inc. (now known as Aivres) and Jenny Liu, Inspur Systems Inc.'s agent for service of process in California, with a copy to Inspur's counsel of record in a then-pending district court case in Washington State. *See* Ex. 11. That letter identified exemplary Inspur products that infringe HPE's patents, including the HPE Asserted Patents. Yet again, HPE did not receive a response to its letter.

32.     The Inspur Defendants' actions have caused HPE harm and will cause further harm to HPE if the Inspur Defendants' actions continue. In addition, the Inspur Defendants' knowing acts of infringement will frustrate HPE's continued strong business relationships, contracts, and potential contracts, resulting in lost sales and profits, and otherwise are or will cause substantial harm to HPE's business.

33.     As a result of the Inspur Defendants' actions, HPE brings this action to protect its intellectual property and its reputation as a worldwide leader in the sale of general purpose servers, rack servers, high density servers, and AI servers.

**JURISDICTION AND VENUE**

34.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

35.     ***Defendant Inspur Group.*** This Court has personal jurisdiction over Defendant Inspur Group because Defendant Inspur Group has, directly or acting in concert with Defendants IEIT Systems, Aivres, Inspur USA, Betapex, and/or KAYTUS, committed acts giving rise to this action within California and within this judicial district, and/or has established minimum contacts with California such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

36.     Defendant Inspur Group has placed, and is continuing to place, infringing products into the stream of commerce via an established distribution channel and with the knowledge and/or understanding that such products are sold in California, including in this judicial district. This established distribution channel includes Defendants IEIT Systems, Aivres, Betapex, Inspur USA, and KAYTUS, each of which alone and/or working in concert with Defendant Inspur Group have placed infringing products into the stream of commerce.

37.     Defendant Inspur Group bills itself as "a leading cloud computing and big data service provider in China" whose "main business involved computing equipment, software, cloud computing services, new generation communication, big data and several application scenarios." *See* https://www.inspur.com/lcjtww/gylc32/2315125/index.html (last accessed April 11, 2024). On information and belief, Defendant Inspur Group "ships its IT products and services to more than 113 countries and regions around the world," including to the United States. *See* https://www.inspurusainc.com/inspur-history (last accessed April 11, 2024).

38.     On information and belief, Defendant Inspur Group holds three active trademarks in the United States that are registered with the USPTO. For example, Defendant Inspur Group is the assignee of the live registered word mark "Inspur," which is registered under U.S. registration number 3493975. The word mark appearing on the USPTO website appears below:

/////

inspur

39.     On information and belief, Defendant Inspur Group places and has placed Accused Products bearing this word mark into the stream of commerce in the United States, including in this judicial district. For example, on information and belief, as of at least March 29, 2023, the photo of the NF8480M6 server available for sale in the United States by Inspur Systems, Inc. (now known as Defendant Aivres) bore the same stylized Inspur word mark that is registered to Defendant Inspur Group. *See* https://web.archive.org/web/20230329074609/https://www.inspursystems.com/product/nf8480m6/ (last accessed April 11, 2024).





40.    On March 6, 2023, Defendant Inspur Group was added to the United States Department of Commerce Bureau of Industry and Security Entity List (the "Entity List"), which "identifies entities for which there is reasonable cause to believe, based on specific and articulable facts, that the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States … ." Ex. 12 at 13673, 13680. On information and belief, the placement of Defendant Inspur Group on the Entity List led to negative press coverage for Defendant Inspur Group.

41.    On information and belief, Defendant Inspur Group changed the name of at least one entity that places Accused Products into the stream of commerce in the United States and in this judicial district shortly after being placed on the Entity List, renaming Defendant Aivres from Inspur Systems, Inc. to Aivres Systems, Inc. on May 1, 2023. *See* Ex. 14. On information and belief, on or around June 4, 2023, the website for Inspur Systems, Inc. was taken down. *Compare* https://web.archive.org/web/20230604200933/https://www.inspursystems.com/ *with* https://web.archive.org/web/20230608151357/ https://www.inspursystems.com/ (last accessed April 11, 2024). On information and belief, on or around July 23, 2023, the website relaunched under the name and branding of Aivres Systems, Inc. *See* https://web.archive.org/web/ 20230723065058/https:/aivres.com/ (last accessed April 11, 2024).

42.    On information and belief, Defendant Inspur Group continues to place Accused Products into the stream of commerce in the United States, including in California and in this judicial district, but it no longer sells these products under the Inspur brand name due to the placement of Defendant Inspur Group on the Entity List. For example, on information and belief, the products sold by and through Defendant Aivres in the United States, including in California and this judicial district, are the same Inspur products manufactured and sold by Defendant Inspur Group. As one example, Defendant Inspur Group sells or has sold the IR5280M6, and Aivres sells or has sold the 5280M6, both of which have the same product designation except for the prefix "IR" on the Inspur product. On information and belief, the product photos depict the same product and the products have the same technical specifications.

*Compare* https://www.inspur.com/lcjtww/2593427/crhytj/2617136/index.html (last accessed April 11, 2024) *with* https://aivres.com/product/5280m6/ (last accessed Dec. 6, 2023). These Accused Products are available for purchase through Aivres in the United Sates, including in California and in this judicial district. *See* https://aivres.com/company; https://aivres.com/contact-us/ (last accessed Dec. 6, 2023).

43.    Due to Defendant Inspur Group's purposeful and voluntary placement of the Accused Products into the stream of commerce, with the intention and expectation that the Accused Products will be purchased and used by customers in United States as well as in the Northern District of California, the exercise of personal jurisdiction over Defendant Inspur Group is proper under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

44.    Venue is proper in this jurisdiction as to Defendant Inspur Group pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant Inspur Group is a foreign corporation that may be sued in any judicial district.

45.    ***Defendant IEIT Systems.*** This Court has personal jurisdiction over Defendant IEIT Systems because it has, directly or acting in concert with Defendants Inspur Group, Aivres, Inspur USA, Betapex, and/or KAYTUS, committed acts giving rise to this action within California and within this judicial district and/or has established minimum contacts with California such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

46.    On information and belief, Defendant IEIT Systems has at least three wholly-owned and controlled indirect subsidiaries with established regular places of business in this judicial district: Aivres, with established regular places of business in Fremont, San Jose, and Milpitas, California; and Betapex and KAYTUS, which also use the Aivres Milpitas, California location as a regular and established place of business. *See* Exs. 13, 14; *see also* https://web.archive.org/web/20231204152754/https://www.kaytus.com/about/contact/index.html (last accessed April 11, 2024).

/////

47.     On information and belief, Defendant IEIT Systems also has a regular and established place of business in this judicial district. According to its website, "IEIT SYSTEMS has four centers systems around the world," with one of these innovation centers being in "Silicon Valley." *See* https://en.ieisystem.com/ai-innovation-demo-center/index.html (last accessed April 11, 2024). On information and belief, Defendant IEIT System's Silicon Valley innovation center is operated out of the regular and established places of business of its subsidiaries, Defendants Aivres, Betapex and/or KAYTUS, that exist in this District.

48.     Defendant IEIT Systems has placed, and is continuing to place, infringing products into the stream of commerce, via an established distribution channel and with the knowledge and/or understanding that such products are sold in California, including in this judicial district. This established distribution channel includes Defendants Inspur Group, Aivres, Betapex, Inspur USA, and KAYTUS, each of which alone or working in concert with Defendant IEIT Systems have placed infringing products into the stream of commerce.

49.     On information and belief, Defendant IEIT Systems holds 21 active trademarks in the United States, registered with the USPTO. Defendant IEIT Systems' active U.S. trademarks include "IEIT" (Reg. No. 97883372 and Reg. No. 97883398), "IEITSYSTEMS" (Reg. No. 98089385), "IEIS" (Reg. No. 97836737), and "IEISYSTEM" (Reg No. 97836710 and Reg. No. 97836827).

50.     On information and belief, Defendant IEIT Systems sells the same products as Defendants Aivres and KAYTUS and is responsible, in whole or in part, for placing these products into the stream of commerce in the United States. These products include the Accused Products. For example, Defendant IEIT Systems sells the NF5180M6, and Defendant Aivres sells the 5180M6, both of which have the same product designation except for the prefix "NF" on the IEIT Systems product. On information and belief, the product photos depict the same product and the products have the same technical specifications. *Compare* https://en.ieisystem.com/product/server/8401.html (last accessed April 11, 2024) *with* https://aivres.com/product/5180m6/ (last accessed Dec. 7, 2023). These Accused Products are available for purchase through Defendant Aivres in the United States, including in California and in this

judicial district. *See* https://aivres.com/company; https://aivres.com/ contact-us/ (last accessed Dec. 6, 2023).

51.     On information and belief, Defendant IEIT Systems places Accused Products that are sold by Defendants Aivres and/or KAYTUS in the United States into the stream of commerce by importing them or causing them to be imported, in whole or in part, into the United States, including into this judicial district. *See* Ex. 15. For example, Defendant Aivres has received shipments of servers and server parts to its address at 615 N King Road in San Jose, California from shipper Shandong IEIT Systems Import Export, which on information and belief is a wholly-owned subsidiary of Defendant IEIT Systems. *See* Exs. 13, 15. The product descriptions for many of these systems shipments includes email addresses with the IEIT Systems domain name @ieisystem.com which, on information and belief, indicates the products originated with or were placed in the stream of commerce in the United States and in this judicial district by Defendant IEIT Systems. *See* Ex. 15.

52.     On information and belief, Defendant IEIT Systems has also purposefully availed itself of California and this judicial district by attending trade shows in San Jose, California. For example, in November 2021, Defendant IEIT Systems attended the 2021 OCP Global Summit, where it showcased the NF5180M6 server. *See* https://www.businesswire.com/news/home/20211109005818/en/Inspur-Information-Presents-How-it-is-Accelerating-Enterprise-Adoption-of-Fully-integrated-Open-Computing-Platforms-and-AI-Innovations-at-the-2021-OCP-Global-Summit (last accessed April 11, 2024). As another example, on information and belief, Defendant IEIT Systems attended the 2022 OCP Global Summit in October 2022 in San Jose, California, where it showcased the Inspur NF5180M6, NF5280A6, and NF5280R6 enterprise servers, as well as the high-density cloud-optimized system called Inspur NF8260M6. *See* https://insidehpc.com/ 2022/10/inspur-information-shows-open-compute-project-technology-at-2022-ocp-global-summit/ (last accessed April 11, 2024).

53.     Venue is proper in this jurisdiction as to Defendant IEIT Systems pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant IEIT Systems is a foreign company that may be sued in any judicial district.

54.   ***Defendant Aivres.*** This Court has personal jurisdiction over Defendant Aivres because it is a California corporation with a principal place of business at 615 North King Road in San Jose, California, which is in this judicial district. Aivres has availed itself of the laws of the State of California by incorporating in the State and by operating its headquarters in San Jose, California, which is within this judicial district and from which it conducts regular and systematic business activities, including those that give rise to its infringement of the HPE Asserted Patents.

55.   On information and belief, Defendant Aivres also has a regular and established place of business at 1501 McCarthy Boulevard in Milpitas, California, which is in this judicial district. Defendant Aivres has also availed itself of the laws of the State of California by operating this regular and established place of business from which it conducts regular and systemic business activities, including those that give rise to its infringement of the HPE Asserted Patents.

56.   On information and belief, Defendant Aivres is a wholly-owned indirect subsidiary of Defendant IEIT Systems and functions as the United States face of the Inspur conglomerate, including Defendants IEIT Systems, Inspur Group, and KAYTUS. According to California Secretary of State records, Defendant Aivres was known as Inspur Systems, Inc. until May 1, 2023. *See* Ex. 14.

57.   On information and belief, prior to its name change, Defendant Aivres publicly presented itself as "Inspur" rather than "Inspur Systems." For example, images from Google Maps Streetview from 2021 and 2022 show that its prior location on McCarthy Boulevard was branded with the same Inspur logo to which Defendant Inspur Group holds a trademark. *See* https://www.google.com/maps/@37.4077567,-121.9203101,3a,75y,239.15h,91.66t/data= !3m7!1e1!3m5!1s0GlxRyYEGZBzQ_SLneDrnQ!2e0!5s20210401T000000!7i16384!8i8192? entry=ttu; https://www.google.com/maps/@37.4078769,-121.9203493,3a,75y,239.15h, 91.66t/data=!3m7!1e1!3m5!1sFjxYsC_tsMhteykP28ihRg!2e0!6https:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fpanoid%3DFjxYsC_tsMhteykP28ihRg %26cb_client%3Dsearch.gws-prod.gps%26w%3D86%26h%3D86%26yaw%3D332.34406

%26pitch%3D0%26 thumbfov%3 D100!7i16384!8i8192? entry=ttu (last accessed April 11, 2024).

58.     The website of Inspur Systems Inc. (inspursystems.com) was publicly active from approximately 2016 until spring 2023 and portrayed Defendant Aivres as the United States face of the Inspur brand. For example, as of at least June 4, 2023, the inspursystems.com "About Us" page stated, "Inspur is a leading data center and cloud computing solutions provider, ranked among the world's top 3 server vendors." *See* https://web.archive.org/web/20230604204046/ https://www.inspursystems.com/company/ (last accessed April 11, 2024). The same page depicted a map of Inspur locations throughout the world, including China and the United States and including two locations in this judicial district, the "Milpitas Intelligent Factory, US" and the "Freemont Facility, US." *Id.*

59.     Further, as of at least June 4, 2023, the inspursystems.com "Support Center" page set forth the "Inspur Hardware Service & Warranty Policy," which stated, "Inspur warrants that all Inspur-branded hardware products shall provide a period of three (3) year warranty." *See* https://web.archive.org/web/20230604200614/https://www.inspursystems.com/support-center/; https://web.archive.org/web/20230329065433/https://www.inspursystems.com/support-center/ service-warranty/ (last accessed April 11, 2024). Customers of Inspur Systems, Inc. could obtain product support by emailing serversupportusa@inspur.com. *Id.*

60.     As of at least June 4, 2023, the inspursystems.com blog page entitled "Inspur Blog" contained numerous references to "Inspur Information," which was an alias of IEIT Systems. *See* https://web.archive.org/web/20230604195542/https://www.inspursystems.com/ blog/ (last accessed April 11, 2024); Ex. 13. For example, a blog article titled "2022 Year in Review" published on February 11, 2023 stated, "2022 for Inspur Information has been a year of relentless technological innovation...," and listed "Achievements and Milestones" including "Inspur expands open compute offerings with four newly certified OCP Inspired products— general-purpose enterprise servers NF5180M6, NF5280A6, NF5280R6, and the high-density cloud-optimized NF8260M6..." *See* https://web.archive.org/web/20230329071703/https://www. inspursystems.com/blog/2022-year-in-review (last accessed April 11, 2024).

61.     On information and belief, in Spring 2023, at or around the same time that the name and branding of Inspur Systems, Inc. was changed to Aivres, Defendant Inspur Group and related entities experienced negative press coverage related to Defendant Inspur Group's placement on the Entity List. *See* https://www.datacenterdynamics.com/en/news/us-government-blacklists-chinas-largest-server-maker-inspur-used-by-cisco-ibm-intel-nvidia/ (last accessed April 11, 2024); https://www.reuters.com/world/china/us-reviewing-chinas-inspur-group-entity-listing-2023-03-07/ (last accessed April 11, 2024); https://www.ft.com/content/cb5f9c59-b20f-447a-b288-a518e69948b7 (last accessed April 11, 2024); https://finance.yahoo.com/news/tech-war-china-listed-unit-093000271.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbVS8&guce_referrer_sig=AQAAALb_5z6xESpRbpdZfQGJZDMqe9yDC2X7LuVQFO4BnaisaiJm4BYSQLZq60CCfCR0p063I_fGBhjylz6LSyy6k6MhoIPsiG_qbrfkZ6Q5A2lBKi5v_mDq6GROvjXDQK-yqV144xq7x3JTKN0zlVRo4LfPs3XprOMp91mctYTG-Dak (last accessed April 11, 2024).

62.     On information and belief, Defendant Aivres has continued the same or substantially similar business activities as it did when it was publicly known as Inspur Systems, Inc. and likewise has maintained its role as a United States presence of Defendant IEIT Systems and/or Defendant Inspur Group despite removing public references to the Inspur name from its current website and product branding.

63.     Venue is proper in this jurisdiction as to Defendant Aivres pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because Defendant Aivres is incorporated in California with its principal place of business in San Jose, California and is thus a resident of this judicial district.

64.     ***Defendant Betapex.*** This Court has personal jurisdiction over Defendant Betapex because it is a California corporation with a principal place of business at 615 North King Road in San Jose, California, which is in this judicial district. Defendant Betapex has availed itself of the laws of the State of California by incorporating in the State and by operating its headquarters in San Jose, California, which is within this judicial district and from which it conducts regular and systematic business activities, including those that give rise to its infringement of the HPE Asserted Patents.

65.     On information and belief, Defendant Betapex is a wholly-owned indirect subsidiary of Defendant IEIT Systems and functions as a real estate investment company that owns facilities used by the Inspur conglomerate, including facilities in this judicial district, to conduct activities that infringe the HPE Asserted Patents, including manufacturing and sale of the Accused Products. *See* Ex. 13. Defendant Betapex owns the office complex at 1501 McCarthy Boulevard in Milpitas, California, which has been a regular and established place of business of Defendant Aivres and is also listed as the United States office of KAYTUS. *See* Ex. 16; https://web.archive.org/web/20231204152754/https://www.kaytus.com/about/contact/index.html (last accessed April 11, 2024).

66.     Defendant Betapex was known as Inspur Asset Holdings, Inc. until on or around September 18, 2023, when it registered a name change with the California Secretary of State. *See* Ex. 14. On information and belief, the name change was effected due to the placement of Defendant Inspur Group on the entity list and the negative press coverage that followed thereafter.

67.     Venue is proper in this jurisdiction as to Defendant Betapex pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because Defendant Betapex is incorporated in California with its principal place of business in San Jose, California and is thus a resident of this judicial district.

68.     ***Defendant Inspur USA.*** This Court has personal jurisdiction over Defendant Inspur USA because Defendant Inspur USA is registered as a foreign corporation in the State of California with a California office in this judicial district at 480 McCarthy Boulevard, Suite 150, Milpitas. *See* Ex. 14. Defendant Inspur USA has availed itself of the laws of the State of California by registering in this State and operating out of an office in this judicial district, where it conducts regular and systematic business activities, including those that give rise to its infringement of the HPE Asserted Patents. Accordingly, exercise of personal jurisdiction over Defendant Inspur USA would not offend traditional notions of fair play and substantial justice.

69.     On information and belief, Defendant Inspur USA is part of the Inspur Group and is a related company to Defendant IEIT Systems that is controlled by the same controlling shareholder as Defendant IEIT Systems. *See* https://www.inspurusainc.com/inspur-history (last

accessed April 11, 2024); *see also* Ex. 13 at 26, 138. Defendant Inspur USA's "Our History" page explains that "Inspur is a Global IT Solution Provider" and is the "No. 1 Server Manufacturer in China." *See* https://www.inspurusainc.com/inspur-history (last accessed April 11, 2024). Its homepage includes the same stylized Inspur logo to which Defendant Inspur Group holds a trademark. *See* https://www.inspurusainc.com/ (last accessed April 11, 2024).



70.    On information and belief, Defendant Inspur USA sells, offers for sale, and/or assists customers in the design, manufacture, and installation of Accused Products in the United States, including in this judicial district. For example, Defendant Inspur USA's "Service Offerings" include "Corporate IT and Data Center IT Infrastructure Solutions," which Defendant Inspur USA describes as "IT Physical Infrastructure Design, Specification and Implementation for Corporate IT, Data Center and Edge environments: From power distribution and cooling solutions to cabinet design and network connectivity specification." *See* https://www.inspurusainc.com/information-communication-technolog (last accessed April 11, 2024). As another example, "Inspur USA Inc offers hardware solution that [sic] tailored to your applications and budget, and our team assists you throughout the whole process: From Topology Design and Supply to On-site Installation and Configuration." *Id.* As a third example, Inspur USA offers "On-site and Remote Technical Support" and states that "[o]ur global footprint enables us to provide you with technical support where your organization needs it." *Id.* On information and belief, Defendant Inspur USA implements its corporate IT, data center, and edge environments using the Accused Products, which it sells to customers either on behalf of

or in concert with other Defendants, including Inspur Group, Aivres, and KAYTUS. *See* https://www.inspurusainc.com/inspur-history (last accessed April 11, 2024). On information and belief, Defendant Inspur USA's services include assembly and installation of the Accused Products as well as instruction of customers on their use. *See id.*; *see also* https://www. inspurusainc.com/information-communication-technolog (last accessed April 11, 2024).

71.     On information and belief, Defendant Inspur USA conducts its activities that infringe the HPE Asserted Patents, such as sale, offer for sale, assembly, manufacturing, configuration, and instruction for use of the Accused Products, from its location in this judicial district at 408 N. McCarthy Boulevard in Milpitas. In its 2022 filing with the California Secretary of State, Defendant Inspur USA identified the activities that took place at that location as "hardware manufacturing and IT consulting." *See* Ex. 14. On information and belief, the hardware manufacturing and IT consulting activities that Defendant Inspur USA conducts at its Milpitas location, which is a regular and established place of business in this District, are manufacturing and consulting activities that involve the Accused Products. *See* https://www.inspurusainc.com/inspur-history (last accessed April 11, 2024); *see also* https://www.inspurusainc.com/information-communication-technolog (last accessed April 11, 2024) .

72.     Venue is proper in this jurisdiction as to Defendant Inspur USA pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because Defendant Inspur USA has committed acts of infringement in this judicial district and has a regular and established place of business in this judicial district.

73.     ***Defendant KAYTUS***. This Court has personal jurisdiction over Defendant KAYTUS because Defendant KAYTUS has a regular and established place of business in this judicial district from which it sells Accused Products that infringe the HPE Asserted Patents. Defendant KAYTUS has also sold or offered for sale Accused Products in this judicial district by attending trade shows in this District. Accordingly, Defendant KAYTUS has availed itself of the laws of the State of California and has conducted infringing activities in this judicial district, /////

such that exercise of personal jurisdiction over Defendant KAYTUS would not offend traditional notions of fair play and substantial justice.

74.     Defendant KAYTUS sells server products, including rack and tower servers, multi-node servers, artificial intelligence servers, and edge computing servers, that on information and belief, infringe the Asserted Patents. *See* https://www.kaytus.com/product/index.html (last accessed Dec. 7, 2023). Defendant KAYTUS sells Accused Products in the United States through or in concert with Defendant Aivres, which "is the sole provider of KAYTUS products and solutions in the US." *See* https://aivres.com/company (last accessed Dec. 6, 2023). Defendant KAYTUS identifies the Aivres location at 1501 McCarthy Boulevard in Milpitas, California, which is in this judicial district, as its United States office. *See*  https://web.archive.org/web/20231204152754/https:/www.kaytus.com/about/contact/index.html (last accessed April 11, 2024). Accordingly, Defendant KAYTUS has committed acts of infringement within this judicial district.

75.     Defendant KAYTUS has also participated in trade shows in this judicial district where, on information and belief, it sold, offered for sale, and/or instructed customers on the use of Accused Products. For example, Defendant KAYTUS attended the 2023 OCP Global Summit in San Jose, California from October 17-19, 2023. *See* https://www.kaytus.com/about/events-list/index.html; https://www.kaytus.com/about/news/11047.html (last accessed April 11, 2024). On information and belief, Defendant KAYTUS gave at least two presentations at the 2023 OCP Global Summit in conjunction with Defendant Aivres, where Defendant KAYTUS discussed the Accused Products and gave instructions for their use. *See* https://www.youtube.com/watch?v=dAgPoCKjjOw; https://www.youtube.com/watch?v=PdKuV_3H6eE&t=18s (last accessed April 11, 2024).

76.     Venue is proper in this jurisdiction as to Defendant KAYTUS pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant KAYTUS is a foreign company that may be sued in any judicial district.

77.     Under California law, service on subsidiaries including Defendants Aivres, Betapex, and/or Inspur USA constitutes service on Defendants Inspur Group, IEIT Systems, and

KAYTUS, including because the alleged facts establish that there is a sufficiently close relationship among Defendants Aivres, Betapex, and/or Inspur USA and Defendants Inspur Group, IEIT Systems, and KAYTUS such that service upon Defendants Aivres, Betapex, and/or Inspur USA will provide actual notice to Defendants Inspur Group, IEIT Systems, and KAYTUS. In the alternative, under California law, personal service on the CEO of Defendant Inspur USA, who is also the Vice President of Defendant Inspur Group, constitutes service on Defendants Inspur Group and Inspur USA and personal service on the Vice President of Global Business of KAYTUS, who on information and belief is also the Vice President of Global Business of IEIT Systems, constitutes service on Defendant KAYTUS and Defendant IEIT Systems.  Cal. Civ. Proc. Code § 416.10(b); https://www.inspurusainc.com/aboutus.

### INTRADISTRICT ASSIGNMENT

78.     Under Civil L. R. 3-2(c), this action for patent infringement shall be assigned on a district-wide basis.

### FIRST CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 8,218,566)

79.     HPE realleges and incorporates by reference allegations stated in Paragraphs 1 through 78 of this Complaint.

80.     In violation of 35 U.S.C. § 271, the Inspur Defendants have infringed and are currently infringing one or more claims of the '566 Patent, including but not limited to claims 1 through 18, in this District and throughout the United States, directly and/or indirectly through third parties, by making using, selling, offering for sale, and/or importing into the United States, without authority, Accused Products that infringe the '566 Patent. The Inspur Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

81.     For example, the Accused Server Products contain each limitation of and infringe exemplary claim 1 of the '566 Patent, which recites:

A system for making serial ports of existing computers available over a network, comprising:

a serial controller for locally controlling at least one serial port of a networked computer; and

a management processor operatively associated with the networked computer and operable in both a first mode and a second mode, the management processor operating in the first mode to disable local control of the at least one serial port by the serial controller, the management processor taking control of the at least one serial port for network access in the first mode, and the management processor operating in the second mode to return control of the at least one serial port to the serial controller.

82.   The claimed invention in the '566 Patent improves operation and reliability of networks through a system for making serial ports of existing computers available over a network. Serial devices are still in broad use in the networking space and were typically accommodated by dedicated servers to interface between the device and the network. However, terminal servers are expensive and consume extra energy, network ports, and space on server racks. The invention is a system for making serial ports of existing computers available over a network. Benefits of the invention include improved network management, reduced energy requirements, fewer network ports, and less space on server racks.

83.   The Inspur Defendants infringe each limitation of claim 1 of the '566 Patent at least for the exemplary reasons set forth in the claim chart attached hereto as Exhibit 6, incorporated herein by reference. Exhibit 6 sets out exemplary evidence showing how the exemplary Inspur NF5180M5 infringes, and thus on information and belief all Accused Server Products, includes each limitation of claim 1 of the '566 Patent.

84.   The Inspur Defendants indirectly infringe the '516 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Server Products. These products, as provided by the Inspur Defendants to their customers and used as intended and instructed, infringe the '566 Patent. The Inspur Defendants sold and/or offered for sale one or more of the Accused Server Products, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Server Products in the United States in a manner that the Inspur Defendants know to be infringing.

85.   On information and belief, the Inspur Defendants have also contributed to and/or are contributing to the infringement of the '566 Patent under 35 U.S.C. § 271(c) by making, using, importing, offering for sale, and/or selling one or more of the Accused Server Products.

The Inspur Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patent system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, the Inspur Defendants actively and knowingly sell such products and provide customer support, installation and instruction materials, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, the Inspur Defendants' customers have used and continue to use such products in the United States in this manner and infringe the '566 Patent.

86.     ***Willful Infringement.*** The Inspur Defendants have had actual knowledge of the '566 Patent at least as of February 4, 2022. *See* Ex. 11.

87.     The Inspur Defendants have had actual knowledge of their infringement of the '566 Patent by at least the Inspur Defendants' NF5180M5 product since at least February 4, 2022. *See* Ex. 11.

88.     In view of the Inspur Defendants' knowledge of their infringement of the '566 Patent by at least their NF5180M5 product, the Inspur Defendants' continued infringement from at least February 4, 2022 has been intentional.

89.     For example, despite outreach from HPE seeking to inform the Inspur Defendants of their infringement of HPE's patents and discuss potential remedies, the Inspur Defendants refused to participate in any discussion with HPE while continuing to infringe by selling the Accused Server Products. This refusal to receive information related to its infringement constitutes egregious conduct by the Inspur Defendants and willful blindness to their own infringement, making this an exceptional case and justifying an award to HPE of increased damages under 35 U.S.C. § 284.

90.     As of the filing of this Complaint, the Inspur Defendants are not licensed or otherwise authorized to practice the claims of the '566 Patent.

91.     As a direct and proximate result of the Inspur Defendants' willful infringement of the '566 Patent, HPE has been and continues to be damaged in an amount yet to be determined.

## SECOND CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 7,634,671)

92.     HPE realleges and incorporates by reference allegations stated in Paragraphs 1 through 91 of this Complaint.

93.     In violation of 35 U.S.C. § 271, the Inspur Defendants have infringed and are currently infringing one or more claims of the '671 Patent, including but not limited to claim 1, in this District and throughout the United States, directly and/or indirectly through third parties, by making using, selling, offering for sale, and/or importing into the United States, without authority, the ISPIM software product. The Inspur Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

94.     For example, the ISPIM software product when used as intended and instructed by the Inspur Defendants, practice and infringe exemplary claim 1 of the '671 Patent, which recites:

A method of determining power consumption of a managed information technology (IT) network comprising network devices having a management-addressable address, the method comprising:

running an autodiscovery tool to discover the network devices of the managed IT network;

directing management requests to the management-addressable addresses of the network devices to obtain the electric power consumption values of the network devices;

centrally collecting the electric power consumption values returned by the network devices;

determining whether the collected power consumption value for one of the network devices is beyond a low value or beyond a high value; and

triggering an alarm if the collected power consumption value is beyond the low value or beyond the high value.

95.     The claimed invention in the '671 Patent allows for increased network and data center efficiency and stability by discovering and monitoring, in real time, network device power consumption and alerting monitors. The invention improves data center reliability as new network devices are integrated that make use of on-demand computing features which create larger variations in power that need to be tracked. Further, by utilizing real-time, automated,

remote monitoring, the invention ensures that changes in what network devices are connected to the network immediately factor into data center power consumption and management. The invention also reduces errors in power consumption calculations introduced by device failures.

96.     The Inspur Defendants infringe each limitation of claim 1 of the '671 Patent at least for the exemplary reasons set forth in the claim chart attached hereto as Exhibit 7, incorporated herein by reference. Exhibit 7 sets out exemplary evidence showing how the accused ISPIM software includes each limitation of claim 1 of the '671 Patent.

97.     On information and belief, the Inspur Defendants indirectly infringe the '671 Patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the ISPIM software product. This product, as provided by the Inspur Defendants to their customers and used as intended and instructed, infringe the '671 Patent. The Inspur Defendants sold and/or offered for sale one or more of the ISPIM software product, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the ISPIM software product in the United States in a manner that the Inspur Defendants know to be infringing.

98.     On information and belief, the Inspur Defendants have also contributed to and/or are contributing to the infringement of the '671 Patent under 35 U.S.C. § 271(c) by making, using, importing, offering for sale, and/or selling one or more of the ISPIM software product. The Inspur Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patent system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, the Inspur Defendants actively and knowingly sell such products and provide customer support, installation and instruction materials, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, the Inspur Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '671 Patent.

/////

99.   ***Willful Infringement.*** The Inspur Defendants have had actual knowledge of the '671 Patent at least as of February 4, 2022. *See* Ex. 11.

100.   The Inspur Defendants have had actual knowledge of their infringement of the '671 Patent by at least the Inspur Defendants' ISPIM software product since at least February 4, 2022. See Ex. 11.

101.   In view of the Inspur Defendants' knowledge of their infringement of the '671 Patent by at least their ISPIM software product, the Inspur Defendants' continued infringement from at least February 4, 2022 has been intentional.

102.   For example, despite outreach from HPE seeking to inform the Inspur Defendants of their infringement of HPE's patents and discuss potential remedies, the Inspur Defendants refused to participate in any discussion with HPE while continuing to infringe by selling the ISPIM software product. This refusal to receive information related to its infringement constitutes egregious conduct by the Inspur Defendants and willful blindness to their own infringement, making this an exceptional case and justifying an award to HPE of increased damages under 35 U.S.C. § 284.

103.   As of the filing of this Complaint, the Inspur Defendants are not licensed or otherwise authorized to practice the claims of the '671 Patent.

104.   As a direct and proximate result of the Inspur Defendants' willful infringement of the '671 Patent, HPE has been and continues to be damaged in an amount yet to be determined.

**THIRD CAUSE OF ACTION**

**(INFRINGEMENT OF U.S. PATENT NO. 9,229,737)**

105.   HPE realleges and incorporates by reference allegations stated in Paragraphs 1 through 104 of this Complaint.

106.   In violation of 35 U.S.C. § 271, the Inspur Defendants have infringed and are currently infringing one or more claims of the '737 Patent, including but not limited to claim 1, in this District and throughout the United States, directly and/or indirectly through third parties, by making using, selling, offering for sale, and/or importing into the United States, without

/////

authority, the Accused Server Products. The Inspur Defendants have infringed and are currently

infringing literally and/or under the doctrine of equivalents.

107.   For example, the Accused Server Products, when used as intended and instructed

by the Inspur Defendants, practice and infringe -exemplary claim 1 of the '737 Patent, which

recites:

A method comprising:

establishing a terminal session between a first computer system and a second computer system, the second computer system distinct from the first computer system, and the second computer system having a management processor with a plurality of communication pathways to a main processor of the second computer system;

configuring the management processor to send data regarding emulation of a first mass storage device of the first computer system across a first selected pathway of the plurality of communication pathways to the main processor, the configuring by way of the terminal session; and then

emulating, by the management processor, the first mass storage device across the first selected pathway.

108.   The claimed invention in the '737 Patent improves the ease of network

administration through a method of emulating devices across selected communications

pathways through a terminal session. Network administration has typically been done through

remote terminal sessions. Some administration duties, such as loading large programs or

operating systems, do not work well due to limited bandwidth between the device that

implements the terminal session and other components of the server computer system. The

invention helps solve those issues by utilizing device emulation during terminal sessions.

109.   The Inspur Defendants infringe each limitation of claim 1 of the '737 Patent at

least for the exemplary reasons set forth in the claim chart attached hereto as Exhibit 8,

incorporated herein by reference. Exhibit 8 sets out exemplary evidence showing how the

exemplary Inspur NF5280M5 infringes, and thus on information and belief all Accused Server

Products, includes each limitation of claim 1 of the '737 Patent.

110.   On information and belief, The Inspur Defendants indirectly infringe the '737

Patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell,

offer for sale, or import the Accused Server Products. These products, as provided by the Inspur

Defendants to their customers and used as intended and instructed, infringe the '737 Patent. The Inspur Defendants sold and/or offered for sale one or more of the Accused Server Products, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Server Products in the United States in a manner that the Inspur Defendants know to be infringing.

111.   On information and belief, the Inspur Defendants have also contributed to and/or are contributing to the infringement of the '737 Patent under 35 U.S.C. § 271(c) by making, using, importing, offering for sale, and/or selling one or more of the Accused Server Products. The Inspur Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patent system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, The Inspur Defendants actively and knowingly sell such products and provide customer support, installation and instruction materials, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, the Inspur Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '737 Patent.

112.   ***Willful Infringement.*** The Inspur Defendants have had actual knowledge of the '737 Patent at least as of February 4, 2022. *See* Ex. 11.

113.   The Inspur Defendants have had actual knowledge of their infringement of the '737 Patent by at least the Inspur Defendants' NF5180M5 product since at least February 4, 2022. *See* Ex. 11.

114.   In view of the Inspur Defendants' knowledge of their infringement of the '737 Patent by at least their NF5180M5 product, the Inspur Defendants' continued infringement from at least February 4, 2022 has been intentional.

115.   For example, despite outreach from HPE seeking to inform the Inspur Defendants of their infringement of HPE's patents and discuss potential remedies, the Inspur Defendants refused to participate in any discussion with HPE while continuing to infringe by selling the

Accused Server Products. This refusal to receive information related to its infringement constitutes egregious conduct by the Inspur Defendants and willful blindness to their own infringement, making this an exceptional case and justifying an award to HPE of increased damages under 35 U.S.C. § 284.

116. As of the filing of this Complaint, the Inspur Defendants are not licensed or otherwise authorized to practice the claims of the '737 Patent.

117. As a direct and proximate result of the Inspur Defendants' willful infringement of the '737 Patent, HPE has been and continues to be damaged in an amount yet to be determined.

**FOURTH CAUSE OF ACTION**

**(INFRINGEMENT OF U.S. PATENT NO. 8,335,891)**

118. HPE realleges and incorporates by reference allegations stated in Paragraphs 1 through 117 of this Complaint.

119. In violation of 35 U.S.C. § 271, the Inspur Defendants have infringed and are currently infringing one or more claims of the '891 Patent, including but not limited to claim 1, in this District and throughout the United States, directly and/or indirectly through third parties, by making using, selling, offering for sale, and/or importing into the United States, without authority, Accused Products that infringe the '891 Patent. The Inspur Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

120. For example, Accused Server Products contain each limitation of and infringe exemplary claim 1 of the '891 Patent, which recites:

A computer system, comprising:

an array controller configured to run an array configuration utility, the array configuration utility being configured to generate information corresponding to a menu of user options, receive user instructions corresponding to a user selection of a user option, and process a configuration task in response to the user selection; and

a processor configured to receive the information from the array controller and send the user instructions to the array controller.

121. The claimed invention in the '891 Patent is an improvement to systems for configuring storage arrays. Typical computer systems are limited in the amount of RAM that

can be utilized by configuration utilities. Further, more sophisticated configuration utilities with access to more RAM by operating in "protected mode" have issues with consistency across computing platforms. The invention is a system which overcomes the limitations of both systems by utilizing array controllers (and its associated more abundant RAM) to run configuration utilities.

122.   The Inspur Defendants infringe each limitation of claim 1 of the '891 Patent at least for the exemplary reasons set forth in the claim chart attached hereto as Exhibit 9, incorporated herein by reference. Exhibit 9 sets out exemplary evidence showing how the exemplary Inspur NF5280M5, and thus on information and belief all Accused Server Products, includes each limitation of claim 1 of the '891 Patent.

123.   On information and belief, the Inspur Defendants indirectly infringe the '891 Patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Server Products. These products, as provided by The Inspur Defendants to their customers and used as intended and instructed, infringe the '891 Patent. The Inspur Defendants sold and/or offered for sale one or more of the Accused Server Products, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Server Products in the United States in a manner that the Inspur Defendants know to be infringing.

124.   On information and belief, the Inspur Defendants have also contributed to and/or are contributing to the infringement of the '891 Patent under 35 U.S.C. § 271(c) by making, using, importing, offering for sale, and/or selling one or more of the Accused Server Products. The Inspur Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patent system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, the Inspur Defendants actively and knowingly sell such products and provide customer support, installation and instruction materials, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, the Inspur

Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '891 Patent.

125. ***Willful Infringement.*** The Inspur Defendants have had actual knowledge of the '891 Patent at least as of February 4, 2022. *See* Ex. 11.

126. The Inspur Defendants have had actual knowledge of their infringement of the '891 Patent by at least the Inspur Defendants' NF5280M5 product since at least February 4, 2022. *See* Ex. 11.

127. In view of the Inspur Defendants' knowledge of their infringement of the '891 Patent by at least their NF5280M5 product, the Inspur Defendants' continued infringement from at least February 4, 2022 has been intentional.

128. For example, despite outreach from HPE seeking to inform the Inspur Defendants of their infringement of HPE's patents and discuss potential remedies, the Inspur Defendants refused to participate in any discussion with HPE while continuing to infringe by selling the Accused Server Products. This refusal to receive information related to its infringement constitutes egregious conduct by the Inspur Defendants and willful blindness to their own infringement, making this an exceptional case and justifying an award to HPE of increased damages under 35 U.S.C. § 284.

129. As of the filing of this Complaint, the Inspur Defendants are not licensed or otherwise authorized to practice the claims of the '891 Patent.

130. As a direct and proximate result of the Inspur Defendants' willful infringement of the '891 Patent, HPE has been and continues to be damaged in an amount yet to be determined.

### FIFTH CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 8,108,508)

131. HPE realleges and incorporates by reference allegations stated in Paragraphs 1 through 130 of this Complaint.

132. In violation of 35 U.S.C. § 271, the Inspur Defendants have infringed one or more claims of the '508 Patent, including but not limited to claim 1, in this District and throughout the United States, directly and/or indirectly through third parties, by making using, selling,

offering for sale, and/or importing into the United States, without authority, the Accused Server Products. The Inspur Defendants have infringed literally and/or under the doctrine of equivalents.

133.   For example, the Accused Server Products contain each limitation of and infringe exemplary claim 1 of the '508 Patent, which recites:

A chip for incorporation within a network device connectable to a computer network, the network device including a host processor, the chip comprising:

a media access controller connectable to the computer network, the media access controller providing the chip with access to the computer network independent of the host processor;

a host interface connectable to the host processor; and

an embedded processor coupled between the host interface and the media access controller;

the embedded processor being programmable to function as a manageability web server, communicate with the host interface and obtain manageability information about the network device;

the embedded processor further being programmable to send the manageability information to the media access controller for transmission over the computer network;

whereby the chip performs network management functions independent of the host processor.

134.   The claimed invention in the '508 Patent improves operation and reliability of networks through improved web server chips for network devices. Typical network management systems would remotely access and use agents at managed resources to perform tasks which burdens the host processor's resources. Further, if a managed resource crashes, the agent could not be run to diagnose the issue and report back to the network manager because the agent utilizes the managed resource which is inoperable. The invention is a web server chip for a network device which can perform network management functions. Benefits of the invention include reduced network down time, improved response time to network problems, reduced network bottlenecks, and reduced operating costs.

135.   The Inspur Defendants' Accused Server Products infringed each limitation of claim 1 of the '508 Patent at least for the exemplary reasons set forth in the claim chart attached

hereto as Exhibit 10, incorporated herein by reference. Exhibit 10 sets out exemplary evidence showing how the exemplary Inspur NF5280M5 infringes, and thus on information and belief all Accused Server Products, includes each limitation of claim 1 of the '508 Patent.

136.   On information and belief, the Inspur Defendants indirectly infringed the '508 Patent under 35 U.S.C. §271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Server Products. These products, as provided by the Inspur Defendants to their customers and used as intended and instructed, infringed the '508 Patent. The Inspur Defendants sold and/or offered for sale one or more of the Accused Server Products to customers with the specific intent to actively encourage them to use one or more of the Accused Server Products in the United States in a manner that the Inspur Defendants know to be infringing.

137.   On information and belief, the Inspur Defendants have also contributed to the infringement of the '508 Patent under 35 U.S.C. § 271(c) by making, using, importing, offering for sale, and/or selling one or more of the Accused Server Products. The Inspur Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patent system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, the Inspur Defendants actively and knowingly sold such products and provided customer support, installation and instruction materials, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, the Inspur Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '508 Patent.

138.   ***Willful Infringement.*** The Inspur Defendants have had actual knowledge of the '508 Patent at least as of February 4, 2022. *See* Ex. 11.

139.   The Inspur Defendants have had actual knowledge of their infringement of the '508 Patent by at least the Inspur Defendants' NF5180M5 product since at least February 4, 2022. *See* Ex. 11.

140.   In view of the Inspur Defendants' knowledge of their infringement of the '508 Patent by at least their NF5180M5 product, the Inspur Defendants' continued infringement from at least February 4, 2022 was intentional.

141.   For example, despite outreach from HPE seeking to inform the Inspur Defendants of their infringement of HPE's patents and discuss potential remedies, the Inspur Defendants refused to participate in any discussion with HPE while continuing to infringe by selling the Accused Server Products. This refusal to receive information related to its infringement constitutes egregious conduct by the Inspur Defendants and willful blindness to their own infringement, making this an exceptional case and justifying an award to HPE of increased damages under 35 U.S.C. § 284.

142.   As of the filing of this Complaint, the Inspur Defendants are not licensed or otherwise authorized to practice the claims of the '508 Patent.

143.   As a direct and proximate result of the Inspur Defendants' willful infringement of the '508 Patent, HPE has been damaged in an amount yet to be determined.

### PRAYER FOR RELIEF

WHEREFORE, HPE prays that this Court enter judgment as follows:

144.   Adjudicating and declaring the Inspur Defendants have infringed and are infringing the HPE Asserted Patents;

145.   Adjudicating and declaring that the Inspur Defendants have induced and are inducing infringement of the HPE Asserted Patents;

146.   Adjudicating and declaring that the Inspur Defendants have contributed to and are contributing to infringement of the HPE Asserted Patents;

147.   Adjudicating and declaring that the infringement by the Inspur Defendants has been and is willful;

148.   Adjudicating and declaring that the HPE Asserted Patents are valid and enforceable;

149.   Permanently enjoining the Inspur Defendants, their officers, agents, servants, employees, attorneys and all persons in active concert or participation with the Inspur

Defendants from further infringement of the '566, '671, '737, and '891 Patents or, to the extent not so enjoined, ordering the Inspur Defendants to pay compulsory ongoing royalties for any continuing infringement of the '566, '671, '737, and '891 Patents;

150.   Ordering that the Inspur Defendants must account, and pay actual damages (but no less than a reasonable royalty), to HPE for the Inspur Defendants' infringement of the HPE Asserted Patents, including ordering that the Inspur Defendants must pay HPE the total profits realized by the Inspur Defendants from their infringement of the Asserted Patents pursuant to 35 U.S.C. § 289;

151.   Ordering that the Inspur Defendants pay HPE's costs, expenses, and interest, including prejudgment interest, as provided for by 35 U.S.C. § 284;

152.   Declaring that this is an exceptional case and awarding HPE its attorneys' fees and expenses as provided for by 35 U.S.C. § 285; and

153.   Granting HPE such other and further relief as the Court deems just and appropriate, or that HPE may be entitled to as a matter of law or equity.


Dated:  April 15, 2024                    DLA PIPER LLP (US)


                                          By: /s/ Sean C. Cunningham
                                              SEAN CUNNINGHAM
                                              ERIN P. GIBSON
                                              HELENA D. KIEPURA
                                              AMY LYDON
                                              MICHAEL L. BURNS
                                              CLAIRE SCHUSTER
                                              STEPHANIE M. PIPER
                                              AIMA MORI
                                              MICHAEL SAULNIER

                                          *Attorneys for Plaintiff*
                                          *HEWLETT PACKARD ENTERPRISE*
                                          *COMPANY*