ARTHUR J. BOBEL (CA Bar No. 251988)
*abobel@leydig.com*
GERALD T. GRAY (CA Bar No. 184567)
*ggray@leydig.com*
LEYDIG, VOIT & MAYER, LLP
The Atrium Building
1981 N. Broadway, Suite 375
Walnut Creek, CA 94596
Telephone:    (925) 482-0100
Facsimile:    (925) 482-0110

DAVID M. AIRAN (*pro hac vice application forthcoming*)
*dairan@leydig.com*
GREGORY C. BAYS (*admitted pro hac vice*)
*gbays@leydig.com*
AARON R. FEIGELSON (*admitted pro hac vice*)
*afeigelson@leydig.com*
LEONARD Z. HUA (*admitted pro hac vice*)
*lhua@leydig.com*
JAMES W. SANNER (*pro hac vice application forthcoming*)
*jsanner@leydig.com*
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601
Telephone:    (312) 616-5600
Facsimile:    (312) 616-5700

**Attorneys for Defendants**
**Aivres Systems Inc. and Betapex Inc.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>               Plaintiff,<br><br>    v.<br><br>INSPUR GROUP CO., LTD.; INSPUR ELECTRONIC INFORMATION INDUSTRY COMPANY; AIVRES SYSTEMS INC.; BETAPEX INC.; INSPUR USA INC.; and KAYTUS SINGAPORE PTE. LTD.,<br>               Defendants. | CASE NO. 4:24-cv-02220-JST<br><br>**DEFENDANTS AIVRES SYSTEMS INC. AND BETAPEX INC.'S REPLY BRIEF RE PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Date:        August 22, 2024<br>Time:        2:00 p.m.<br>Location:   Courtroom 6, 2nd Floor<br>Judge:     Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 1

    A.   The '671 Patent Claims Are Ineligible.......................................................... 1

        1.   *Alice* Step One: The '671 Patent Claims are Directed to Abstract Ideas ...................................................................... 1

        2.   *Alice* Step Two:  The Claims Do Not Contain an Inventive Concept ................................................................................... 4

        3.   The '671 Patent Dependent Claims Do Not Add Anything Inventive ................................................................................... 5

        4.   Plaintiff Fails to Identify an Actual Disputed Material Fact or Claim Construction Issue With Respect to the '671 Patent ....................................................................................... 6

    B.   The '891 Patent Claims Are Ineligible.......................................................... 7

        1.   *Alice* Step One:  The '891 Patent Claims Are Directed to an Abstract Idea ............................................................... 7

        2.   *Alice* Step Two:  The Claims Do Not Contain an Inventive Concept ................................................................................... 8

        3.   The '891 Patent Dependent Claims Recite Well-Known Computer Hardware and Software ............................................. 11

        4.   Plaintiff Fails To Identify An Actual Disputed Material Fact Or Claim Construction Issue With Respect to the '891 Patent ................................................................................... 11

    C.   The Complaint Fails to State a Claim Against Betapex............................... 12

AIVRES AND BETAPEX'S REPLY RE MOTION TO DISMISS
Case No. 4:24-cv-02220-JST

**CASES**

*Alarm.com Inc. v. ipDatatel, LLC,*
    383 F. Supp. 3d 719 (S.D. Tex. 2019) ...................................................................... 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ................................................................................... passim

*Ancora Techs, Inc.. v. HTC Am., Inc.,*
    908 F.3d 1343 (Fed. Cir. 2018) ............................................................................ 2

*Artrip v. Ball Corp.,*
    735 F. App'x 708 (Fed. Cir. 2018) ...................................................................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 12, 13

*Avocent Huntsville, LLC v. ZPE Sys., Inc.,*
    No. 3:17-CV-04319-WHO, 2018 WL 1411100 (N.D. Cal. Mar. 21, 2018) ........................... 10

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................................ 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................... 12, 13

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ............................................................................ 6

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.,*
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................. 13

*BSD Crown, LTD. v. Amazon.com, Inc.,*
    684 F. Supp. 3d 993 (N.D. Cal. 2023) ................................................................. 14

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) ......................................................................... 4, 6

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019) ..................................................................... 1, 7, 10

*Cooperative Ent. Inc. v. Kollective Tech., Inc.,*
    50 F.4th 127 (Fed. Cir. 2022) ........................................................................... 5, 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018) ............................................................................ 3

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ........................................................................... 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................................... 4

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ..................................................................... 10

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-CV-03733-JST, 2022 WL 20016849 (N.D. Cal. Aug. 25, 2022) ................. 2

*e.Digital Corp. v. iBaby Labs, Inc.*,
    No. 15-CV-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ................. 12

*Elec. Commc'n Techs., LLC v. Shopperschoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ........................................................................... 9

*Electric Power Gp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................................... 2

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................... 6

*Finjan, Inc. v. Blue Coat Sys.*,
    879 F.3d 1299 (Fed. Cir. 2018) ........................................................................... 2

*Golden v. Apple Inc.*,
    819 F. App'x 930 (Fed. Cir. 2020) ..................................................................... 12

*Immersion Corp. v. Fitbit, Inc.*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) ............................................................... 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ........................................................................... 2

*People.ai, Inc. v. SetSail Techs., Inc.*,
    No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021) .............. 13, 14

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
    203 F.3d 790 (Fed. Cir. 2000) ........................................................................... 12

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
    223 F. Supp. 3d 1026 (C.D. Cal. 2016) ......................................................... 10, 11

*RICMIC, LLC v. Salient Networks, Inc.*,
    No. 20-cv-2015-CAB-MDD, 2021 WL 1293835 (S.D. Cal. Apr. 7, 2021) ........... 2, 4

*Rosen Techs. LLC v. Lennox Int'l Inc.*,
    No. 3:22-CV-00732-K, 2023 WL 36074 (N.D. Tex. Jan. 4, 2023) ...................... 2, 4

*Scripps Rsch. Inst. v. Illumina, Inc.*,
   No. 16-CV-661 JLS (BGS), 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ........................... 12

*Synopsys, Inc. v. Siemens Indus. Software Inc.*,
   No. 20-CV-04151-WHO, 2023 WL 6385609 (N.D. Cal. Sept. 14, 2023) ............................. 6

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) ............................................................ 10

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ........................................................ 6, 8

*Yufa v. TSI Inc.*,
   No. CV 09-01315 KAW, 2012 WL 5818291 (N.D. Cal. Nov. 15, 2012) ............................... 12

## STATUTES

35 U.S.C. § 101 ............................................................................. 11

## RULES

Fed. R. Civ. P. 12(b)(6) ..................................................................... 13

I.      INTRODUCTION

The '671 patent is broadly directed to the abstract idea of determining power consumption and triggering an alarm, and the '891 patent is broadly directed to the abstract idea of receiving user selections from a menu of options and performing tasks in response to the user selections. Both patents claim the implementation of these abstract ideas on well-known and conventional computing devices, and there is nothing recited in the claims of either patent which limits these abstract ideas to a particular practical application or presents any technological innovation. Thus, the claims of both patents are directed towards ineligible subject matter.

Recognizing this, Plaintiff's opposition attempts to deflect attention away from the claim language and instead focuses on purported technical details from the specification. However, "when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus . . . because . . . the claim language [and not the specification] defines the breadth of each claim." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Unclaimed elements from the specification cannot save otherwise ineligible claims.

Additionally, with regard to Betapex, Plaintiff's opposition confuses unsupported legal conclusions with plausible statements of fact. The Complaint's perfunctory recitations as to Betapex's alleged infringement are devoid of any factual support for actual actions taken by Betapex and why such actions constitute infringement. Betapex should therefore be dismissed.

II.     ARGUMENT

A.      The '671 Patent Claims Are Ineligible

1.      *Alice* Step One: The '671 Patent Claims are Directed to Abstract Ideas

Plaintiff characterizes the subject matter of the '671 patent claims as "improv[ing] computer network power consumption" and as "technological improvements" in trying to show that the claims are not directed to an abstract idea. Dkt. 69 ("Opp. Br.") at 2:14–19, 6:19–20. However, Plaintiff ignores the claim language itself. This is not a surprise. The claims themselves do not provide any improvement whatsoever to the amount of power a computer network consumes. Instead, the claims are directed to a "method [computer system] of [for] *determining* [total electric] power consumption of a managed information technology (IT) network." '671 Patent at claims 1, 6. The only claimed step following the

-1-

determination of power consumption is the triggering of an alarm if levels are too low or too high. But no corrective action (e.g., taking corrective action to reduce power consumption) is taken based on the triggering of the alarm. This is fatal to Plaintiff's argument under *Alice* Step One. *Electric Power Gp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (the claims here "are clearly focused on the combination of those abstract-idea processes. The advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results [triggering an alarm], and not any particular assertedly inventive technology for performing those functions.").

The cases cited by Plaintiff are distinguishable in this regard. In nearly all of the relied-upon cases, the upheld claims were directed to more than just collecting and analyzing information, and instead included some subsequent action based upon the analysis. The courts consistently found this subsequent action to be significant in determining that the claims were not directed to abstract ideas. *Ancora Techs, Inc. v. HTC Am., Inc.,* 908 F.3d 1343, 1346 (Fed. Cir. 2018) (claims "acting on the program according to the verification"); *Finjan, Inc. v. Blue Coat Sys.,* 879 F.3d 1299, 1304 (Fed. Cir. 2018) (claim 1 "scans a downloadable and *attaches the virus scan results to the downloadable in the form of a newly generated file*"); *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1308 (Fed. Cir. 2016) (claims "generating an intermediate stream…; generating a final stream…; and *applying* said final stream…"); *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2022 WL 20016849, at *1, *3 (N.D. Cal. Aug. 25, 2022) (claims provision of "an interactive link" that is "capable of restoring a user's particular application operating state"); *RICMIC, LLC v. Salient Networks, Inc.,* No. 20-cv-2015-CAB-MDD, 2021 WL 1293835, at * 2 (S.D. Cal. Apr. 7, 2021) (claims a device "receptive to an alarm notification" and "automatically updated based upon the action status response"); *Rosen Techs. LLC v. Lennox Int'l Inc.*, No. 3:22-CV-00732-K, 2023 WL 36074, at *6 (N.D. Tex. Jan. 4, 2023) (distinguishing claim 9 from ineligible claims-1 and 18 because "the thermostat system can use current weather information . . . to determine *and act* . . . ").

In contrast, the only action required by the '671 patent claims based on the collected information is the triggering of a general alarm. No details are provided on the alarm's recipient, transmission medium, or reactive measures taken. Thus, while the power information collected and analyzed in the claims may be useful for the management of a computer network, the claimed invention does nothing to

actually improve the functioning of the network. The claims neither prescribe nor effectuate any remedial action based on the analysis. Ultimately, Plaintiff acknowledges that the '671 patent claims add only two actions to the steps of "collecting and analyzing data", namely, "autodiscovery of network devices and triggering an alarm." Opp. Br. at 8:24–27. Neither of these steps improve the computer system or network *itself*.

Plaintiff also cites *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 880 F.3d 1356, 1362 (Fed. Cir. 2018) as an example of "claims [that] are directed to a particular manner of summarizing and presenting information in electronic devices" that pass muster under Step One. However, Plaintiff ignores that the *Core Wireless* claims were "directed to an improved user interface" and had particular requirements for the user interface's operation. *Id.*

Plaintiff characterizes the '671 patent as addressing a "known computer problem" that prior art systems "did not monitor every device." Opp. Br. at 7:3–6, citing '671 patent at 2:5–14. Plaintiff's characterization fails on two levels. First, the cited passage of the '671 patent does not identify this supposed problem, but rather merely notes that "each power meter needs its own address in order to be queryable." '671 patent at 2:5–14. Second, the '671 patent—and more importantly, the *claims*—do nothing to solve this problem. A network device is no more queryable when the invention of the patent is employed: the preamble of the claims pre-supposes that these devices are already queryable by an address ("network devices *having a management-addressable address.*") and running an off-the-shelf auto-discovery tool will not discover devices that are not queryable. *Id.* at claim 1. Plaintiff's attempt to distinguish dependent claims 9–11 (Section IV.A.3) is instructive in this regard. To the extent these claims introduce a "novel data structure" (they do not) that somehow enables the solution to the supposed monitoring problem as Plaintiff argues, that "novel data structure" is notably *absent* from all of the other '671 patent claims. *Id.*; Opp. Br. at 11:3–12. Moreover, the "data structure" of claims 9–11 does not cure the abstract nature of even those claims. Those claims recite nodes of the data structure that "represent directories for management information including the collected electric power consumption values" and other nodes that "represent[] the network devices." *Id.* at claims 9–11. Thus, these claims do not relate to an improvement in computer systems or technology. Rather, they merely relate to the *type of information* stored in a standard relational database. *See, e.g.*, '671 patent at 7:24–25, 8:21–47.

This is not a patentable distinction under *Alice*. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287–88 (Fed. Cir. 2018) ("an improvement to the information stored by a database is not equivalent to an improvement in the database's functionality.")

## 2. *Alice* Step Two: The Claims Do Not Contain an Inventive Concept

Plaintiff continues to characterize the '671 patent as addressing a computer-specific problem in arguing Step Two of *Alice*. Again, the cases cited by Plaintiff are distinguishable. Unlike the claimed invention of *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), determining electric power consumption is not a problem exclusive to computers. For example, the background section of the '671 patent describes U.S. Patent No. 6,836,737, which is directed to electric power meters for monitoring household electricity-consuming devices. While these household power meters have transceivers to transmit power consumption information over a network, they otherwise have nothing to do with computers. '671 patent, 2:5–14.

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016) is also inapposite. There, the court accepted the patentee's representation that "the inventive concept harnesses [a] technical feature of network technology" to find that the claimed method was not, as a matter of law, "conventional or generic." *Id*. at 1350. The same cannot be said of the '671 patent claims, which recite running a conventional discovery tool, directing requests in a conventional manner, generically collecting data on power consumption, conventionally determining if power consumption is outside a range, and triggering a generic alarm.

The remaining cases cited by Plaintiff in support of Step Two's "inventive concept" are similarly unavailing. Plaintiff notes, for example, that the claims of *RICMIC*, 2021 WL 1293835 included "automatically updating devices." Opp. Br. at 10:23–25. However, the automatic updating in the *RICMIC* claims was based on an alarm response. 2021 WL 1293835, at *2. In contrast, the '671 patent claims do not automatically update any devices or do anything else based on an alarm, and thus do not improve the efficiency of any computer system. In *Rosen Techs, LLC*, the court upheld the patentability of claim 9 not because it was directed to "a specific improvement to a thermostat system," as Plaintiff argues (Opp. Br. at 10:26–11:1), but rather because it "recites *a particular way* of using current information received from a remote device to improve the functioning of the thermostat system." 2023

WL 36074, at *6 (emphasis added). Unlike *Rosen*, the '671 patent claims recite no particular way of using the power consumption information received from network devices to improve the functioning of the network. All that is claimed is the triggering of a generic alarm, presumably for a human to take whatever action they otherwise would. Thus, while the '671 patent claims automate the process of collecting and analyzing of power consumption values, any corrective action is still left to a person.

Plaintiff finally relies on *Alarm.com Inc. v. ipDatatel, LLC*, 383 F. Supp. 3d 719 (S.D. Tex. 2019) as supposedly upholding under Step Two a claim for a system that improved computer technology by reducing false alarms. Opp. Br. at 11:2–5. Again, Plaintiff misses the mark. In *Alarm.com*, the court made clear that "by automatically forwarding each homeowner's preferred notifications, *and not just sounding an alarm or contacting the homeowner or the police*, the invention lowers the high false-alarm rate of prior-art systems." *Id.* at 733 (emphasis added). The court continued, "The patent addressed the false-alarm rate in an unconventional manner because, as alleged, no existing system had used a similar notification scheme." *Id.* The '671 patent claims do precisely what the *Alarm.com* court distinguished: "just sounding an alarm," with no follow-up action, using routine, conventional processes and generic computer components. *Id.*

### 3. The '671 Patent Dependent Claims Do Not Add Anything Inventive

Plaintiff does not reasonably dispute that dependent claims 2–5 and 8 add any limitations that go beyond the generic functioning of networks and network devices. Instead, Plaintiff speculates that claim 2 "*may* require a nearly real-time measured value," without providing any basis in the claim itself or the '671 patent specification. Opp. Br. at 11:14–15. Plaintiff similarly gives no explanation for its assertion that claims 3–5 add anything unconventional to claim 1. *Id.* at 11:22–24.

As to claims 9–11, Plaintiff relies heavily on *Cooperative Ent. Inc. v. Kollective Tech., Inc.*, 50 F.4th 127 (Fed. Cir. 2022), which is easily distinguished. First, in *Cooperative Ent.*, the patent specification repeatedly touted the advantages of its "dynamic P2P network structure" over the prior art. *Id.* at 132. Second, Cooperative Ent. reiterated these benefits in the allegations of its complaint. *Id.* Neither of these important factors are present here. The '671 patent does not assert that its hierarchical data structure is anything other than a straightforward application of the extensible Internet hierarchy, as defined in industry standard RFC 1213. '671 patent at 13:27–32 ("As mentioned above, the Internet

registration tree is extensible in that it provides a node 'Enterprise' in which enterprises are enabled to customize the Internet registration tree according to their wishes.")  And unlike *Cooperative Ent.*, Plaintiff's Complaint fails to even mention the hierarchical data structure, let alone its supposed advantages or the shortcomings of the prior art.  Compl. ¶¶ 94–95.  Indeed, the Complaint only refers to claim 1 of the '671 patent, and fully ignores claims 9–11.  Moreover, as noted above, claims 9–11 relate to how information is organized in a database, and "do not recite any improvement to the way in which such databases store or organize information analogous to the self-referential table in *Enfish* or the adaptable memory caches in *Visual Memory*." *BSG Tech LLC*, 899 F.3d at 1287.

Because dependent claims 2–5 and 8–11 all recite routine, conventional processes and/or generic computer components incapable of transforming the claims of the '671 patent into something "significantly more" than the abstract idea to which they are directed, their fate rises and falls with the independent claims 1, 6 and 7.

### 4. Plaintiff Fails to Identify an Actual Disputed Material Fact or Claim Construction Issue With Respect to the '671 Patent

Plaintiff attempts to create a factual dispute on two issues: 1) whether the '671 patent describes or claims an improvement to a computer or network; and 2) whether claim 1 is representative of all the claims. Opp. Br. at 13.  But neither of these is a factual question, and Plaintiff cites no case to argue that they are.  Instead, Plaintiff's questions relate only to the content of the patent claims, specification and the complaint, which are legal questions.  *See, e.g., Synopsys, Inc. v. Siemens Indus. Software Inc.*, No. 20-CV-04151-WHO, 2023 WL 6385609, at *4 (N.D. Cal. Sept. 14, 2023) (agreeing that purported factual dispute was in fact a "legal question going to the scope of the claims").  Plaintiff does not (and cannot) argue, for example, that there are any disputed underlying facts, such as whether a particular technology is well-understood, routine, or conventional.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018).  Similarly, Plaintiff points to a hypothetical claim construction issue for a dependent claim, but makes no argument as to the relevance of such a construction to the *Alice* analysis.

In this case, Defendants' motion presents pure legal questions of patent eligibility that are ripe for adjudication by the Court without further fact-finding or claim construction.

**B.    The '891 Patent Claims Are Ineligible**

**1.    _Alice_ Step One:  The '891 Patent Claims Are Directed to an Abstract Idea**

As noted above, it is the claim language that defines the breadth of the claims, and as such, "when analyzing patent eligibility, reliance on the specification must always yield to the claim language." _ChargePoint, Inc. v. SemaConnect, Inc._, 920 F.3d 759, 766 (Fed. Cir. 2019).  However, aside from pointing to the words "array controller," Plaintiff's opposition noticeably avoids discussing the actual claim language of the '891 patent, and instead focuses solely on features from the specification that never made their way into the claim language.  Opp. Br. at 14-15.  Plaintiff attempts to imbue the generic recitation of an "array controller" with special significance should be rejected.  There is absolutely no structure or capability recited in the claim language that would distinguish the claimed "array controller" from any generic processor or controller.  The claim language recites only the abstract idea of receiving user selections from a menu of options and performing tasks in response to the user selections, and carrying out this abstract idea via a generic "array controller" having no specifically-claimed structure does not transform the idea to something non-abstract.

The only details recited in representative claim 1 regarding the "array controller" are that it is configured to run an array configuration utility which is able to "generate information corresponding to a menu of user options, receive user instructions corresponding to a user selection of a user option, and process a configuration task in response to the user selection."  _See_ Dkt. 54 (Mot.) at 15–16; '891 patent at claim 1.  Claim 1 does not further define the array configuration utility or the configuration task.  The processor of claim 1 is defined in a similarly generic way as being "configured to receive the information from the array controller and send the user instructions to the array controller." '891 patent at claim 1. Contrary to Plaintiff's arguments, there is nothing in the claims distinguishing the "array controller" from a "host" processor. '891 patent at claims 1–12; Opp. Br. at 3:4–11, 14:27–15:9.  Nor do the claims mention any of the other alleged technical features relied on by Plaintiff: neither start-up of the "host" processor nor availability of respective RAM and base memories is mentioned in the claims.  To the extent the '891 patent inventors came up with a solution to the alleged problem of running configuration utilities with a limited amount of RAM on a host processor during start-up, they failed to claim it.

1   Instead, what they claimed was simply the performance of generic menu operations via general-purpose
2   processors.

3       Plaintiff's comparison of the '891 patent claims to *Visual Memory* is inapt. Opp. Br. at 14:22–
4   24. In *Visual Memory*, the patent specification discussed a problem with prior art memory systems that
5   "lacked versatility because they were designed and optimized based on the specific type of processor
6   selected for use in that system." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1255 (Fed Cir.
7   2017). The patent purported "to overcome these deficiencies by creating a memory system with
8   programmable operational characteristics that can be tailored for use with multiple different processors
9   without the accompanying reduction in performance." *Id.* More specifically, the Federal Circuit
10  characterized the alleged technical improvement offered by the patent to be "the use of programmable
11  operational characteristics that are configurable based on the type of processor." *Id.* at 1259–60. The
12  Federal Circuit found that the claim language explicitly recited this improvement: "Even the broadest
13  claim, claim 1, requires a memory system with a main memory and a cache memory, where the memory
14  system is configured by a computer to store a type of data in the cache memory *based on the type of*
15  *processor connected to the memory system.*" *Id.* at 1260 (emphasis added). In contrast, as discussed
16  above, the '891 patent claims neglect to claim any alleged improvement in running an array configuration
17  utility. Unlike *Visual Memory*, the '891 patent claims conspicuously fail to recite any memory at all
18  other than in dependent claim 8, which generically recites "a memory accessible to the processor and the
19  remote management controller." '891 patent at claims 1–12.

20      Because the 'claims fail to set forth the alleged technical improvement of the '891 patent and
21  instead recite only abstract menu functionality, the claims of the '891 patent fail the first step of the *Alice*
22  test.

23          **2.    *Alice* Step Two:  The Claims Do Not Contain an Inventive Concept**

24      With respect to *Alice* Step Two, Plaintiff again focuses on unclaimed features. Plaintiff's
25  argument mentions an embedded microprocessor that the specification says the array controller *may*
26  have. Opp. at 15–16 ("The array controller 112 may include an embedded microprocessor. . . ").
27  Plaintiff further vaguely refers to the "embedded structure" of the array controller and "host memory
28  deficiency during startup." *Id.* at 16–17. None of these things are in the claims. The sole structure

-8-

1  identified by Plaintiff as conferring inventiveness that is actually found in the claim language is, again,

2  the generic array controller, defined only in the claims with respect to performing the abstract menu

3  functionality of the "array configuration utility." '891 patent at claims 1–2.

4  Controllers are ubiquitous in computer systems, as are processors and configuration utilities.

5  Inventiveness cannot be premised entirely on the modifier "array" as the claims otherwise recite only

6  the abstract idea as performed by conventional computer components. *See Elec. Commc'n Techs., LLC*

7  *v. Shopperschoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020) (holding claim "specified at a high

8  level of generality" that "merely invokes well-understood, routine, conventional components and activity

9  to apply the abstract idea" did not include an inventive concept); *Customedia Techs., LLC v. Dish

10  Network Corp.*, 951 F.3d 1359, 1364–66 (Fed. Cir. 2020) (recitation of "generic and functional hardware

11  is insufficient to render eligible claims directed to an abstract idea.")

12  Plaintiff argues that the recited "array controller" in combination with the recited "processor"

13  presents "a new and useful arrangement of known components," and then goes on to cite a string of cases

14  that allegedly support this proposition. Opp. Br. at 15-16. However, none of the cases cited by Plaintiff

15  even comes close to supporting the proposition that taking well-known menu functionality and

16  distributing it across two generic processing units constitutes patent-eligible subject matter. In

17  *Immersion Corp.* one of the claims at issue was directed to "provid[ing] haptic feedback to communicate

18  that one of several predetermined user-independent events has occurred." *Immersion Corp. v. Fitbit,

19  Inc.*, 313 F. Supp. 3d 1005, 1023 (N.D. Cal. 2018). Further, "the claim clearly focuses on a tangible,

20  non-abstract device as the invention which, through the allegedly unconventional combination of

21  components, contains the new and useful feature of notifying the device's user of independent events

22  through vibration." *Id.* In contrast to the claim in *Immersion Corp.*, the '891 patent claims do not provide

23  a tangible non-abstract device as an invention. Moreover, the Court in *Immersion Corp.* found invalid

24  numerous other claims that followed "a conventional order of how data is usually analyzed: data is first

25  received, then processed, and then signals are outputted as a result." *Id.* at 1025–31. The claims held to

26  be abstract in *Immersion Corp.* are more analogous to the '891 patent claims than the claim to the

27  tangible, non-abstract haptic-feedback device.

28

In *Avocent Huntsville* the claims were directed to "specific structures," and "the physical components do more than provide a generic environment in which to carry out an abstract idea." *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-CV-04319-WHO, 2018 WL 1411100, at *7 (N.D. Cal. Mar. 21, 2018) (internal citations omitted). As discussed above, the claims of the '891 patent instead merely provide a generic environment (array controller and processor) in which to carry out an abstract idea (menu functionality). Furthermore, the *Avocent Huntsville* court relied on the specification as "teach[ing] how the claims enhance conventional systems" to provide an inventive "improvement" (*id.* at *7), but subsequent case law makes clear that "the specification cannot be used to import details . . . if those details are not claimed." *ChargePoint*, 920 F.3d at 766, 769–70. Indeed, "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *Id.* at 769; *see also Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) ("The patent has to describe *how* to solve the problem in a manner that encompasses something more than the 'principle in the abstract'. . . . And, that solution has to be evident from the claims.") (internal citations omitted); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019) ("Eligibility depends on what is claimed, not all that is disclosed in the specification.")

Likewise, in *Polaris Innovations* "the hardware configuration itself is the unique focus of the patent." *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, 223 F. Supp. 3d 1026, 1034 (C.D. Cal. 2016). The claims in *Polaris Innovations* recited particular physical arrangements of components (e.g, "an electronic printed circuit board having a contact strip for insertion into another electronic unit"). *Id.* at 1031–32. The claims here do not: rather, they are directed to the abstract idea of receiving user selections from a menu and performing tasks based on that input, using nothing more than ordinary computer components. To the extent the claims use the term "configured," such "configuration" is not one of hardware, as in *Polaris Innovations*, but of software: there is no language in the claims reciting, for example, orientation of components on a circuit board, and no discussion of particular physical attributes of the generic components, such as a "contact strip" or relative dimensions, as were present in

the claims in *Polaris Innovations*. *Id.*; '891 patent at claims 1–12.  Thus, the cases cited by Plaintiff do not support the patent-eligibility of the '891 patent claims.

Accordingly, the claims of the '891 patent also fail the second part of the *Alice* test.

### 3.     The '891 Patent Dependent Claims Recite Well-Known Computer Hardware and Software

Plaintiff argues that claim 1 is not representative of the other claims of the '891 patent, but tellingly offers only conclusory assertions to the contrary.  *See* Opp. Br. at 17–18.  There is simply nothing of significance recited in any of these other claims, as they add only well-known hardware and software elements recited at a high level of generality.  *See, e.g.*, '891patent at cl. 2 ("real mode"); cl. 3 ("a central processing unit"); cl. 4 ("plurality of hard disk drives"); cl. 5 ("(RAID) array"); cl. 6 ("[PCIe] bus"); cl. 7 ("remote management controller," "remote computer" and "a network"); cl. 8 ("a memory"); cl. 9 (analogous to claim 1); cl. 10 ("perform an array configuration task"); cl. 11 ("save a new configuration setting"); cl. 12 ("send the information to a monitor").  And again, in Plaintiff's characterizations of these claims, Plaintiff points to purported limitations (such as claim 6 allegedly requiring a "host") that do not actually exist.  *See* Opp. Br. at 18.

### 4.     Plaintiff Fails To Identify An Actual Disputed Material Fact Or Claim Construction Issue With Respect to the '891 Patent

Plaintiff finally argues that disputed material facts and claim construction issues involving the '891 patent preclude resolution of the Section 101 issues at the pleading stage.  As a dispute issue of material fact, Plaintiff only identifies whether the claimed array controller is novel.  Yet, Plaintiff again fails to identify any language in the claim that would make the claimed array controller novel, focusing instead on statements in the specification which were not carried over to the claims.  However, the generic array controller performing generic menu functions cannot plausibly convey novelty, and Plaintiff's conclusory assertion that novelty exists does not create a disputed factual issue.

Plaintiff also urges delaying resolution of the Section 101 challenge until after claim construction, but Plaintiff's argument fails to identify any claim limitation that actually requires construction by the Court.  Although Plaintiff vaguely mentions the "array controller," Plaintiff does not assert that this term requires a construction other than its plain and ordinary meaning.  *Id.* at 17–18.  And although Plaintiff

also alludes to the "separate" natures of the array controller and the processor *maybe* being a claim construction issue, it simply does not matter. *Id.* Whether the controller is part of the processor or whether a controller is used in addition to the processor, the claim still recites nothing more than generic menu functions performed by generic computing element(s). The question of the '891 patent claims' ineligibility is ripe.

### C. The Complaint Fails to State a Claim Against Betapex

Plaintiff does not meaningfully contest that the Complaint recites only high-level, generic allegations concerning Betapex. Opp. 19–22. Plaintiff instead relies on authorities such as *Phonometrics* and *Yufa* (which itself relies on *Phonometrics*) that predate the Supreme Court's 2015 abrogation of Form 18, under which courts embraced less stringent pleading standards for patent infringement. Opp. Br. at 19–20, citing *Yufa v. TSI Inc.*, No. CV 09-01315 KAW, 2012 WL 5818291, at *3 (N.D. Cal. Nov. 15, 2012) (involving a complaint filed by a *pro se* plaintiff); *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 793–94 (Fed. Cir. 2000). As this Court has previously confirmed, however, the Form 18-based pleading standard "no longer controls" and thus "allegations of direct infringement are now subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a plausible claim for relief." *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) (internal citations and quotation marks omitted); *Golden v. Apple Inc.*, 819 F. App'x 930, 930–31 (Fed. Cir. 2020). Accordingly, "pre-*Twombly* cases," such as *Phonometrics*, "do not control the Court's analysis under the *Twombly* pleading standard." *e.Digital* at *4; *see also Scripps Rsch. Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *5 n. 4 (S.D. Cal. Nov. 21, 2016) ("[T]he Court finds that Plaintiff's reliance on *Phonometrics* . . . is misplaced, since that case predates the abrogation of Form 18."). Plaintiff's claims against Betapex cannot survive under the controlling *Twombly*/*Iqbal* standard.

*First*, with respect to direct infringement, Plaintiff's response attempts to map various allegations in the Complaint to show that it has pleaded "(1) ownership of the patent, (2) the infringer's name, (3) a citation to the infringed patent, (4) the infringing activity, and (5) citations to federal patent law," Opp. Br. at 19–20. The Complaint alleges, for example, that "Defendant Betapex . . . functions as a real estate investment company that owns facilities used by the Inspur conglomerate, including facilities in this

judicial district, to conduct activities that infringe the HPE Asserted Patents, including manufacturing and sale of the Accused Products." Compl. ¶ 65. Betapex denies these allegations, which appear to be based on Exhibit 13 to the Complaint. Compl. Ex. 13 at 125. "In ruling on a 12(b)(6) motion . . . the Court is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.,* 149 F. Supp. 3d 1167, 1171 (N.D. Cal. 2015) (internal citation and quotation marks omitted). The statements in Exhibit 13 that identify "*[s]erver* manufacturing" and "real estate management" as activities of "Inspur Asset Holdings, Inc." (Compl. Ex. 13 (emphasis added)), if taken as true, do not constitute "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *i.e.*, "manufacturing and sale of the ***Accused Products"*** (Compl. ¶ 65 (emphasis added)). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, Complaint Exhibit 14, which purports to include a copy of a filing by Betapex with the state of California, nowhere identifies Betapex as involved in manufacturing of *any* sort, casting further doubt on the factual basis for Plaintiff's allegations. Compl. Ex. 14 at 8. "Even taken as true," however, the allegations in the Complaint, viewed together with the inconsistent statements in the exhibits thereto, "are insufficient to state a plausible, rather than merely possible, claim for relief. *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018), citing *Iqbal*, 556 U.S. at 678. Plaintiff's allegation that "[o]n information and belief" Betapex is involved in "manufacturing and sale of the Accused Products" is insufficient to plausibly allege that Betapex directly infringes the Asserted Patents. Compl. ¶ 65.

*Second*, with respect to induced and contributory infringement, Plaintiff has not adequately pleaded that Betapex had the requisite knowledge. Plaintiff's cited paragraphs 84-86, 97-99, 110–12, 123–25, and 136–38 of the Complaint (Opp. 20–21) merely recite exactly the kind of allegations this Court has rejected as insufficient under *Twombly*/*Iqbal*, each comprising a "perfunctory recitation of the elements" of induced and contributory infringement but "fail[ing] to provide factual support for the claim." *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021). With respect to pre-suit knowledge, Plaintiff points to correspondence between some parties listing certain patents and Inspur products (although these allegations are not repeated in the

paragraphs Plaintiff cites as purportedly directed to indirect infringement). *See, e.g.*, Compl. ¶ 31; Compl. Ex. 11. But that correspondence is not on its face directed to Betapex. Plaintiff's "[b]are allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement," and thus Plaintiff's allegations, which "simply couch[] its legal conclusions in the guise of factual allegations," should be rejected. *See People.ai,* 2021 WL 2333880 at *6.

*Finally*, with respect to willful infringement, the authority *cited by Plaintiff* confirms that Plaintiffs' attempt to impute to Betapex the intent required for willfulness does not pass muster. "To prove a willful infringement claim, a jury must find that the defendant had pre-suit knowledge of the patent-in-suit and that the defendant infringed deliberately or intentionally." *BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 998–99 (N.D. Cal. 2023). In *BSD Crown*, this Court rejected as in sufficient the plaintiff's attempt to impute the pre-suit knowledge of one defendant (Amazon) to two others (AWS and Twitch). *Id.* at 999. The Court reasoned that while it was "possible" to allege knowledge imputation from one defendant to another, the plaintiff failed to do so because it did not "engage with relevant knowledge imputation law, or even to point to case law addressing parent-subsidiary relationships and knowledge imputation." *Id.* at 1000–01. Plaintiff's willfulness allegations here are deficient for the same reasons. As explained above, Plaintiffs' allegations stem from apparent pre-suit correspondence with some defendants, but not with Betapex. *See* Compl. ¶¶ 86–87, 112–13, 125–26 138–39, citing Compl. Ex. 11. As in *BSD Crown*, Plaintiff's threadbare assertion that all defendants are "related" (Compl. ¶ 2) fails to plausibly allege the kind of relationship necessary to impute the requisite knowledge of the asserted patents or of the infringement to Betapex, particularly in the absence of any pre-suit correspondence with Betapex. *BSD Crown*, 684 F. Supp. 3d at 999–1003. In turn, at least because Plaintiff has failed to sufficiently plead that Betapex "knew of the patent[s]," Betapex also "could not plausibly have intended to infringe the patent." *Id.* at 1002. Plaintiff's claim for willful infringement by Betapex should therefore be dismissed. *Id.*

Dated this 18th day of July, 2024.        By:      /s/Aaron R. Feigelson

Aaron R. Feigelson (admitted *pro hac vice*)

Arthur J. Bobel (CA Bar No. 251988)
*abobel@leydig.com*
Gerald T. Gray (CA Bar No. 184567)
*ggray@leydig.com*
LEYDIG, VOIT & MAYER, LLP
The Atrium Building
1981 N. Broadway, Suite 375
Walnut Creek, CA 94596
Telephone:      (925) 482-0100
Facsimile:      (925) 482-0110

David M. Airan (IL Bar No. 6215687)
(*pro hac vice* application forthcoming)
*dairan@leydig.com*
Gregory C. Bays (admitted *pro hac vice*)
*gbays@leydig.com*
Aaron R. Feigelson (admitted *pro hac vice*)
*afeigelson@leydig.com*
Leornard Z. Hua (admitted *pro hac vice*)
*lhua@leydig.com*
James W. Sanner (IL Bar No. 6327546)
(*pro hac vice* application forthcoming)
*jsanner@leydig.com*
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza
180 North Stetson, Suite 4900
Chicago, IL 60601-6780
Telephone:      (312) 616-5600
Facsimile:      (312) 616-5700

**Attorneys for Defendants**
**Aivres Systems Inc. and Betapex Inc.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 18, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the above and foregoing document via the Court's CM/ECF system per Local Rule 5-1(h)(1).

 */s/Aaron R. Feigelson*
Aaron R. Feigelson (admitted *pro hac vice*)

AIVRES AND BETAPEX'S REPLY RE MOTION TO DISMISS
Case No. 4:24-cv-02220-JST