Kevin W. Kirsch, SBN 166184
kkirsch@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215-4138
T: 614-228-1541
F: 614-462-2616

Attorney for Defendant
INSPUR GROUP CO., LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

HEWLETT PACKARD ENTERPRISE COMPANY

Plaintiff

v.

INSPUR GROUP CO., LTD., et al.

Defendants

Case No. 4:24-cv-02220-JST

**INSPUR GROUP CO., LTD.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), OR ALTERNATIVELY UNDER FED. R. CIV. P. 12(b)(6)**

Hearing Date: October 10, 2024
Hearing Time: 2:00 p.m.
Location: Courtroom 6, 2nd Floor

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 10, 2024, at 2:00 p.m. in Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California, or as soon thereafter as the matter may be heard, Defendant Inspur Group Co., LTD. ("Inspur Group") will and hereby does move to dismiss, under Fed. R. Civ. P. 12(b)(2) (or alternatively under Fed. R. Civ. P. 12(b)(6)), all of Plaintiff Hewlett Packard Enterprise Company ("HPE")'s claims against it. By alternatively moving under Fed. R. Civ. P. 12(b)(6), Inspur Group preserves and does not waive its defense of lack of personal jurisdiction.

This motion is based upon this Notice of Motion, the accompanying memorandum, the accompanying declaration of Benyi Xu, the [proposed] order filed concurrently herewith, all other papers or pleadings in this action, evidence and argument that the parties may present before or at the hearing on this matter, and any other matters of which this Court may take judicial notice.

**BAKER & HOSTETLER LLP**

Dated: August 26, 2024

By: */s/ Kevin W. Kirsch*
Kevin W. Kirsch

Attorney for Defendant
INSPUR GROUP CO., LTD.

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. Inspur Group is a Chinese company that has not done business in the United States. ..... 2
B. Inspur Group has operated independently of the other Defendants. ..... 3
C. Inspur Group has not placed the Accused Products into the stream of commerce in the United States. ..... 3
III. ARGUMENT ..... 4
A. The Court lacks personal jurisdiction over Inspur Group. ..... 4
B. Even if the Court had personal jurisdiction over Inspur Group, HPE's claims would still fail. ..... 9
1. HPE fails to plausibly allege direct infringement. ..... 9
2. HPE fails to plausibly allege indirect and willful infringement. ..... 10
IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afifeh v. Ahmadabadi*,
No. 22-928, 2022 WL 106038 (C.D. Cal. Apr. 1, 2022) .......... 7

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 8

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008) .......... 5

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) .......... 5

*Breckenridge Pharm., Inc. v. Metabolite Laby's, Inc.*,
444 F.3d 1356 (Fed. Cir. 2006) .......... 7

*Briskin v. Shopify Inc.*,
No. 21-6269, 2022 WL 142734 (N.D. Cal. May 5, 2022) .......... 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 9

*Celgard, LLC v. Shenzhen Senior Tech. Mat'l Co.*,
No. 19-5784, 2020 WL 1548513 (N.D. Cal. Mar. 5, 2020) .......... 5, 6

*Celgard, LLC v. SK Innovation Co.*,
792 F.3d 1373 (Fed. Cir. 2015) .......... 7

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .......... 7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 4

*Dental Monitoring SAS v. Align Tech., Inc.*,
No. 22-7335, 2023 WL 4297570 (N.D. Cal. June 30, 2023) .......... 10

*Diece-Lisa Indus. v. Disney Enters.*,
943 F.3d 239 (5th Cir. 2019) .......... 7

*Golden v. Google LLC*,
No. 22-5246, 2024 WL 1880336 (N.D. Cal. Apr. 3, 2024) .......... 11

*K-fee Sys. GmbH v. Nespresso USA, Inc.*,
No. 22-525, 2022 WL 18278402 (C.D. Cal. July 13, 2022) .......... 4, 5, 6

*Lyft, Inc. v. AGIS Software Dev. LLC*,
No. 21-4653, 2022 WL 267409 (N.D. Cal. Jan. 28, 2022) .......... 4

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017) .......... 4, 5, 8

*NuCal Foods, Inc. v. Quality Egg LLC*,
887 F. Supp. 2d 977 (E.D. Cal. 2012) .......... 6

*Om Records, LLC v. OM Developpement, SAS*,
No. 23-4506, 2024 WL 3049449 (N.D. Cal. June 17, 2024) .......... 8

*Omnitracs, LLC v. Motive Techs., Inc.*,
No. 23-5261, 2024 WL 2886047 (N.D. Cal. Feb. 12, 2024) .......... 10

*Resh, Inc. v. Skimlite Mfg. Inc.*,
66 F. Supp. 3d 1054 (N.D. Cal. 2023) .......... 11

*Semiconductor Energy Lab'y Co. v. Chi Mei Optoelectronics Corp.*,
531 F. Supp. 2d 1084 (N.D. Cal. 2007) .......... 12

*Software Rsch., Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018) .......... 12

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022) .......... 10, 11

*Sound N Light Animatronics Co. v. Cloud b, Inc.*,
No. 16-5271, 2016 WL 7635950 (C.D. Cal. No. 10, 2016) .......... 9, 10

*Splunk Inc. v. Cribl, Inc.*,
662 F. Supp. 3d 1029 (N.D. Cal. 2023) .......... 10

*Univ. of Mass. v. L'Oreal S.A.*,
36 F.4th 1374 (Fed. Cir. 2022) .......... 4

*VLSI Tech. LLC v. Intel Corp.*,
No. 17-5671, 2023 WL 8654391 (N.D. Cal. Dec. 14, 2023) .......... 11

*Yu v. Design Learned, Inc.*, No. 15-5345, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ............................ 11

**Statutes**

35 U.S.C. § 271(a) ............................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 12

Fed. R. Civ. P. 12(b)(6) .................................................................................... 9, 12

## I. INTRODUCTION

HPE sued six distinct companies for patent infringement, but a person would hardly know it from reading HPE's complaint. HPE lumps Inspur Group in with the other five Defendants, calls all six of them the "Inspur Defendants," vaguely accuses all "Inspur Defendants" of "infringing and continu[ing] to infringe the HPE Asserted Patents," and insists upon "Inspur's need for a license" without explaining which Defendant "Inspur" refers to. (ECF No. 1 ¶ 2.)

"Inspur" cannot plausibly refer to Inspur Group, who HPE never should have sued. This Court lacks personal jurisdiction over Inspur Group, a Chinese company with no relevant contacts in the United States. HPE pleads no facts in support of its "stream of commerce" theory of personal jurisdiction over Inspur Group, and Inspur Group's facts defeat this theory. For example, Inspur Group is a Chinese company that has not done business in the United States, has not made, used, sold, offered for sale or imported for sale any of the Accused Products (defined below) anywhere in the world, and has not, alone or with the aid of another (including the other Defendants), placed any Accused Products into the stream of commerce in California or anywhere else in the United States. Xu Decl. ¶¶ 2, 11, 13, 24, 25. HPE's conclusory allegations cannot overcome these facts.

Even if the Court had personal jurisdiction over Inspur Group, HPE's claims against Inspur Group would still be implausible and should be dismissed. HPE's direct infringement claim relies on the contents of a purported Inspur Group webpage, but that webpage has not made any products available for sale in the United States. *Id.* ¶ 12. HPE's indirect and willful infringement claims require allegations that Inspur Group knew of HPE's patents and of the alleged infringement, but HPE makes no such allegations. Instead, HPE relies on the alleged knowledge of other Defendants, without any allegations to support imputing those Defendants' knowledge to Inspur Group.

All of HPE's claims against Inspur Group should be dismissed.

## II. BACKGROUND

### A. Inspur Group is a Chinese company that has not done business in the United States.

Inspur Group is a Chinese company. Xu Decl. ¶ 2. It has not been incorporated in California or anywhere else in the United States. *Id.* ¶ 3. It has not been registered to do business in California or anywhere else in the United States. *Id.* ¶ 4. It has not had a registered agent for service of process in California or anywhere else in the United States. *Id.* ¶ 5. Inspur Group has not filed a lawsuit in California, or anywhere else in the United States, and had not been sued in California before HPE sued it here. *Id.* ¶ 14.

Inspur Group has not had a physical location in California or anywhere else in the United States. *Id.* ¶ 6. It has not owned or leased any property in the United States. *Id.* It has not conducted or solicited business in California or anywhere else in the United States. *Id.* ¶ 11. For example, Inspur Group has not conducted any television, radio, signage, newspaper, magazine, or any other advertisement of products or services in California or the United States. *Id.* ¶ 12.

Inspur Group maintains a website at www.inspur.com. *Id.* The website has not provided a means for customers in the United States to order or purchase products. *Id.* Inspur Group has not had a telephone number in California or anywhere else in the United States. *Id.* ¶ 7.

Inspur Group has not had any employees or contractors in California or anywhere else in the United States. *Id.* ¶ 8. It has not owned any property or physical assets in California or anywhere else in the United States. *Id.* ¶ 9. It has not maintained any computer servers in California or anywhere else in the United States. *Id.* ¶ 10.

Inspur Group is the registered owner of three U.S. trademarks, but they are all for the same mark, "Inspur" (the "Trademark"). *Id.* ¶ 26. Other Defendants may license the Trademark from Inspur Group, but Inspur Group does not charge or collect

payment for any license and does not control the business of the other Defendants. *Id.* None of the Trademark licenses are exclusive. *Id*. None of the Trademark licenses include Inspur Group sharing the right to litigate infringement cases with its licensees or controlling the licensee's sales. *Id*.

**B. Inspur Group has operated independently of the other Defendants.**

Inspur Group has operated its business independently of Defendants Inspur Electronic Information Industry Co., Ltd., Aivres Systems Inc., Betapex Inc., KAYTUS Singapore Pte. Ltd., and Inspur USA Inc. (collectively the "other Defendants"). *Id.* ¶ 15. Inspur Group has had no decision-making authority over the day-to-day business or marketing of any of the products identified in HPE's infringement contentions and exhibits to those contentions (the "Accused Products") *Id.* ¶¶ 13, 15, Ex. A. Inspur Group has not shared a physical office with the other Defendants or employed any individuals working for the other Defendants. *Id.* ¶ 16.

The other Defendants have not been shareholders of Inspur Group. *Id.* ¶ 17. Inspur Group has not been owned by any shareholder that is also a shareholder of one or more of the other Defendants. *Id.* ¶ 19. Inspur Group does not appoint any managers or directors for any of the other Defendants. *Id.* ¶ 18.

**C. Inspur Group has not placed the Accused Products into the stream of commerce in the United States.**

Inspur Group has not produced, designed, developed, manufactured, sold, offered for sale, or imported any of the Accused Products. *Id.* ¶¶ 13, 20. It has not used, manufactured, sold, offered to sell any of the Accused Products in, or shipped any of the Accused Products to, California or anywhere else in the United States. *Id.* ¶ 24.

Inspur Group has not directly or indirectly proposed or caused the sale of the Accused Products into the United States. *Id.* ¶ 20. It has not authorized any sellers or sales representatives to sell any of the Accused Products in California or anywhere else in the United States. *Id.* ¶ 21. It has not imported any products, including the

Accused Products, into the United States. *Id.* ¶ 22. It has not exported any products, including the Accused Products. *Id.* ¶ 23. It has not, alone or with the aid of another (including the other Defendants), placed any Accused Product into the stream of commerce in California or anywhere else in the United States. *Id.* ¶ 25. It has not received any revenue from any sale of any Accused Products anywhere in the world. *Id.* ¶ 27.

## III. ARGUMENT

### A. The Court lacks personal jurisdiction over Inspur Group.

All claims against Inspur Group should be dismissed because the Court lacks personal jurisdiction over Inspur Group. "Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a matter for 'lack of personal jurisdiction.'" *K-fee Sys. GmbH v. Nespresso USA, Inc.*, No. 22-525, 2022 WL 18278402, at *1 (C.D. Cal. July 13, 2022). Because this is a patent case, "Federal Circuit precedent applies to the personal jurisdiction analysis." *Id.* (citing *Univ. of Mass. v. L'Oreal S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022)). Federal Circuit precedent is similar to Ninth Circuit precedent on personal jurisdiction, so "[c]ourts within this circuit have cited both Federal Circuit and Ninth Circuit precedent in determining personal jurisdiction in patent cases." *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-4653, 2022 WL 267409, at *4 n.2 (N.D. Cal. Jan. 28, 2022). Under this precedent, HPE bears the burden to "make a prima facie showing" that Inspur is subject to personal jurisdiction in this Court. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). HPE cannot meet this burden.

Personal jurisdiction may be "general" or "specific." General jurisdiction exists if the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)). Specific jurisdiction exists if: "(1) the defendant purposefully directed its activities to the forum State; (2) the claims arise out of or relate to those activities (collectively, the minimum

contacts prong); and (3) the assertion of jurisdiction is reasonable and fair." *Id.* One way to show specific jurisdiction is under a "stream of commerce" theory. *K-fee*, 2022 WL 18278402, at *2 (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). Under this theory, a plaintiff must plead that the defendant "placed the accused [products] in the stream of commerce, [] knew the likely destination of the products, and [engaged in] conduct and connections with the forum state [] such that [it] should have reasonably anticipated being brought into court there." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994); *see also Celgard, LLC v. Shenzhen Senior Tech. Mat'l Co.*, No. 19-5784, 2020 WL 1548513, at *5 (N.D. Cal. Mar. 5, 2020) ("[A] defendant must be aware that the final product is being marketed in the forum State.") (quotation omitted). It is not enough for the defendant to have played only a "limited role" in the stream of commerce. *K-fee*, 2022 WL 18278402, at *5.

In *K-fee*, for example, the court lacked personal jurisdiction over a defendant who "did not manufacture, sell, import or otherwise distribute the accused products, and did not place those products, or any products, into the stream of commerce" in the forum state. *Id.* at *3. The defendant had "no employees in the United States, no incorporation anywhere in the United States, no headquarters or offices in the United States, no telephone number in the United States, and no[] license[] to conduct business anywhere in the United States." *Id.* It also did not "engage in any manufacturing, marketing, distribution or sales activities in California (or anywhere else)." *Id.* For at least these reasons, the plaintiff failed its burden of pleading specific jurisdiction under a "stream of commerce" theory. *Id.* at *7.

Here, HPE does not allege that the Court has general jurisdiction over Inspur Group. (*See* ECF No. 1 ¶¶ 35–43.) HPE alleges only that the Court has specific jurisdiction over Inspur Group. (*Id.*) And HPE, like the plaintiff in *K-fee*, limits its specific jurisdiction allegations to a "stream of commerce" theory. (*Id.*) For example, HPE alleges that Inspur Group "has placed, and is continuing to place, infringing

products into the stream of commerce via an established distribution channel and with the knowledge and/or understanding that such products are sold in California, including in this judicial district." (*Id.* ¶ 36.) This allegation, like nearly all of HPE's personal jurisdiction allegations, is conclusory and should be disregarded. *See Celgard*, 2020 WL 1548513, at *5 ("Because [plaintiff] provides no support for its allegations that '[defendant] ship[s] accused products into California through established distribution channels' . . . the Court declines to exercise jurisdiction under a stream-of-commerce theory."); *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 988 (E.D. Cal. 2012) ("[T]he court need not consider merely conclusory claims, or legal conclusions in the complaint[,] as establishing jurisdiction."). Tellingly, many of HPE's allegations are based on its own "information and belief," not on facts. (*Id.* ¶¶ 37–42.) The facts, as detailed above, show that HPE's allegations are all wrong.

Contrary to HPE's "information and belief," Inspur Group has not placed *any* Accused Products into *any* stream of commerce directed at California or anywhere else in the United States. *See* Xu Decl. ¶¶ 22–25. Inspur Group has not designed, developed, manufactured, sold, offered for sale, or imported any Accused Products. *Id.* ¶ 13. It has not used, manufactured, sold, offered to sell, or shipped any of the Accused Products in California or anywhere else in or into the United States. *Id.* ¶ 24.

Further contrary to HPE's "information and belief," Inspur Group has no knowledge or understanding of any of its products being sold in California. (*Contra* ECF No. 1 ¶ 36.) Like the *K-fee* defendant, Inspur Group has not had any employees, incorporation, headquarters, offices, telephone number, or business license in the United States. *See* Xu Decl. ¶¶ 1–11. It has not directly or indirectly proposed the sale of the Accused Products into the United States. *Id.* ¶ 20. Inspur Group has not authorized any sellers or sales representatives for any of the Accused Products in California or anywhere else in the United States. *Id.* ¶ 21. It has not imported any

products, including the Accused Products, into the United States. *Id.* ¶ 22. It has not exported any products, including the Accused Products. *Id.* ¶ 23. It has not received any revenue from any sale of the Accused Products anywhere in the world. *Id.* ¶ 27.

HPE's allegations do not contradict Inspur Group's facts. When HPE alleges that Inspur Group ships products "around the world," it cites the website of a different Defendant: Inspur USA Inc. (ECF No. 1 ¶ 37) (citing https://www.inspurusainc.com/inspur-history (last accessed Apr. 11, 2024)). Inspur USA Inc.'s website cannot confer personal jurisdiction over Inspur Group for at least two reasons. First, "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Second, HPE alleges no facts "imput[ing]" Inspur USA Inc.'s website to Inspur Group "under either an agency or alter ego theory." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015).

While HPE alleges that Inspur Group "holds" United States trademarks for the word "Inspur" (collectively the "Trademark"), this allegation is irrelevant to the personal jurisdiction analysis. "The law is clear that federal trademark registration does not confer personal jurisdiction upon the registrant." *Afifeh v. Ahmadabadi*, No. 22-928, 2022 WL 106038, at *6 (C.D. Cal. Apr. 1, 2022) (collecting cases). Neither does trademark licensing. "[No] circuit has held that specific jurisdiction may arise solely from a defendant licensor's non-exclusive licenses to third parties who sell allegedly infringing products in the forum state, and [the Federal Circuit] has explicitly rejected such a theory." *Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 253 (5th Cir. 2019) (citing, among other cases, *Breckenridge Pharm., Inc. v. Metabolite Laby's, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006)). "[S]omething more than a non-exclusive licensor-licensee relationship," such as "sharing the right to litigate infringement cases with its licensees or controlling the licensee's sales," is required before a court will exercise personal jurisdiction over the licensor. *Id.* at

253 & n.14. There is no "something more" here. Other Defendants may license the Trademark from Inspur Group, but Inspur Group does not charge or collect payment for any Trademark license and does not control the business of the other Defendants. Xu Decl. ¶ 26. None of the Trademark licenses are exclusive. *Id*. None of the Trademark licenses include Inspur Group sharing the right to litigate infringement cases with its licensees or controlling the licensee's sales. *Id*. No facts surrounding the Trademark support personal jurisdiction over Inspur Group.

HPE cannot cure its deficient personal jurisdiction allegations by alleging that Inspur Group acted "in concert with" the other Defendants. (ECF No. 1 ¶¶ 35–36.) HPE's "in concert with" allegations are entirely conclusory and should be disregarded. "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Om Records, LLC v. OM Developpement, SAS*, No. 23-4506, 2024 WL 3049449, at *11 (N.D. Cal. June 17, 2024) (quoting *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (finding "conclusory allegations that all [d]efendants acted in concert and are responsible for the others" insufficient to establish personal jurisdiction). Not only are these allegations conclusory, but they are also contradicted by the facts. Inspur Group has operated its business independently of the other Defendants. Xu Decl. ¶ 15. Inspur Group has had no decision-making authority over the day-to-day business or marketing of the other Defendants' products, including the Accused Products. *Id.* Inspur Group has not shared a physical office with the other Defendants or employed any individuals working for the other Defendants. *Id.* ¶ 16. HPE's allegations cannot establish its required prima facie showing of personal jurisdiction. *See NexLearn*, 859 F.3d at 1375.

Even if HPE's "stream of commerce" theory were plausible, that would only satisfy the first two elements of the three-element test for specific jurisdiction. *Id.* For the third element, HPE would still need to show that "the assertion of jurisdiction is reasonable and fair." *Id.* HPE cannot make this showing. Fairness turns on five

factors: (1) the burden on Inspur Group, (2) the forum's interest in adjudicating the dispute, (3) HPE's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Because Inspur Group has virtually no presence in the United States, each factor weighs against specific jurisdiction: It would be highly burdensome for Inspur Group to litigate here. This Court has no interest in adjudicating the Chinese activities of a Chinese company. HPE cannot obtain relief from these Chinese activities in this Court, so litigating in this Court will not promote efficient resolution of any controversies. And there is no substantive social policy in favor of adjudicating these Chinese activities here. For these reasons, too, the Court lacks personal jurisdiction over Inspur Group.

**B. Even if the Court had personal jurisdiction over Inspur Group, HPE's claims would still fail.**

Even if the Court had personal jurisdiction over Inspur Group, HPE's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1] HPE fails to plausibly allege direct, indirect, or willful infringement by Inspur Group.

**1. HPE fails to plausibly allege direct infringement.**

HPE fails to plausibly allege direct infringement by Inspur Group. Direct infringement is making, using, offering to sell, selling, or importing an infringing product *within or into the United States*. 35 U.S.C. § 271(a). To plead direct infringement, "[i]t is not enough . . . to show that the infringing product appeared for sale on a website that is accessible in the United States." *Sound N Light Animatronics Co. v. Cloud b, Inc.*, No. 16-5271, 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016). "The plaintiff must also show that U.S. residents were able to purchase the product through the website, and that the offer was in some way directed at U.S. residents."

[1] Inspur Group only makes these arguments in the alternative should the Court find that it has personal jurisdiction over Inspur Group.

*Id.* HPE makes no such allegations. At most, HPE points to one Inspur Group webpage that allegedly identifies an Accused Product. (ECF No. 1 ¶ 42) (citing https://www.inspur.com/lcjtww/2593427/crhytj/2617136/index.html (last visited Apr. 11, 2024)). But the text of this webpage is written in Chinese:




https://www.inspur.com/lcjtww/2593427/crhytj/2617136/index.html (last visited Aug. 26, 2024). HPE does not allege that this webpage is directed to U.S. residents. HPE also does not allege that U.S. residents can buy products from this webpage, and Inspur Group is not aware of any way for U.S. residents to do so. Xu Decl. ¶ 12. The website has not provided a means for customers in the United States to order or purchase products. *Id.* HPE's direct infringement claims against Inspur Group should be dismissed.

**2. HPE fails to plausibly allege indirect and willful infringement.**

HPE fails to plausibly allege indirect infringement and willful infringement by Inspur Group. Both indirect and willful infringement require the plaintiff to "plead[] with plausibility" that, among other things, the defendant had "knowledge of the asserted patents and knowledge of their infringement." *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1036 (N.D. Cal. 2023). The defendant's knowledge must be "pre-suit knowledge." *Id.* at 1040; *accord Omnitracs, LLC v. Motive Techs., Inc.*, No. 23-5261, 2024 WL 2886047, at *3 (N.D. Cal. Feb. 12, 2024). In other words, the filing of a complaint cannot supply the required notice. *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022); *accord Dental Monitoring SAS v.*

*Align Tech., Inc.*, No. 22-7335, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023). "The purpose of a complaint," after all, "is to obtain relief from an existing claim and not to create a claim." *VLSI Tech. LLC v. Intel Corp.*, No. 17-5671, 2023 WL 8654391, at *31 (N.D. Cal. Dec. 14, 2023) (citing *Sonos*, 591 F. Supp. 3d at 648).

HPE's indirect and willful infringement claims lack plausible allegations that Inspur Group had pre-suit knowledge of the asserted patents and their alleged infringement. Conclusory allegations of knowledge are not enough. *Golden v. Google LLC*, No. 22-5246, 2024 WL 1880336, at *3–4 (N.D. Cal. Apr. 3, 2024). Yet HPE's knowledge allegations are purely conclusory. In its indirect infringement claims, HPE lumps all the Defendants together as "The Inspur Defendants" and concludes, without supporting factual allegations, that they all "knowingly" and "with knowledge" induced and contributed to infringement by others. (ECF No. 1 ¶¶ 84–85, 97–98, 110–11, 123–24, 136–37.) This lumping "fails to put any of the [] defendants," including Inspur Group, "on notice of the claims against them." *Briskin v. Shopify Inc.*, No. 21-6269, 2022 WL 142734, at *3 (N.D. Cal. May 5, 2022); *see also Resh, Inc. v. Skimlite Mfg. Inc.*, 66 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) ("Defendants should not have to guess amongst themselves as to whom a specific 'Defendants' reference Plaintiff intended to apply."); *Yu v. Design Learned, Inc.*, No. 15-5345, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016) ("[G]rouping multiple defendants together in a broad allegation is insufficient . . . ."). HPE's indirect infringement claims against Inspur Group should be dismissed. *Id.*

In its willful infringement claims, HPE again lumps the "Inspur Defendants" together and alleges that they all "had actual knowledge" of the asserted patents and the alleged infringement "at least [as of] February 4, 2022." (ECF No. 1 ¶¶ 86–88, 99–101, 112–14, 125–27, 138–40.) According to HPE, February 4, 2022 is when HPE sent a letter to the CEO and the registered agent of "Inspur Systems Inc. (now known as Aivres)." (*Id.* ¶ 31, Ex. 11.) But this letter was addressed only to Inspur Systems Inc., which HPE refers to as Aivres—*not* to Inspur Group. (*Id.* Ex. 11.) HPE

alleges "[o]n information and belief" that Aivres is somehow indirectly "related" to Inspur Group. (*Id.* ¶ 15.) But this vague allegation is not enough to impute Aivres' alleged knowledge to Inspur Group. *See Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1134 (N.D. Cal. 2018) ("Plaintiff needs to set out more than just the bare fact of the parent/subsidiary relationship in order to make out a plausible claim that [the] subsidiary's knowledge can be imputed to the parent.") (quotation omitted); *Semiconductor Energy Lab'y Co. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1115 (N.D. Cal. 2007) ("general allegations regarding ownership interests" not enough to impute knowledge from one entity to another). HPE's willful infringement claims against Inspur Group should be dismissed.

## IV. CONCLUSION

All of HPE's claims against Inspur Group should be dismissed for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), or alternatively for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

**BAKER & HOSTETLER LLP**

Dated: August 26, 2024

By: */s/ Kevin W. Kirsch*
Kevin W. Kirsch

Attorney for Defendant
INSPUR GROUP CO., LTD.