SEAN CUNNINGHAM (Bar No. 174931)
sean.cunningham@us.dlapiper.com
ERIN P. GIBSON (Bar No. 229305)
erin.gibson@us.dlapiper.com
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401

BRENT K. YAMASHITA (Bar No. 206890)
Brent.Yamashita@us.dlapiper.com
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

HELENA D. KIEPURA (*pro hac vice*)
helena.kiepura@us.dlapiper.com
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000

AMY LYDON (*pro hac vice*)
Amy.Lydon@us.dlapiper.com
CLAIRE SCHUSTER (*pro hac vice*)
claire.schuster@us.dlapiper.com
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100

***Attorneys for Plaintiff Hewlett Packard Enterprise Company***

*[Additional Counsel in Signature Block]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,

Plaintiff,

v.

INSPUR GROUP CO., LTD., a Chinese Corporation; INSPUR ELECTRONIC INFORMATION INDUSTRY COMPANY, LTD., a Chinese company; AIVRES SYSTEMS INC., f/k/a INSPUR SYSTEMS, INC., a California corporation; BETAPEX INC., f/k/a INSPUR ASSET HOLDINGS, INC., a California corporation; INSPUR USA INC., a Washington corporation; and KAYTUS SINGAPORE PTE. LTD., a Singapore company.

Defendants.

Case No. 4:24-cv-2220-JST

**PLAINTIFF HEWLETT PACKARD ENTERPRISE COMPANY'S OPPOSITION TO KAYTUS SYSTEMS PTE. LTD.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION**

Date: October 17, 2024
Time: 2:00 PM
Crtrm: Courtroom 6, 2nd Floor
Judge: The Honorable Jon S. Tigar

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Kaytus Has Directed Numerous Infringing Activities To This District .......... 2

B. Kaytus' Conclusory Declaration Omits Information, Does Not Overcome Facts Alleged In The Complaint, and Contradicts the Public Record. .......... 5

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 8

A. Kaytus Has Sufficient Minimum Contacts To Establish Personal Jurisdiction By Delivering Its Infringing Products Into The Stream Of Commerce With The Expectation That They Will Be Purchased By California Residents. .......... 8

B. Kaytus Has Not Shown That The Court's Exercise Of Jurisdiction Would Be Unreasonable, Contrary To Fair Play And Substantial Justice. .......... 12

C. The Court Also Has Personal Jurisdiction Over Kaytus Under Rule 4(k)(2). .......... 14

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) ........ 7

*ASM Assembly Sys. Switz. GmbH v. QTS Eng'g*,
No. 15CV714, 2016 WL 278734 (S.D. Cal. Jan. 22, 2016) ........ 11

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ........ *passim*

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 13

*Elecs. for Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003) ........ 8

*FDIC v. British-American Ins. Co.*,
828 F.2d 1439 (9th Cir. 198 ........ 14

*FreecycleSunnyvale v. Freecycle Network*,
626 F.3d 509 (9th Cir. 2010) ........ 6, 10

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
149 F.3d 1382 (Fed. Cir. 1998) ........ 8

*Hanson v. Denckla*,
357 U.S. 235 (1958) ........ 7

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........ 7

*Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*,
No. CV 10-7902 PSG, 2011 WL 13217669 (C.D. Cal. Jan. 12, 2011) ........ 11

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
890 F.3d 995 (Fed. Cir. 2018) ........ 8, 15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 7

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ........ 14

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017) ........ 7

*Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*,
603 F.3d 1364 (Fed. Cir. 2010) .......... 12, 13

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 7, 9

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 7

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .......... 7

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
563 F.3d 1285 (Fed. Cir. 2009) .......... 8, 15

*Touchcom, Inc. v. Bereskin & Parr*,
574 F.3d 1403 (Fed. Cir. 2009) .......... 15

*Viam Corp. v. Iowa Export-Import Trading Co.*,
84 F.3d 424 (Fed. Cir. 1996) .......... 13, 14

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......... 7, 8, 12, 14

**Rules and Statutes**

35 U.S.C. § 2 .......... 5

35 U.S.C. § 101 .......... 2

35 U.S.C. §§ 271 and 284 .......... 14

Fed. R. Civ. P. 4(k)(2) .......... *passim*

Fed. R. Civ. P. 12(b)(2) .......... 1, 2, 6

Fed. R. Civ. P. 12(b)(6) .......... 2

**Other Authorities**

https://web.archive.org/web/20231204152754/https:/www.kaytus.com/about/contact/index.html (last accessed August 29, 2024 .......... 9

https://web.archive.org/web/20231204152754/https:/www.kaytus.com/about/contact/index.html (last accessed August 29, 2024) .......... 2

https://www.youtube.com/watch?v=dAgPoCKjjOw .......... 4

https://www.youtube.com/watch?v=PdKuV_3H6eE&t=18s .......... 3, 4

Plaintiff Hewlett Packard Enterprise Company ("HPE") respectfully submits this opposition to the motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) filed by Defendant KAYTUS SYSTEMS PTE. LTD. f/k/a KAYTUS SINGAPORE PTE. LTD ("Kaytus"). ECF No. 85.

## I. INTRODUCTION

The Court should deny Kaytus' motion to dismiss because this Court may and should exercise personal jurisdiction over Kaytus under two separate analyses. First, Kaytus delivers infringing products into the stream of commerce with the expectation that they will be purchased by California residents. As set forth in HPE's Complaint, there is evidence that Kaytus conducted multiple acts of infringement in concert with other Inspur Group defendants including Aivres, a California company, has made direct offers to sell infringing products in the United States at a trade show, and now offers technical support for infringing products sold in the United States. Because Kaytus cannot marshal a "compelling" case that the Court's exercise of jurisdiction would violate concepts of fair play and substantial justice, this Court can and should permit the exercise of personal jurisdiction under the "stream of commerce" analysis.

Alternatively, this Court may find that personal jurisdiction exists over Kaytus under Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) allows this Court to exercise jurisdiction over a foreign defendant, such as Kaytus, where that defendant has sufficient minimum contacts with the United States as a whole but is not subject to jurisdiction in any one particular state. Kaytus has not identified anywhere in the United States where it purports to be subject to jurisdiction, and it should not be permitted to evade the judicial system in the United States entirely.

The Complaint pleads more than enough facts to support personal jurisdiction over Kaytus. The declaration Kaytus submits in its favor should largely be ignored as self-serving and conclusory.  However, to the extent the Court finds the declaration credible, it still does not contravene the well-pleaded allegations in the Complaint, and any factual disputes must be resolved in HPE's favor at this pleadings stage. Should the Court determine more information is needed to aid its decision to deny the motion, HPE respectfully requests the Court grant leave to

/////

conduct limited jurisdictional discovery.[1] To the extent the Court determines that there are any alleged deficiencies in HPE's pleadings (there are not), HPE requests that the Court grant limited jurisdictional discovery and give HPE leave to amend its Complaint to remedy such alleged deficiencies.

Kaytus' motion also joins in the Motion to Dismiss filed by Defendants Aivres Systems Inc. and Betapex Inc. under Rule 12(b)(6) to dismiss the Second and Fourth Causes of Action because the claims of U.S. Patent Nos. 7,634,671 and 8,335,891 are allegedly patent ineligible under 35 U.S.C. § 101 (ECF No. 54). Because Kaytus adopts the existing briefing and does not argue those issues in its motion, HPE also adopts its existing opposition to that motion (ECF No. 69) and does not reargue those issues here.

## II. BACKGROUND

### A. Kaytus Has Directed Numerous Infringing Activities To This District.

The Complaint alleges numerous facts supporting that Kaytus purposefully directed its infringing activities to this District. First, the Complaint describes how Kaytus has directed multiple such activities in concert with Aivres, a California headquartered company. As set forth in the Complaint, Kaytus held out Aivres as a way to contact Kaytus regarding products, services, and solutions (including sales and product information). *See* ECF No. 1 at ¶ 46 (citing https://web.archive.org/web/20231204152754/https:/www.kaytus.com/about/contact/index.html (last accessed August 29, 2024)). Aivres advertised that it "is the sole provider of Kaytus products and solutions in the US" at least as of November 30, 2023. *See id.* at ¶¶ 73-74; Ex. D. The Complaint also correctly pleads that Aivres and Kaytus sell identical server products, which is

[1] HPE has been diligent in requesting discovery relevant to jurisdiction. HPE served its First Set of Requests for Production July 9, 2024. Ex. A, To date, Kaytus has not responded other than to state that it "will not search for or produce documents until the Court resolves all motions to dismiss filed by Kaytus." Ex. B. HPE has notified Kaytus of deficiencies to RFP Nos. 1, 3-6, 8, 29, 34-36, 41, and 42 which are directly relevant to the issue of jurisdiction and is awaiting production as of the filing of this motion. Ex. C.

References to Exs. A-P are to the exhibits attached to the Declaration of Sean Cunningham in Support of Plaintiff Hewlett Packard Enterprise Company's Opposition to Kaytus Systems Pte. Ltd.'s Motion To Dismiss Under Fed. R. Civ. P. 12(b)(2) For Lack Of Personal Jurisdiction filed contemporaneously herewith.

evidence of a broader relationship of acting in concert. *See* ECF No. 1 at ¶¶ 25-26, 28-29, 30. This relationship includes shared product specifications, shared product information, and Aivres' manufacture of Kaytus- designed products. *Id.*

Additionally, the Complaint pleads how Kaytus has directly advertised and offered products for sale in California and the United States via at least attendance at the OCP 2023 trade show, as evidenced by videos of that trade show. *See id.* at ¶¶ 73, 75. In its Motion, Kaytus claims that the videos show Aivres, not Kaytus, presented at the OCP trade show. ECF No. 85 at 9. However, both companies were involved. For example, Kaytus was the named sponsor of the event, not Aivres, and Kaytus advertised its presence at OCP 2023. *See* Exs. 5-8. Moreover, in the videos referenced in the Complaint (and thus part of the pleadings), a presenter named Alan Chang describes the relationship between the two entities, stating "I am representing Aivres, <u>which is a subsidiary of Kaytus.</u>" ECF No. 1 at ¶ 75 (citing https://www.youtube.com/watch?v=PdKuV_3H6eE&t=18s ("Video 2") at 10 secs. (emphasis added)).[2] In his discussion, Mr. Chang reiterates that products are for sale at the trade show booth, stating that "we will have sales representatives and sales engineers there to actually answer your questions." *Id.*, Video 2 at 16:23. As shown below, the Chang video clearly displays "presented by KAYTUS" in the upper lefthand corner:

/////

/////

/////

/////

/////

/////

/////

[2] Kaytus now states that it is a "sister corporation" to Avires, (ECF No. 85 at 11). Its position in the Inspur corporate family relative to Aivres does not diminish its infringing activity in California; as Kaytus acknowledges, "jurisdictional analysis for sister corporations is the same as for parent-subsidiary relationships." *Id.*




In this section of the video, Mr. Chang provides an example of the intertwined overlap between the Inspur Defendants and their products when he presents a whitepaper that was in fact developed by IEIT Systems on a PowerPoint slide with the Aivres logo displayed in the lower right-hand corner in a presentation labeled "presented by Kaytus" in the upper left-hand corner. Mr. Chang makes no distinction between Kaytus and the other Inspur Defendants, including Aivres, when presenting this paper, noting that the white paper standard was integrated "into a product that we offer in our supply chain" before indicating that the technology is included in "all the server that we ship today." *Id.*, Video 2 at 15:07 and 16:23. Jurisdictional discovery also will show that the booth at OCP had individuals in Kaytus branded shirts, Kaytus branded servers, and Kaytus branding in the majority of the booth. *See* Exs. 9-11.

Mr. Chang is not the only employee who admits the close relationship between Kaytus and Aivres.  In another video, also referenced in the Complaint, Aivres employee John Leung can be seen discussing the benefits of system providers (while displaying an image of the Aivres 22M7 server on the screen), the same jointly developed cooling system with Intel as Mr. Chang, and similarly inviting people to visit the Kaytus booth. ECF No. 1 at ¶ 75 (citing https://www.youtube.com/watch?v=dAgPoCKjjOw ("Video 1")). Notably, jurisdictional

discovery will show that the Kaytus LinkedIn Page identified both speakers John Leung and Alan Chang as "#KAYTUS insiders," and does not mention whether they are Aivres employees. Ex. L.

Jurisdictional discovery also will show that Aivres is currently offering products designed and developed by Kaytus that are directly relevant to infringement of HPE's server management patents asserted in this case. Upon information and belief, KSManage is the same as InManage, one of the accused products. Kaytus released server management software called KSManage February 1, 2024, stating that "KSManage, crafted by KAYTUS specifically for industry data centers, is the next-generation infrastructure management platform." Ex. M. Mere months later, on June 1, 2024, Aivres released a product with the exact same name and with similar functions, but made no statements that it designed or developed KSManage independently. Ex. N. By providing this software to Aivres for distribution, Kaytus knows or reasonably foresees that its products will be distributed and purchased across the United States, including in California.

### B. Kaytus' Conclusory Declaration Omits Information, Does Not Overcome Facts Alleged In The Complaint, and Contradicts the Public Record.

In support of its motion to dismiss, Kaytus filed a declaration by a director of Kaytus. ECF No. 85-3 at ¶ 1. This declaration omits important information, does not contravene any allegations in the Complaint, and is also contradicted by public information. First, the declaration is silent on allegedly infringing activities that have occurred in the past, with portions of the declaration solely written in the present tense ("KS does not import", "KS has no employees," "KS does not sell or offer to sell," "KS does not manufacture," "KS does not derive"). *See generally* ECF No. 85-3. The declaration omits information for the majority of the relevant period for patent infringement damages (and therefore sales, offers for sales, and indirect infringement), which is six years prior to the filing of the Complaint. 35 U.S.C. § 286.

Second, the declaration's discussion of the alleged "trademark license" consists of nothing more than legal conclusions and factually unsupported arguments. The declaration concludes that: (1) Aivres sells products bearing the KAYTUS mark under a trademark license agreement signed November 25, 2023, and (2) the agreement does not give Kaytus control over the products Aivres sells in the United States. ECF No. 85-3 at ¶ 14. As a threshold matter, the declaration was sworn

to by a non-lawyer yet proffers multiple unsupported legal conclusions regarding the scope of the license. All such statements should be disregarded, especially given Kaytus' failure to produce the license either in connection with its motion or in response to discovery requests served two months ago. *See* Exs. 1-3. To date, as described further in footnote 1, Kaytus has produced nothing in discovery despite HPE following up on these discovery requests.

Discovery will show, and HPE will prove, that Kaytus exerts control and oversight over the Aivres products including through its trademark license or similar agreements. For example, U.S. trademark laws require some monitoring of the quality of goods that a licensee produced under a trademark, lest the trademark be abandoned. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010). This fact alone indicates Kaytus must exert some control over its subsidiaries' use of the marks, either in the trademark agreement itself or via other agreements regarding product specifications and support. Notably, as set forth in the Complaint, the Aivres and Kaytus servers are substantially the same, share a name and branding, and also share components and architecture. *See* ECF 1 at ¶¶ 25-26. These facts indicate a closer relationship between Aivres and Kaytus with respect to their infringing conduct than simply a naked trademark license.

Finally, the statement in the declaration that Kaytus "has no employees responsible for sales, distribution, or service of products in the United States or in California specifically" is contradicted by publicly available information. ECF No. 85-3 at ¶ 11. Kaytus' current website includes a "Contact Us" page, which Kaytus itself described as a place to find "more information about warranty service in your country." Ex. O. That "Contact Us" page has a drop down for North America, which then drops down for the United States, and lists both a contact phone number and a technical support email address. Ex. P. While the telephone number provided appears to be a Singapore telephone number, it is listed to provide more information for warranty service in the United States. *Id.*

## III. LEGAL STANDARD

Where a motion to dismiss under Fed. R. Civ. P. 12(b)(2) is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of

jurisdictional facts to withstand the motion to dismiss. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg.*,551 F.2d at 787; *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Court may not assume the truth of allegations in a pleading which are contradicted by affidavit, but must resolve "disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal law are the same. *Schwarzenegger*, 374 F.3d at 801.

Due process requires only that a defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Sufficient minimum contacts exist if the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

Personal jurisdiction may separately arise under Federal Rule of Civil Procedure 4(k)(2), which allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim

arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). Thus, Rule 4(k)(2) "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id.* (quoting *Synthes*, 563 F.3d at 1296).

Where, as here, a "district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*; *see Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

## IV. ARGUMENT

### A. Kaytus Has Sufficient Minimum Contacts To Establish Personal Jurisdiction By Delivering Its Infringing Products Into The Stream Of Commerce With The Expectation That They Will Be Purchased By California Residents.

Kaytus has "purposefully directed" its activities at California by selling its infringing products through an established distribution channel to California residents, offering those products for sale at a trade show based in California, and offering technical support directed to the United States and the infringing products sold there. Kaytus, acting in concert with other Inspur Defendants including IEIT and Aivres, intentionally places Kaytus' infringing products into the stream of commerce with the expectation that they will be purchased by customers in this District.

The Court may, consistent with due process, exercise personal jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen,* 444 U.S. at 298. The "stream of commerce" theory applies when the out-of-state defendant is an alleged infringer. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). In *Beverly*

*Hills Fan*, the Federal Circuit held that the Virginia district court had jurisdiction over a Chinese manufacturer of accused fans and its New Jersey distributor, where the "defendants, acting in con[ce]rt, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." 21 F.3d at 1566. Even though the Chinese manufacturer did not make any direct shipments within the United States, the court held that the "purposeful shipment of the fans through an established distribution channel" satisfied the minimum contacts requirement. *Id*. at 1563 n.11, 1565.

Similarly, here, Kaytus knows or reasonably foresees that its infringing products will be distributed and purchased across the United States, including in California. Aivres held itself out as "the sole provider of Kaytus products and solutions in the US" at least as of November 30, 2023. *See* ECF No. 1 at ¶¶ 73-74; Ex. D. The internet archived webpage of the Kaytus "Contact Us" page shows that at least as of Dec. 3, 2023, Aivres was the way to contact Kaytus regarding products, services, and solutions. *See id.* at ¶ 46, citing https://web.archive.org/web/20231204152754/https:/www.kaytus.com/about/contact/index.html (last accessed August 29, 2024). Moreover, the Complaint pleads unrebutted allegations that Aivres and Kaytus sell identical server products, which is further evidence that Aivres and Kaytus are acting in concert. *See id.* at ¶¶ 25-26, 28-29, 30. Lastly, Kaytus admits that Aivres is licensed to sell products in the U.S. under the "KAYTUS mark," demonstrating Kaytus has purposefully directed the sale of infringing servers throughout the U.S. ECF No. 85-3 at ¶ 14.

Discovery will show, and HPE will prove, that Kaytus exerts control and oversight over the Aivres infringing products. As set forth in the Complaint, the Aivres and Kaytus servers are substantially the same, share a name and branding, and also share components and architecture. *See* ECF No. 1 at ¶¶ 25, 26. Kaytus itself admits that a trademark license agreement between the two companies was signed November 25, 2023. ECF No. 85-3 at ¶ 14. Although Kaytus has submitted a self-serving declaration attempting to contradict portions of the Complaint, all factual disputes must be resolved in HPE's favor at this pleadings stage. *Pebble Beach Co.*, 453 F.3d at 1154. In addition, discovery will show that through the underlying trademark license or similar

agreement—which Kaytus has refused to produce—Kaytus exerts control over its subsidiaries' use of the marks, as is required by U.S. law. *FreecycleSunnyvale*, 626 F.3d at 516.

Jurisdictional discovery further will show that Aivres currently offers products designed and developed by Kaytus (beyond the scope of what the trademark license purportedly covers) that are involved in infringement. Kaytus released server management software called KSManage February 1, 2024, stating that "KSManage, crafted by KAYTUS specifically for industry data centers, is the next-generation infrastructure management platform." Ex. M. Mere months later, on June 1, 2024, Aivres released a product with the exact same name, with similar functions, but made no statements that it designed or developed KSManage independently. Ex. N. By providing this software to Aivres for distribution, Kaytus knows or reasonably foresees that its products will be distributed and purchased across the United States, including California.

Additionally, Kaytus itself has advertised and offered infringing products for sale in California and the United States via attendance at the OCP 2023 trade show as evidenced by the videos cited in the Complaint. *See* ECF No. 1 at ¶¶ 73, 75. Kaytus itself invited the public to "[s]ee our new offerings to the OCP ecosystem, including solutions for sustainable computing and next generation applications. Next Generation Platform Adoption Networking Platforms, Liquid Cooling, AI Solutions." Ex. G. On the Kaytus official LinkedIn page, it invited the public attending OCP 2023 to "[v]isit A2 booth to learn about KAYTUS innovative open computing technologies empowering IT transformation." Ex.E; *see also* Exs. F-H. In the same LinkedIn Post, Kaytus (not Aivres) is shown to be an Emerald Sponsor for the OCP 2023 Global Summit. Ex. E. Finally, there are multiple images from the OCP 2023 Global Summit Kaytus booth that include (1) individuals (who are likely sales representatives and engineers) that have shirts on with Kaytus branding discussing products with other attendees, (2) server hardware and racks with Kaytus branding, and (3) Kaytus branding displayed prominently throughout the booth. *See* Exs. H-K.

In one trade show video, employee Alan Chang explains the relationship between Aivres and Kaytus: "I am representing Aivres, which is a subsidiary of Kaytus." ECF No. 1 at ¶ 75 (citing Video 2 at 10 secs). Mr. Chang provides an example of the intertwined overlap between the Inspur Defendants and their products when he presents a whitepaper that was in fact developed by IEIT

Systems on a PowerPoint slide with the Aivres logo displayed in the lower right-hand corner in a presentation labeled "presented by Kaytus" in the upper left hand corner. Mr. Chang makes no distinction between Kaytus and the other Inspur Defendants, including Aivres, when presenting this paper, noting that the white paper standard was integrated "into a product that we offer in our supply chain" before indicating that the technology is included in "all the server that we ship today." *Id.*, Video 2 at 15:07 and 16:23. Mr. Chang indicates that products are for sale, specifically referencing "products we offer in our supply chain" and noting that they will have "sales representatives" and "sales engineers" at the Kaytus booth. *Id.*, Video 2 at 15:07 and 16:23.

Another video similarly shows a presenter – employee John Leung - offering products for sale by discussing the benefits of servers and inviting attendees to come to the booth with sales representatives and sales engineers. Mr. Leung discusses the benefits of system providers (with an image of the Aivres 22M7 server on the screen), the same jointly developed cooling system with Intel, and advertises the Kaytus booth, indicating that people should visit. ECF No. 1 at ¶ 75 (citing Video 1). Notably, the official Kaytus LinkedIn Page identified John Leung and Alan Chang as "#KAYTUS insiders," and did not mention whether they were Aivres employees. Ex. L. Discovery further will confirm that Kaytus was an active participant and offered products for sale at the trade show (including through sales representatives and engineers).

The cases cited by Plaintiff are inapposite. ECF No. 85 at 8. The courts in *ASM Assembly* and *Kinetics Noise Control* found that personal jurisdiction was not supported where attendance at a trade show was the defendants' only tie to California. *ASM Assembly Sys. Switz. GmbH v. QTS Eng'g*, No. 15CV714, 2016 WL 278734, at *2 (S.D. Cal. Jan. 22, 2016); *Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*, No. CV 10-7902 PSG, 2011 WL 13217669, at *5 (C.D. Cal. Jan. 12, 2011). Here, Kaytus' offers for sale at the trade show combined with the fact that Kaytus places or has placed infringing servers in the stream of commerce are more than sufficient to support personal jurisdiction.

Finally, it appears that Kaytus is still <u>actively</u> infringing the Asserted Patents by offering technical support directed to the United States and infringing products sold there (even if it is currently not importing or selling products in the United States). Currently, the Kaytus website

"Contact Us" page has a drop down for North America, which then drops down for the United States, and lists both a contact phone number and a technical support email address. Ex. P. While the telephone number provided appears to be a Singapore telephone number, Kaytus itself describes the Contact Us page as a place to find "more information about warranty service in your country." Ex. O. This is evidence that both (1) infringing sales have occurred or were directed to the United States and (2) Kaytus is actively supporting and inducing infringement (via warranty and technical support) for infringing products sold to, imported to, or located in the United States.

Taken together, the allegations in the Complaint show that Kaytus knowingly directed the infringing products into the stream of commerce and knew that they would end up in this District. Personal jurisdiction can be conferred to Kaytus on these grounds, whether or not it directly imported or exported products, or ever directly owned property in California. *See Beverly Hills Fan*, 21 F.3d at 1566 (personal jurisdiction satisfied where accused products were shipped indirectly "through an established distribution channel); *see also* ECF 84-1 at ¶¶ 6, 9, 22-23. Kaytus "purposefully directed" its activities at California by selling its infringing products through an established distribution channel to California residents through its subsidiary Aivres (which operates in this District and cannot object to personal jurisdiction here), offering infringing products for sale at a trade show based in California, and offering technical support directed to the United States and infringing products sold in the United States.

### B. Kaytus Has Not Shown That The Court's Exercise Of Jurisdiction Would Be Unreasonable, Contrary To Fair Play And Substantial Justice.

HPE has shown that Kaytus should fairly answer for its infringement in this forum. *Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). Where the necessary minimum contacts exist, the court determines whether the exercise of personal jurisdiction is reasonable under the multi-factor test that weighs (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. *Id*. (citing *World-Wide Volkswagen*, 444 U.S. at 292).

Here, as established above, HPE has made a prima facie showing that minimum contacts with the forum exist. However, Kaytus has not and cannot “marshal[] a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice.” *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).. Kaytus’s conclusory and contradicted assertion that it has “no presence” in California is insufficient to merit deviation from the Federal Circuit’s ruling in *Patent Rights Protection Grp.*, 603 F.3d at 1370, which found that the district court erred in declining to exercise personal jurisdiction on the basis of unreasonableness over an out-of-state defendants that had marketed, used, and offered for sale accused products at trade shows in the forum, and also claimed to have no agents, manufacturers, or employees in the state and only *de minimis* sales in the state. There, the Federal Circuit found that the defendants’ presence at numerous trade shows in the forum demonstrated they would not face a particularly onerous burden of defending themselves in the foreign state. *Id.* Here, Kaytus’ ties to California go beyond its attendance at a trade show in the state: its products are sold in this forum under the KAYTUS mark by its sister company and exclusive licensee, Avires, whose California headquarters was listed as Kaytus’ U.S. office on a former iteration of the Kaytus website. ECF No. 1 at ¶¶ 73-75. Fair play and substantial justice do not allow Kaytus to avoid the burden of litigation its infringing activities in this state while also enjoying the benefits of conducting business here.

As for the other factors, HPE has a substantial interest in adjudicating this case in California due to its regular and established place of business is in San Jose. ECF No. 1 at ¶ 4. California has “a ‘manifest interest’ in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.” *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). HPE has been injured by Kaytus’ infringement of HPE patents. ECF No. 1 at ¶¶ 74, 91, 104, 117, 130, 143, 150. Three of the six parties to this lawsuit (HPE, Aivres, and Betapex) reside in California, and the efficiency of the interstate judicial system is served by resolving claims against all Defendants in this single forum. California has an interest in discouraging these types of injuries. *See Beverly Hills Fan*, 21 F.3d at 1568. California also has

/////

"definite and well-defined interests in commerce and scientific development." *See Viam*, 84 F.3d at 430.

The burden on Kaytus to litigate in this District is minimal. Although Kaytus will have to travel from Singapore to the United States and will also be required to submit itself to a foreign nation's judicial system, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294. Further reducing the burden, Kaytus, through its business dealings with Aivres, "cannot profess complete ignorance of the judicial system of the United States." *Beverly Hills Fan*, 21 F.3d at 1569. Finally, regarding sovereignty concerns, *FDIC v. British-American Ins. Co.*, recognizes that sovereignty interests are not a dispositive consideration. 828 F.2d 1439, 1444 (9th Cir. 1988) (finding that the sovereignty factor weighed against reasonableness when defendant is a Fiji resident, the subject of controversy is a Fiji corporation, and the contract at issue designates Fiji law as governing).

In these circumstances, Kaytus cannot make a "compelling case" that personal jurisdiction would be unreasonable and thus violate "fair play and substantial justice." This case does not present "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568.

**C. The Court Also Has Personal Jurisdiction Over Kaytus Under Rule 4(k)(2).**

Although not discussed by Kaytus, the Court also has personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides "a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293-94 (Fed. Cir. 2012).

The first requirement under Rule 4(k)(2) is that the plaintiff's claim arises under federal law. HPE's claims for patent infringement inarguably do so. ECF No. 1 at ¶¶ 80, 84-85, 89, 93, 97-98, 102, 106, 110-111, 115, 119, 123-124, 128, 132, 136-137, 141, 151, citing 35 U.S.C. §§ 271 and 284. Under the second requirement, the defendant is not subject to jurisdiction in any

state's courts of general jurisdiction. A defendant can "avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit." *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1415 (Fed. Cir. 2009). Here, Kaytus is not subject to jurisdiction in any state's courts of general jurisdiction because Kaytus is incorporated and headquartered in Singapore. ECF No. 85-3 at ¶ 5. Kaytus alleges as much in its motion to dismiss. ECF No. 85 at 15. Kaytus also does not identify "a more appropriate state," let alone any state, for jurisdiction. *Touchcom*, 574 F.3d at 1414.

The third and final requirement, the due process analysis, "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling Fluids*, 890 F.3d at 999 (quoting *Synthes*, 563 F.3d at 1295). In the *Synthes* case, the Federal Circuit determined that attendance at a trade show where allegedly infringing products were displayed, generated interest, and were attempted to be sold was sufficient to show that the defendant purposefully availed itself of the United States. *Synthes*, 563 F.3d at 1297-1298. As established above in Sections IV.A and B, HPE has pled far more contacts between Kaytus and this forum that satisfy Rule 4(k)(2). All told, this Court's exercise of jurisdiction under Rule 4(k)(2) is reasonable.

## V. CONCLUSION

HPE respectfully requests that the Court deny Kaytus' motion to dismiss in its entirety. In the alternative, HPE respectfully requests the Court grant leave to conduct limited jurisdictional discovery. To the extent the Court determines that there are any alleged deficiencies in HPE's pleadings (there are not), HPE requests that the Court grant limited jurisdictional discovery and give HPE leave to amend its Complaint to remedy such alleged deficiencies.

Dated: September 9, 2024

Respectfully submitted,

By: */s/ Sean C. Cunningham*

Sean C. Cunningham (Bar No. 174931)
sean.cunningham@us.dlapiper.com
Erin P. Gibson (Bar No. 229305)
erin.gibson@us.dlapiper.com
**DLA PIPER LLP (US)**

4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401

Brent K. Yamashita (Bar No. 206890)
Brent.Yamashita@us.dlapiper.com
**DLA PIPER LLP (US)**
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

Helena D. Kiepura (*pro hac vice*)
helena.kiepura@us.dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000

Amy Lydon (*pro hac vice*)
Amy.Lydon@us.dlapiper.com
Claire Schuster (*pro hac vice)*
Claire.schuster@us.dlapiper.com
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100

Michael L. Burns (*pro hac vice*)
michael.burns@us.dlapiper.com
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301

Stephanie M. Piper (*pro hac vice)*
stephanie.piper@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone: (212) 335-4726
Facsimile: (212) 884-8526

Angela C. Whitesell (*pro hac vice*)
angela.whitesell@us.dlapiper.com
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341

Aima Mori (*pro hac vice*)
aima.mori@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606
Telephone: (312) 251-5710
Facsimile: (312) 236-7516

Michael Saulnier (*pro hac vice*)
Michael.saulnier@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado St., Suite 3000
Austin, TX 78701
Telephone: (512) 457-7234
Facsimile: (512) 721-2234

*Attorney for Plaintiff Hewlett Packard Enterprise Company*