SEAN CUNNINGHAM (Bar No. 174931)
sean.cunningham@us.dlapiper.com
ERIN P. GIBSON (Bar No. 229305)
erin.gibson@us.dlapiper.com
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401

BRENT K. YAMASHITA (Bar No. 206890)
Brent.Yamashita@us.dlapiper.com
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

HELENA D. KIEPURA (*pro hac vice*)
helena.kiepura@us.dlapiper.com
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000

AMY LYDON (*pro hac vice*)
Amy.Lydon@us.dlapiper.com
CLAIRE SCHUSTER (*pro hac vice*)
claire.schuster@us.dlapiper.com
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100

***Attorneys for Plaintiff Hewlett Packard Enterprise Company***

*[Additional Counsel in Signature Block]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,

Plaintiff,

v.

INSPUR GROUP CO., LTD., a Chinese Corporation; INSPUR ELECTRONIC INFORMATION INDUSTRY COMPANY, LTD., a Chinese company; AIVRES SYSTEMS INC., f/k/a INSPUR SYSTEMS, INC., a California corporation; BETAPEX INC., f/k/a INSPUR ASSET HOLDINGS, INC., a California corporation; INSPUR USA INC., a Washington corporation; and KAYTUS SINGAPORE PTE. LTD., a Singapore company.

Defendants.

Case No. 4:24-cv-2220-JST

**PLAINTIFF HEWLETT PACKARD ENTERPRISE COMPANY'S OPPOSITION TO INSPUR GROUP CO. LTD.'S MOTION TO DISMISS**

Date: October 17, 2024
Time: 2:00 PM
Crtrm: Courtroom 6, 2nd Floor
Judge: The Honorable Jon S. Tigar

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. LEGAL STANDARD ..... 4

- A. Rule 12(b)(2) ..... 4
- B. Rule 12(b)(6) ..... 5

IV. ARGUMENT ..... 6

- A. Inspur Group Has Sufficient Minimum Contacts With California To Establish Personal Jurisdiction In This District. ..... 6
  - 1. Inspur Group Knowingly Delivers Products To California And The U.S. Server Market At Large. ..... 7
  - 2. Inspur Group's Declaration Does Not Controvert the Well-Pleaded Allegations In HPE's Complaint. ..... 11
  - 3. Inspur Group Has Not Shown That The Court's Exercise Of Jurisdiction Would Be Unreasonable, Contrary To Fair Play And Substantial Justice. ..... 13
- B. The Court Has Personal Jurisdiction Over Inspur Group Under Rule 4(k)(2). ..... 14
- C. The Court Should Deny Inspur Group's Motion Under Rule 12(b)(6). ..... 15
  - 1. HPE's Complaint Plausibly Alleges Direct Infringement. ..... 15
  - 2. HPE's Complaint Properly Employs Group Pleading In A Selective Manner. ..... 17
  - 3. HPE Adequately Alleges That Inspur Group Has Knowledge of the Asserted Patents and Infringement. ..... 20
  - 4. HPE's Complaint Supports Post-Suit Indirect And Willful Infringement Claims Against Inspur Group. ..... 22

V. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
160 F.3d 1373 (Fed. Cir. 1998) .......... 4

*ACQIS LLC v. Lenovo Grp. Ltd.*,
No. 6:20-CV-00967-ADA, 2022 WL 2705269 (W.D. Tex. July 12, 2022) .......... 21, 22

*Afifeh v. Ahmadabadi*,
C.A. No. 22-928-CB-AFM, 2022 WL 1060638 (C.D. Cal. Apr. 1, 2022) .......... 12

*Afros S.P.A. v. Krauss-Maffei Corp.*,
671 F. Supp. 1458 (D. Del. 1987) .......... 21

*Alejandro Fernandez Tinto Pesquera, S.l v. Fernandez Perez*,
C.A. No. 20-2128-LHK, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021) .......... 11

*Apple Inc. v. AliveCor, Inc.*,
No. 22-CV-07608-HSG, 2023 WL 4091287 (N.D. Cal. June 20, 2023) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 5

*Bassam v. Bank of Am.*,
2015 WL 4127745 (C.D. Cal. July 8, 2015) .......... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 5

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) .......... 6, 8, 14

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .......... 5

*Brown v. Stored Value Cards, Inc.*,
953 F.3d 567 (9th Cir. 2020) .......... 6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 13

*Celgard LLC v. Shenzhen Senior Technology Material Co.*,
No. 19-5784, 2020 WL 1548513 (N.D. Cal. Mar. 5, 2020) .......... 9

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, C.A. No. 19-5784, 2021 WL 9763371 (N.D. Cal. Feb. 8, 2021) (J. Tigar), *opinion vacated in part on other grounds*, 2021 WL 11714935 (N.D. Cal. Dec. 7, 2021) .......... 18, 19

*Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373 (Fed. Cir. 2015) .......... 8

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) .......... 9

*Dental Monitoring SAS v. Align Tech., Inc.*, No. 22-7335, 2023 WL 4297570 (N.D. Cal. June 30, 2023) .......... 22

*Diece-Lisa Indust. Inc. v. Disney Enterprisees, Inc.*, 943 F.3d 239 (5th Cir. 2019) .......... 12

*Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) .......... 5

*FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. 2010) .......... 12, 17

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) .......... 20

*ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, 2022 WL 611249 (D. Del. Feb. 7, 2022) .......... 23

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......... 4

*K-fee System GmbH v. Nespresso USA, Inc.*, No. 22-525, 2022 WL 18278402 (C.D. Cal. July 13, 2022) .......... 9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 5, 6, 17

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......... 5

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) .......... 12

*Litebook Co., Ltd. v. Verilux, Inc.*, C.A. No. 22-1124-CJC, 2023 WL 2733463 (C.D. Cal. Feb. 7, 2023) .......... 21

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 6

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
890 F.3d 995 (Fed. Cir. 2018) .......... 4, 15

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) .......... 14

*Monster Cable Prods., Inc. v. Euroflex S.R.L.*,
642 F. Supp. 2d 1001 (N.D. Cal. 2009) .......... 12

*N. Star Int'l v. Ariz. Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983) .......... 5

*Nuance Comm'n Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) .......... 10

*Nuance Comm'n Inc. v. Abbyy Software House*,
C.A. No. 8-2912-JSW, 2011 WL 1659574 (N.D. Cal. May 3, 2011) .......... 8, 10

*NuCal Foods, Inc. v. Quality Egg LLC*,
887 F. Supp. 2d 977 (E.D. Cal. 2012) .......... 9

*Om Recs., LLC v. OM Developpement, SAS*,
C.A. No. 23-4506-JSW, 2024 WL 3049449 (N.D. Cal. June 17, 2024) .......... 6, 9, 17

*Omnitracs, LLC v. Motive Techs., Inc.*,
C.A. No. 23-5261-RFL, 2024 WL 2886047 (N.D. Cal. Feb. 12, 2024) .......... 22, 23

*Parity Networks, LLC v. Moxa Inc.*,
C.A. No. 20-698-JVS, 2020 WL 6064636 (C.D. Cal. Sept. 11, 2020) .......... 18

*Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*,
603 F.3d 1364 (Fed. Cir. 2010) .......... 13

*Philips N.V. v. TTE Tech., Inc.*,
C.A. No. 20-1406-CJC, 2020 WL 13302815 (C.D. Cal. Sept. 3, 2020) .......... 21

*Ravgen, Inc. v. Ariosa Diagnostics, Inc.*,
C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178 (D. Del. Aug. 11, 2021) .......... 23

*Resh, Inc. v. Skimlite Mfg. Inc.*,
666 F. Supp. 3d 1054 (N.D. Cal. 2023) .......... 19

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4

*Slack v. Int'l Union of Operating Eng'gs*,
C.A. No. 13-5001-EMC, 2014 WL 4090383 (N.D. Cal. Aug. 19, 2014) .......... 18

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022) .......... 22

*Sound N Light Animatronics Co. v. Cloud b, Inc.*, C.A. No. 16-5271-GHK (JPRX), 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016) ........ 15

*Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023) ........ 22

*Stewart v. LaFrance Equip. Corp.*, 912 F.2d 470 (9th Cir. 1990) ........ 5

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009) ........ 5, 15

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009) ........ 15

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010) ........ 15

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, C.A. No. 12-2582 CW, 2012 WL 2343670 (N.D. Cal. June 20, 2012) ........ 12

*Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424 (Fed. Cir. 1996) ........ 14

*VLSI Tech. LLC v. Intel Corp.*, No. 17-5671, 2023 WL 8654391 (N.D. Cal. Dec. 14, 2023) ........ 22

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ........ 4, 6, 13, 14

*Yu v. Design Learned, Inc.*, C.A. No. 15-5345, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ........ 19

**Rules and Statutes**

35 U.S.C. §§ 271 and 284 ........ 14

Fed. R. Civ. P. 4(k)(2) ........ *passim*

Fed. R. Civ. P. 8 ........ 5

Fed. R. Civ. P. 12(b)(2) ........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ *passim*

**Other Authorities**

https://aivres.com/company ........ 16

https://aivres.com/contact-us/ ........ 16

https://web.archive.org/web/20230604200933/https:/www.inspursystems.com/ ......................... 16

https://www.inspurusainc.com/inspur-history ................................................................. 16

https://www.linkedin.com/company/inspur-group-co-ltd-/posts/?feedView=videos (last accessed Sept. 9, 2024) ................................................................................ 10, 11

## I. INTRODUCTION

The Court should exercise personal jurisdiction over Inspur Group under the "stream of commerce" analysis or under Fed. R. Civ. P. 4(k)(2) and deny Inspur Group's motion to dismiss under Rule 12(b)(2). The Court also should deny Inspur Group's motion under Rule 12(b)(6) because the Complaint meets the pleading standard for direct, indirect, and willful infringement.

Under the "stream of commerce" analysis, personal jurisdiction exists because Inspur Group—the ultimate parent of all Inspur Defendants—delivers products into the stream of commerce with the expectation that they will be purchased in California. The Complaint plausibly alleges, and discovery will further show, that at all times during the claimed damages period, Inspur Group systematically targeted the United States server market and grew its business in the United States and in this District. At first, Inspur Group openly grew its U.S. business under the INSPUR trademark it owns. After the Department of Commerce placed "Inspur Group Co., Ltd., a.k.a., … Inspur Group" on the banned entities list in March 2023, Inspur Group continued to grow its business through its established U.S. distribution channels for sales of infringing products including its newly rebranded subsidiaries and co-defendants.

The Complaint alleges that, during the damages period, Inspur Group placed infringing products into the stream of commerce in the United States, California, and this District. The Complaint pleads that "Inspur ships its IT products and services to more than 113 countries"—including to the "Americas," as shown on Inspur's map of the United States. Inspur Group's *inspur.com* website posted Inspur Group technical specifications that the Complaint cites as proof of infringement. Those specifications repeatedly refer back to the English version of the main Inspur Group website (http://en.inpsur.com), offer English-language support from Inspur Group engineers within two hours via the Inspur Group e-mail (serversupport@inspur.com) and toll-free hotline numbers for U.S. callers, and subject Inspur-branded products to Inspur Group's commercial contract terms. Inspur Group's domain also hosted the email address identified in the Complaint for U.S. customer warranty support: serversupportusa@inspur.com. The Complaint also pleads that, after the Department of Commerce blacklisted Inspur Group, Inspur Group changed the name of subsidiary Inspur Systems, Inc. to Aivres Systems, Inc. Inspur Group also

rebranded as "Aivres" its INSPUR-branded infringing products. For example, the INSPUR-branded IR5280M6 server was renamed the "Aivres" 5280M6 server.

Discovery will reinforce that Inspur Group knowingly placed these and other infringing products into the stream of commerce in California. Inspur Group allowed its subsidiaries to use its INSPUR trademark on infringing products, in marketing materials, and at U.S. trade shows, showing that Inspur Group purposefully directed sales and offers to sell servers throughout the United States and in California. Inspur Group's archived website described its own "Inspur Overseas Office" as the Milpitas, California office of "Inspur Systems, Inc. (US Main Office)." That building had a large INSPUR sign. Inspur Defendants warrantied and provided technical support for INSPUR-branded and other infringing products sold in the United States, including through Inspur Group's "serversupportusa@inspur.com" email address and a U.S. telephone number. Inspur Group's LinkedIn page and archived website also show that Inspur Group regularly attended trade shows in this district and throughout the United States. Because Inspur Group cannot marshal a "compelling" case that the Court's exercise of jurisdiction would violate concepts of fair play and substantial justice, the Court should find personal jurisdiction exists under the "stream of commerce" analysis.

The Court also may find that personal jurisdiction exists over Inspur Group under Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) allows this Court to exercise jurisdiction over a foreign defendant, such as Inspur Group, where that defendant has sufficient minimum contacts with the United States as a whole but is not subject to jurisdiction in any one state. Inspur Group has not identified anywhere in the United States where it purports to be subject to jurisdiction, and it should not be permitted to evade the U.S. judicial system entirely. To the extent that the Court determines more information is needed to deny Inspur Group's Rule 12(b)(2) motion, HPE respectfully requests the Court grant leave to conduct limited jurisdictional discovery.

Under Rule 12(b)(6), HPE's Complaint exceeds the minimum pleading requirements set forth in *Iqbal* and *Twombly* to state a claim for direct, indirect, and willful infringement. The declaration Inspur Group offers to support its motion cannot be considered on a motion to dismiss under Rule 12(b)(6), but even if it could, it fails to contravene facts and evidence pled in the

Complaint. At the pleading stage, any factual disputes must be resolved in favor of HPE. For each of these reasons, the Court should deny Inspur Group's motion to dismiss.

## II. FACTUAL BACKGROUND

Plaintiff HPE is a global edge-to-cloud company that pioneers innovative technology, including its industry-leading general-purpose servers, rack servers, high density servers, and AI servers. ECF No. 1 at ¶ 1. On April 15, 2024, HPE filed the Complaint alleging that a group of related entities including Inspur Group directly, indirectly, and willfully infringe U.S. Patent Nos. 8,218,566 ("the '566 patent"), 7,634,671 ("the '671 patent"), 9,229,737 ("the '737 patent"), 8,335,891 ("the '891 patent"), and 8,108,508 ("the '508 patent"). *Id.* at ¶¶ 16-21.

The Inspur Defendants are all owned and controlled by the same ultimate parent company—Inspur Group. ECF No. 1 at ¶ 15 & Ex. 13 at 132. Before Inspur Group was placed on the Department of Commerce Bureau of Industry and Security Entity List, the Inspur Defendants operated under one global brand called "INSPUR" as evidenced by their product brandings, technical documents, product warranty and support system, websites, tradeshow representations, and building placards. ECF No. 1 at ¶¶ 15, 36-42, 46, 57-60, 69, 77.

The Complaint alleges numerous facts showing that Inspur Group purposefully directed its infringing activities to this District. In particular, the complaint alleges that Inspur Group has placed, and is continuing to place, infringing products into the stream of commerce via an established distribution channel that includes its subsidiaries IEIT Systems, Aivres, Betapex, Inspur USA, and Kaytus. ECF No. 1 at ¶ 36; *see also id.* at ¶ 15, Ex. 13 at 132 (showing corporate relationships). Those infringing products include servers, storage devices, networking devices, and software, such as the Inspur NF5280M5 server, the Aivres KR2280 server, the KAYTUS KR2280 server, the Inspur SAS3008 RAID Adapter, and the Inspur Physical Infrastructure Manager ("ISPIM") software (collectively, the "infringing products"). *See, e.g.*, *id.* at ¶¶ 22, 29, 46-47, 80, 84-85, 91. In addition to shipping its products all over the world, including the United States, Inspur Group maintains an English language website that provides technical documents, technical support, and sales support for the infringing products. *Id.* at ¶¶ 26, 37, 42. Inspur Group also owns three active trademarks that have been widely used by all Inspur

Defendants including on the infringing products sold in the United States. ECF No. 1 at ¶ 38; ECF No. 84-1 at ¶ 26.

To support allegations that Inspur Group had pre-suit knowledge of the Asserted Patents and of Inspur Group's infringement, the Complaint details HPE's numerous efforts to contact the Inspur Defendants regarding their infringement of HPE's Asserted Patents and incorporates by reference and attaches three pre-suit notice letters from HPE to Inspur Group's subsidiaries IEIT Systems and Aivres, dated August 24, 2021, October 8, 2021, and February 4, 2022. ECF No. 1 at ¶ 31 & Ex. 11.

## III. LEGAL STANDARD

### A. Rule 12(b)(2)

Under Fed. R. Civ. P. 12(b)(2), a party may move to dismiss a pleading for lack of personal jurisdiction. Personal jurisdiction over a defendant is appropriate if the state's long-arm statute "permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal law are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Due process requires that Inspur Group have "minimum contacts" with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

Alternatively, personal jurisdiction over a defendant may arise under Fed. R. Civ. P. 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999

(Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). Thus, Rule 4(k)(2) allows a court to exercise jurisdiction over a foreign defendant "whose contacts with the United States, but not with the forum state, satisfy due process." *Id.* (quoting *Synthes*, 563 F.3d at 1296).

Where, as here, a court's disposition as to the personal jurisdictional question is based on affidavits and not an evidentiary hearing, "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). If the defendant offers evidence controverting the allegations of personal jurisdiction, "the plaintiff must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Stewart v. LaFrance Equip. Corp.*, 912 F.2d 470 (9th Cir. 1990). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Coyle*, 340 F.3d at 1344.

**B. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A plaintiff is not required to "prove its case at the pleading stage." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). To satisfy Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atl. Corp.*, 550 U.S. at 556. When ruling on a motion to dismiss, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

In general, a court may not consider materials outside of the pleadings in resolving a motion to dismiss under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998

(9th Cir. 2018). However, a court may consider documents that are incorporated by reference in the pleadings. *Id.* "Where, as here, a defendant moves to dismiss on both 12(b)(2) and 12(b)(6) grounds, the Court may consider materials outside the pleadings for the limited purpose of determining whether it has jurisdiction over the non-resident defendants, but the Court does not consider the same materials for determining whether the complaint states a claim." *Om Recs., LLC v. OM Developpement, SAS*, C.A. No. 23-4506-JSW, 2024 WL 3049449, at *6 (N.D. Cal. June 17, 2024).

If the Court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Thus, leave to amend should be granted with "extreme liberty." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020).

## IV. ARGUMENT

### A. Inspur Group Has Sufficient Minimum Contacts With California To Establish Personal Jurisdiction In This District.

Contrary to Inspur Group's motion, the Complaint adequately alleges, and discovery will show, that Inspur Group has systematically targeted the United States server market and grown its business in the United States and in this District—at first, openly under the INSPUR mark, and since its placement on the Department of Commerce banned entities list, via its newly rebranded subsidiary Aivres and other co-defendants through an established U.S. distribution channel for its infringing products. Under the "stream of commerce theory" this Court can exercise personal jurisdiction over a foreign corporation that delivers its infringing products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *Volkswagen*, 444 U.S. at 298; *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (finding personal jurisdiction over foreign defendant that shipped accused products indirectly "through an established distribution channel").

/////

/////

### 1. **Inspur Group Knowingly Delivers Products To California And The U.S. Server Market At Large.**

The Complaint plausibly pleads that Inspur Group knowingly directs infringing products into the stream of commerce in California and this District and cites to evidence tying Inspur Group (and all Inspur Defendants) to these activities. Infringement claim charts attached to (and thus part of) the Complaint cite to Inspur Group technical documents for the infringing products that were obtained from *inspur.com* (a website Inspur Group's declaration admits it "maintains") and show that Inspur Group has been directly involved in the development, sale, and servicing of the Accused Products. ECF No. 1-1 at 70, 87, 113, 13, 142; ECF No. 84-1 at ¶ 12. For example, the Inspur Group's technical documents cited in the Complaint repeatedly refer back to the English version of the main Inspur Group website (http://en.inpsur.com); offer English-language support from Inspur Group engineers within two hours via both the Inspur Group e-mail (serversupport@inspur.com) and toll-free hotline numbers for U.S. callers; and subject INSPUR-branded products to Inspur Group's commercial contract terms. Ex. A at 194 ("Inspur warrants that all Inspur-branded hardware products shall provide a period of three year warranty. …Inspur provides 24x7 remote service through Hotline, E-mail, and Website."); *see also* Exs. B, C, and D at 2 ("The products, services, or features you purchase should be subject to Inspur Group's commercial contract and terms."); Ex. E at 192, Ex. F at 2 (linking to www.inspur.com).[1] The same warranty language was on the now-archived *inspursystems.com* website cited in the Complaint, which directed customers to obtain product support by emailing the Inspur Group's *inspur.com* domain: "serversupportusa@inspur.com." ECF No. 1 at ¶ 59; Ex. J.

As pled in the Complaint, and confirmed in Inspur Group's declaration, Inspur Group owns three active U.S. INSPUR trademarks that appear on each of these infringing products sold in the United States. ECF. No. 1 at ¶ 38; ECF No. 84-1 at ¶ 26. The INSPUR trademark has been widely used by all Inspur Defendants. ECF No. 1 at ¶¶ 3, 38-41. Indeed, before Inspur Group

[1] References to Exs. A - J are to the exhibits attached to the Declaration of Sean Cunningham in Support of Plaintiff Hewlett Packard Enterprise Company's Opposition to Inspur Group's Motion to Dismiss filed contemporaneously herewith.

was blacklisted, the Inspur defendants operated under one global brand: INSPUR; the Aivres headquarters in Milpitas posted the INSPUR sign on its building (not "Inspur Systems"); and Aivres' predecessor sold infringing products branded INSPUR (not "Inspur Systems"). *Ineed*. at ¶¶ 15, 36-42, 46, 57-60, 69, 77. In addition, the Inspur Systems website and Inspur USA website used the INSPUR trademark to interchangeably refer to Inspur Group and its subsidiaries. *Id.* at ¶¶ 37, 58. Thus, contrary to Inspur Group's contentions, HPE plausibly alleges that it is Inspur Group speaking when the Inspur USA website says, "Inspur ships its IT products and services to more than 113 countries and regions around the world." ECF No. 84 at 7; ECF No. 1 at ¶ 37. Indeed, the supporting graphic for that statement includes a map of the world with a dot for "Inspur" located on Jinan, China, which is the principal place of business for Inspur Group, not Inspur USA. ECF No. 1 at ¶¶ 9, 13, 37. Because HPE has plausibly alleged that Inspur Group—not Inspur USA—is the speaker, HPE need not to allege facts imputing the acts of Inspur USA under an agency or alter ego theory as Inspur Group contends. ECF No. 84 at 7. Accordingly, Inspur Group's reliance on *Celgard, LLC v. SK Innovation Co*., 792 F.3d 1373, 1376 (Fed. Cir. 2015) is misplaced. ECF No. 84 at 7.

After the Department of Commerce blacklisted Inspur Group, INSPUR-branded products sold in the United States were rebranded as "Aivres" but otherwise stayed the same. ECF No. at ¶ 42. For example, the INSPUR-branded IR5280M6 server sold by Inspur Group became the "Aivres" 5280M6 server. *Id.* The Complaint further alleges substantial overlap between the infringing products sold in the United States under INSPUR, Aivres, and KAYTUS brands. *Id.* at ¶ 26; ECF No. 84-1 at ¶ 11. The facts pled in the Complaint establish that Inspur Group has placed and continues to place infringing products into the stream of commerce through established distribution channels sufficient to establish personal jurisdiction. *See Nuance Comm'n Inc. v. Abbyy Software House,* C.A. No. 8-2912-JSW, 2011 WL 1659574 at *4 (N.D. Cal. May 3, 2011) (on remand, finding personal jurisdiction where, among other things, a website portrayed the foreign defendant as "a single company with offices in many countries, including the United States," and "promoted sales of the products in California by providing the names and contact information" for other online and retail stores); *Beverly Hills*, 21 F.3d at 1566 (personal

jurisdiction satisfied where accused products were shipped indirectly "through an established distribution channel"). Thus, HPE relies on more than a mere website to establish personal jurisdiction over Inspur Group, making Inspur Group's reliance on *Cybersell* inapposite. *See* ECF No. 84 at 6; *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 415 (9th Cir. 1997) (rejecting plaintiff's reliance on nothing more than a single service mark on the home page of a single website to assert specific jurisdiction over a foreign defendant for trademark infringement claims).

All of the other cases cited by Inspur Group are also distinguishable. ECF No. 84 at 4-9. The Court in *K-fee System GmbH v. Nespresso USA, Inc.* found no personal jurisdiction over a defendant that "simply owns and manages intellectual property" and did "not engage in any manufacturing, marketing, distribution or sales activities in California (or anywhere else)." C.A. No. 22-525, 2022 WL 18278402, at *1 (C.D. Cal. July 13, 2022). Here, the complaint alleges that Inspur Group manufactures, and sells products that are the same as the infringing products sold by and through Defendant Aivres and, further, Inspur Group itself touts that it "ships its IT products and servers … around the world," including to the United States. ECF No. 1 at ¶¶ 37, 42; *see also* ECF No. 1-1 at 70, 87, 113, 142 (incorporating technical documents showing that Inspur Group developed the infringing products). In *Celgard LLC v. Shenzhen Senior Technology Material Co.*, the court found no personal jurisdiction over a defendant who had no reason to know that the third-party distributors through which it purportedly distributed products had a principal place of business in California. C.A. No. 19-5784, 2020 WL 1548513 at *5 (N.D. Cal. Mar. 5, 2020). Similarly, the court in *Om Recs., LLC v. OM Developpement, SAS* held that "an attenuated connection between … nonparty individuals and the foreign defendants, … does not demonstrate that the French Defendants purposely directed their activities towards the United States." 2024 WL 3049449, at *12. But here, the complaint alleges that Inspur Group uses a distribution channel composed entirely of its own subsidiaries, which is the opposite of an attenuated connection with third-party distributors. ECF No. 1 at ¶¶ 15, 46, 77.

In addition, *NuCal Foods, Inc. v. Quality Egg LLC* was decided after court allowed jurisdictional discovery. 887 F. Supp. 2d 977, 986 (E.D. Cal. 2012). Here, the Inspur Defendants

have yet to produce a single document in response to HPE's discovery requests. While HPE's Complaint and documents cited therein exceed the minimum requirements to establish this Court's personal jurisdiction over Inspur Group, discovery will further reinforce Inspur Group's direct involvement in infringing activity. For example, prior to Inspur Group's placement on the Department of Commerce banned entities list, the Inspur Group website inspur.com and its social media channels openly touted its growing business in the United States server market. Inspur Group's LinkedIn page features a video showing it attended many industry conferences in the U.S and Silicon Valley in the years leading up to the complaint. *See* video posted in 2020 titled, "Inspur and … are ushering in a new era of AI", *https://www.linkedin.com/company/inspur-group-co-ltd-/posts/?feedView=videos* (last accessed Sept. 9, 2024). Discovery also will show that archived versions of Inspur Group's website—which changed dramatically following its placement on the banned entities list—touted its "R&D center," and "bases and plants" in America. Ex. H. The same website also directed U.S. customers to purchase Inspur-branded products via "Inspur Systems, Inc. (US Main Office)" in Milpitas, California, which the site identified as the Inspur Group's "Inspur Overseas Office" in North America. Ex. G. North American customers could use a toll-free 1-800 phone number or email sales@inspursystems.com. *Id*. Discovery also will disprove the declaration's attestation that "Inspur Group has not shared a physical office with the other Defendants." ECF No. 84-1 at ¶ 16. Just days after Inspur Group was placed on the U.S. Department of Commerce Entity List, IEIT Systems changed its Chinese address so that it was no longer the same as Inspur Group's address. Ex. I.

Thus, the Court should deny Inspur Group's motion. However, to the extent the Court finds more information is required to decide the motion, the Court should grant HPE the opportunity to conduct jurisdictional discovery. *See Nuance Comm'n Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235-1236 (Fed. Cir. 2010) (reversing denial of request for jurisdictional discovery because evidence on the record showed that foreign defendant was "more than a holding company"); *Nuance*, 2011 WL 1659574 at * 3-5 (on remand denying motion to dismiss after jurisdictional discovery).

### 2. Inspur Group's Declaration Does Not Controvert the Well-Pleaded Allegations In HPE's Complaint.

The self-serving declaration of Inspur Group's employee contains numerous gaps and cannot controvert evidence pled in the Complaint that directly links Inspur Group to infringing acts. The declaration sweepingly denies infringing activities but does not specify whether its statements are true for the entire damages period starting six years prior to filing the Complaint. The declaration concedes that Inspur Group controls the *inspur.com* website and claims that website does not provide a means for customers to purchase products. ECF No. 84-1 at ¶ 12. But the declaration ignores that archived versions of the *inspur.com* website provide a phone number and contact information for sales. *Id.*; Ex. G. The declaration carefully states that "other Defendants have not been shareholders of Inspur Group" but ignores that Inspur Group is the ultimate parent corporation of the other defendants. ECF No. 84-1 at ¶ 19; ECF. No. 1, Ex. 13 at 132.

Moreover, the declaration claims that Inspur Group has "not authorized any sellers or sales representatives for any of the Accused Products," contradicting the fact that Inspur Group licensed its INSPUR trademark to the other Inspur Defendants. ECF. No. 1 at ¶ 26. That license apparently includes the right for Inspur Defendants to hold themselves out as INSPUR and to sell and offer for sale INSPUR products, since the Inspur Defendants have repeatedly done so, as described above. However, Inspur Group failed to produce its trademark license agreements in response to discovery requests served two months ago, so Inspur Group has failed to corroborate what it has purportedly "authorized." The declaration is further contradicted by the well-documented sales efforts of Inspur Group and its subsidiaries at industry trade shows. *Id.* at ¶¶ 21-22; *https://www.linkedin.com/company/inspur-group-co-ltd-/posts/?feedView=videos*.

Inspur Group's claim that it "does not charge or collect payment" from its subsidiaries for using the INSPUR trademark does not shield Inspur Group from personal jurisdiction. ECF No. 84-1 at ¶ 26; ECF No. 84 at 7-8. "Courts have held that a defendant's act of filing a trademark registration is an intentional act that supports personal jurisdiction." *Alejandro Fernandez Tinto Pesquera, S.l v. Fernandez Perez*, C.A. No. 20-2128-LHK, 2021 WL 254193, at *10 (N.D. Cal.

Jan. 26, 2021); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, C.A. No. 12-2582 CW, 2012 WL 2343670, at *11 (N.D. Cal. June 20, 2012) ("Kung's filing a trademark registration application...is an intentional act of purposeful direction...."); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (concluding that a defendant's application for a trademark registration was a substantial contact supporting personal jurisdiction). Further, Inspur Group claims it "does not control the business of the other Defendants," but U.S. trademark law requires monitoring of the quality of goods that a licensee produces under a trademark, lest the trademark be abandoned. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010). This fact alone indicates Inspur Group must exert some control over its subsidiaries' use of the INSPUR trademarks, either in a trademark agreement or via ancillary agreements regarding product specifications and support.

The Inspur Defendants' pervasive use of Inspur Group's INSPUR trademark to market and sell infringing products is only one of many reasons Inspur Group is subject to personal jurisdiction in this District. Thus, the cases cited by Inspur Group are inapposite. ECF No. 84 at 7. Unlike HPE's Complaint, the plaintiff in *Afifeh v. Ahmadabadi* provided no evidence supporting personal jurisdiction other than a trademark registration. C.A. No. 22-928-CB-AFM, 2022 WL 1060638, *6 (C.D. Cal. Apr. 1, 2022). And unlike the allegations in *Diece-Lisa Industry Inc. v. Disney Enterprises, Inc.*, HPE does not rely solely on licensee trademark activity to establish personal jurisdiction against Inspur Group. 943 F.3d 239, 253 (5th Cir. 2019). Rather, the widespread use of the INSPUR trademark to sell and offer for sale infringing products is only part of the Complaint allegations tying Inspur Group to California.

In sum, while the Inspur Group's declaration may raise factual disputes, those disputes must be resolved in HPE's favor at the pleading stage. The Court should deny Inspur Group's motion or grant HPE leave to conduct discovery as to the issue of personal jurisdiction over Inspur Group. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

/////

/////

/////

### 3. Inspur Group Has Not Shown That The Court's Exercise Of Jurisdiction Would Be Unreasonable, Contrary To Fair Play And Substantial Justice.

As established above, HPE has made a *prima facie* showing that minimum contacts with the forum exist. *Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). Where the necessary minimum contacts exist, the court determines whether the exercise of personal jurisdiction is reasonable under the multi-factor test that weighs (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. *Id.* (citing *Volkswagen*, 444 U.S. at 292).

Inspur Group's conclusory and unsupported assertion that it "has virtually no presence in the United States" is insufficient to merit deviation from the Federal Circuit's ruling in *Patent Rights Protection Grp.*, 603 F.3d at 1370, which found the district court erred in declining to exercise personal jurisdiction over out-of-state defendants that had marketed, used, and offered for sale accused products in the forum, and also claimed to have no agents, manufacturers, or employees in the state and only *de minimus* sales in the state. There, the Federal Circuit found that the defendants' presence at numerous trade shows in the forum demonstrated they would not face a particularly onerous burden of defending themselves in the forum state. *Id.* Here, Inspur Group's ties to California go beyond its attendance at trade shows in the state—its indirect subsidiaries Aivres and Betapex are headquartered here, and its INSPUR trademarks have been widely used in this forum at tradeshows, on accused products, and on building signs for other Inspur Defendants. ECF No. 1 at ¶¶ 11, 12, 39, 52, 57. Fair play and substantial justice do not allow Inspur Group to avoid the burden of litigating its infringing activities in this state while also enjoying the benefits of conducting business here.

The remaining factors also weigh in favor of adjudicating HPE's claims in this forum. HPE has a substantial interest in adjudicating this case in California due to its regular and established place of business here. *Id.* at ¶ 4. California has "a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger*

*King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985). Three of the six parties to this lawsuit (HPE, Aivres, and Betapex) reside in California, and the efficiency of the interstate judicial system is served by resolving claims against all Defendants in this single forum. HPE has been injured by Inspur Group' infringement of HPE patents, and California has an interest in discouraging these types of injuries. *See Beverly Hills*, 21 F.3d at 1568. California also has "definite and well-defined interests in commerce and scientific development." *Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 430 (Fed. Cir. 1996).

The burden on Inspur Group to litigate in this District is minimal, and Inspur Group has not identified any alternative district in the United States where the burden of litigation would be reduced. Although Inspur Group will have to travel from China to the United States and will also be required to submit itself to a foreign nation's judicial system, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Volkswagen,* 444 U.S. at 294. Under these circumstances, Inspur Group cannot make a "compelling case" that personal jurisdiction would violate "fair play and substantial justice." This case does not present "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills*, 21 F.3d at 1568.

**B. The Court Has Personal Jurisdiction Over Inspur Group Under Rule 4(k)(2).**

Although not discussed by Inspur Group, this Court also has personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293-94 (Fed. Cir. 2012).

The first requirement is that the plaintiff's claim arises under federal law, and HPE's claims for patent infringement indisputably do so. *See, e.g.*, ECF No. 1 at ¶¶ 80, 84-85, 89 (citing 35 U.S.C. §§ 271 and 284). Under the second requirement, the defendant is not subject to jurisdiction in any state's courts of general jurisdiction. A defendant can "avoid the application of

the rule only when it designates a suitable forum in which the plaintiff could have brought suit." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). Here, Inspur Group is not subject to jurisdiction in any state's courts of general jurisdiction because Inspur Group is incorporated and headquartered in China. ECF No. 84 at ¶ 2. Inspur Group also does not identify "a more appropriate state" for jurisdiction. *Touchcom*, 574 F.3d at 1413.

The third and final requirement is the due process analysis, which "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling Fluids*, 890 F.3d at 999 (quoting *Synthes*, 563 F.3d at 1295). In the *Synthes* case, the Federal Circuit determined that attendance at a trade show where allegedly infringing products were displayed and were attempted to be sold were sufficient to show that the defendant purposefully availed itself of the United States. 563 F.3d at 1297-1298. As established in Section A, HPE has pled far more contacts between Inspur Group and this forum that satisfy Rule 4(k)(2). All told, the Court's exercise of jurisdiction under Rule 4(k)(2) is reasonable.

### C. The Court Should Deny Inspur Group's Motion Under Rule 12(b)(6).

#### 1. HPE's Complaint Plausibly Alleges Direct Infringement.

HPE's Complaint plausibly alleges direct infringement by Inspur Group in the United States, and those allegations are not limited to offering products on a foreign, Chinese-language website, contrary to Inspur Group's claims. To be clear, an offer to sell on a foreign website can prove direct infringement. "An offer to sell is a distinct act of infringement separate from an actual sale," even if the offer is not accepted. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1308 (Fed. Cir. 2010). An offer to sell an infringing product "for delivery and use in the U.S. constitutes an offer to sell within the U.S." *Id.* at 1309. "Since the focus is on the location proposed for delivery, an offer made by a foreign company on a foreign website may be 'an offer to sell within the United States' if the company indicates a willingness to deliver the product to the United States." *Sound N Light Animatronics Co. v. Cloud b, Inc.*, C.A. No. 16-5271-GHK (JPRX), 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016). Therefore, the Inspur Group website written in Chinese, which Inspur Group

/////

highlights in its motion, is sufficient to support direct infringement. Regardless, the Complaint is not limited to Inspur Group's foreign website.

Here, the Complaint plausibly alleges that Inspur Group (and all Inspur Defendants) directly infringe all Asserted Patents because they have made, used, sold, or offered to sell infringing products in the United States, including the exemplary INSPUR-branded NF5180M5 ('566 patent), INSPUR ISPIM software ('671 patent), and INSPUR-branded NF5280M5 ('737 patent; '891 patent; '508 patent). As pled in the Complaint, Inspur Group owns the INSPUR trademark that appears on each of these infringing products sold in the United States. ECF. No. 1 at ¶¶ 38, 83, 96, 109, 122, 135. As of December 2023, a NF8480M6 server bearing the INSPUR trademark registered to Inspur Group was available for sale in the United States by Inspur Systems, Inc. (now known as Defendant Aivres). *Id.* at ¶ 39 (citing https://aivres.com/company; and https://aivres.com/contact-us/). The Complaint pleads that, after the Department of Commerce blacklisted Inspur Group, the INSPUR-branded IR5280M6 server sold by Inspur Group in the United States was rebranded the "Aivres" 5280M6 server for sale in the United States, but otherwise stayed the same. *Id.* at ¶ 42.

While Inspur Group now attempts to distance itself from the *inspurusa.com* website cited in the Complaint, that website first describes "Inspur group" and then, directly below that description, states that "Inspur ships its IT products and services to more than 113 countries and regions around the world"—including to the "Americas" with a dot placed on a map of the United States. ECF No. 1 at ¶ 37 (citing https://www.inspurusainc.com/inspur-history); *see also id.* at ¶ 41 (citing https://web.archive.org/web/20230604200933/https:/www.inspursystems.com/ (Under "Why Chose Inspur" stating "Global Supply Chain and Fulfillment"). These websites are written in English, not Chinese.

Infringement claim charts pled in the Complaint cite Inspur Group technical documents obtained from *inspur.com* and support that Inspur Group has been directly involved in the development, sale, and servicing of the INSPUR infringing products. ECF No. 1-1 at 70, 87, 113, 13, 142. For example, Inspur Group's technical documents cited in the Complaint repeatedly refer back to the English version of the main Inspur Group website (http://en.inpsur.com), offer

English-language support from Inspur Group engineers within two hours via both the Inspur Group e-mail (serversupport@inspur.com) and toll-free hotline numbers for U.S. callers, and subject Inspur-branded products to Inspur Group's commercial contract terms. *Id*. The same warranty language was on the now-archived *inspursystems.com* website cited in the Complaint, which directed customers to obtain product support by emailing Inspur Group's *inspur.com* domain: "serversupport**usa**@inspur.com." ECF No. 1 at ¶ 59 (emphasis added).

The Complaint further ties Inspur Group to the directly infringing activities of making, using, selling, and offering to sell the exemplary INSPUR infringing products in the United States. Inspur Group owns the INSPUR trademark. *Id*. at ¶ 38. U.S. trademark law requires monitoring of the quality of goods that a licensee produces under a trademark, lest the trademark be abandoned. *FreecycleSunnyvale*, 626 F.3d at 516. This fact alone indicates Inspur Group must exert some control over its subsidiaries' use of Inspur Group's INSPUR trademarks, and products sold in the United States with those trademarks.

While Inspur Group's declaration claims it has not "designed, developed, used, manufactured, sold, offered for sale, or imported" infringing products (ECF No. 1 at ¶ 13), the Court cannot consider that declaration in deciding a Rule 12(b)(6) motion. *See Khoja*, 899 F.3d at 998 (Court may only consider pleadings and documents incorporated by reference in pleadings); *Om Recs.*, 2024 WL 3049449, at *6 (explaining that a court may not consider on a Rule 12(b)(6) motion materials provided in support of a Rule 12(b)(2) motion).

In sum, because HPE's Complaint plausibly alleges that Inspur Group has engaged in infringing activities in the United States, including with respect to INSPUR-branded infringing products and the same products now rebranded Aivres, HPE has stated a claim for direct infringement against Inspur Group.

### 2. HPE's Complaint Properly Employs Group Pleading In A Selective Manner.

Inspur Group's argument that HPE "lumps" Defendants together is wrong and beside the point. ECF No. 84 at 11. Inspur Group ignores that the Complaint pleads facts supporting the close relationship between each of the Inspur Defendants, including Inspur Group, with respect to

the wrongful actions that form the basis of HPE's Complaint. ECF No. 1 at ¶ 15 (pleading facts including that "the Inspur Defendants are a group of related companies that alone or working in concert…infringe the HPE Asserted Patents" and specifying relationships between the Inspur Defendants); *see also id.* at ¶¶ 22-30 (describing the Inspur Defendants' Accused Products) & Ex. 13 (IEIT Systems "Semi-Annual Report" explaining corporate relationships).

Inspur Group also ignores that the Complaint pleads Inspur Group's and each of the Inspur Defendants' roles with respect to the Accused Products and alleged infringement. *Id.* at ¶ 31 & Ex. 11; *see also id.* at ¶¶ 36-37, 51, 65 (explaining each of the Inspur Defendants' roles with respect to the infringing products and alleged infringement). Allegations of individual activity by each Inspur Defendant including Inspur Group are incorporated by reference into each count of the Complaint. *Id.* at ¶¶ 79, 92, 105, 118, 131.

Thus, to the extent the complaint makes collective allegations regarding the "Inspur Defendants," this includes Inspur Group and is "not *per se* improper." *Slack v. Int'l Union of Operating Eng'gs*, C.A. No. 13-5001-EMC, 2014 WL 4090383, at *16 (N.D. Cal. Aug. 19, 2014). "[G]roup pleading may be permissible 'so long as group pleading is limited to defendants who are similarly situated.'" *Parity Networks, LLC v. Moxa Inc.*, C.A. No. 20-698-JVS, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020) (quoting *Bassam v. Bank of Am.*, 2015 WL 4127745 at *7 (C.D. Cal. July 8, 2015)). Here, the Inspur Defendants are all related corporate entities, and all allegations against the Inspur Defendants can reasonably be understood to be against each Inspur Defendant collectively and individually. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, C.A. No. 19-5784, 2021 WL 9763371, at *5 (N.D. Cal. Feb. 8, 2021) (J. Tigar) (rejecting argument that complaint should be dismissed for using group pleading), *opinion vacated in part on other grounds*, 2021 WL 11714935 (N.D. Cal. Dec. 7, 2021).

Further, the court in *Parity Networks v. Moxa Inc*. declined to dismiss a patent infringement complaint on the grounds of group pleading where the plaintiff "made allegations that delineate different roles for [each defendant] in the infringement." 2020 WL 6064636, at *3. That is exactly what HPE has done here. The Complaint alleges that Inspur Group has placed,

and is continuing to place, infringing products into the stream of commerce via an established distribution channel that includes Defendants IEIT Systems, Aivres, Betapex, Inspur USA, and Kaytus. ECF No. 1 at ¶ 36. In particular, the Complaint alleges that Inspur Group "ships its IT products and services to more than 113 countries and regions around the world," including to the United States. *Id.* at ¶ 37. The Complaint further alleges that Defendant IEIT Systems "places Accused Products … into the stream of commerce by importing them or causing them to be imported, in whole or in part, into the United States." *Id.* at ¶ 51. The Accused Products are sold in the United States by and through defendants Aivres and Kaytus. *Id.* at ¶¶ 22-30, 42, 74. Defendant Betapex, which is a wholly-owned indirect subsidiary of Defendant IEIT Systems, functions as a real estate investment company that owns facilities used by the Inspur conglomerate to conduct activities that infringe the HPE Asserted Patents, including manufacturing and sale of the Accused Products. *Id.* at ¶ 65. These allegations of individual activity by each defendant are incorporated by reference into each count of the complaint. *Id.* at ¶¶ 79, 92, 105, 118, 131. Thus, the Complaint puts each defendant including Inspur Group on notice of their particular infringing activity, including their willful and induced infringement.

The cases cited by Inspur Group do not dictate a different result. ECF No. 84 at 11. This Court rejected a defendant's group pleading argument and distinguished *Yu v. Design Learned, Inc.* on the grounds that it involved a *pro se* plaintiff asserting breach of contract and promissory estoppel claims over a failed construction project against seven defendants, including a corporation and individual employees. *See Celgard*, 2021 WL 9763371, at *5 (distinguishing *Yu v. Design Learned, Inc.*, C.A. No. 15-5345, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016)). The same reasoning applies here. In *Resh, Inc. v. Skimlite Mfg. Inc.*, the court dismissed infringement claims where the term "Defendants" could refer to any one of the named or unnamed defendants "*depending on the context in which it is used herein.*" 666 F. Supp. 3d 1054, 1059–60 (N.D. Cal. 2023) (emphasis in original). The allegations in HPE's Complaint do not impose any similar guessing based on context. Accordingly, the Court should deny Inspur Group's motion to dismiss on the grounds that the indirect and willful infringement claims use the term "Inspur Defendants."

### 3. HPE Adequately Alleges That Inspur Group Has Knowledge of the Asserted Patents and Infringement.

Inspur Group's motion wrongly disputes that the Complaint adequately alleges pre-suit knowledge to support induced and willful infringement claims. ECF No. 84 at 5-10. On the contrary, the Complaint plausibly alleges facts supporting that Inspur Group received actual or imputed pre-suit knowledge of the Asserted Patents and infringement through letters sent by HPE to Inspur Group's subsidiaries before filing the Complaint or was willfully blind to the same. Evidence of willful blindness (which Inspur Group ignores) is "sufficient to support a finding of…knowledge." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Willful blindness requires proof that "(1) the defendant … subjectively believe[s] that there is a high probability that a fact exists and (2) the defendant … take[s] deliberate actions to avoid learning of that fact." *Id.* at 769.

The Complaint plausibly states a claim for pre-suit knowledge of the asserted patents and infringement based on willful blindness or imputed knowledge because, among other things, HPE made multiple attempts to meet with the Inspur Defendants regarding their infringement of HPE's patents, listed the Asserted Patents, and specifically informed Inspur Group's subsidiaries about INSPUR-branded infringing products. On August 11, 2021, HPE sought meetings with Inspur through the U.S. and China Inspur "Contact Request" forms on the Inspur websites. ECF No. 1 at ¶ 31. HPE did not receive a response to either request. *Id.* Thereafter, HPE sent several notice letters to Inspur Group's subsidiaries IEIT Systems and Inspur Systems, Inc. (now Aivres). ECF No. 1 at ¶ 31 & Ex. 11. Each letter explained HPE's other attempts to contact the Inspur Defendants, described HPE's past patent enforcement activities, and described HPE's interest in a mutually beneficial agreement that would avoid the same outcome. *Id.* Indeed, HPE's February 4, 2022 letter to Inspur Systems (now Aivres), made clear that that HPE had made "a number of attempts to obtain a meeting with Inspur Electronic Information Co., Ltd., Inspur Systems Inc. or <u>any other related Inspur entity</u>." *Id.* (emphasis added). In closing, the February 4 letter identified all of the asserted patents, identified the Inspur products and services infringing the Asserted Patents, described a prior lawsuit to enforce the patents, and invited the Inspur Defendants to

discuss a potential licensing arrangement. *Id.*. The contents of the February 4 letter provided the Inspur Defendants with knowledge of the asserted patent and infringement sufficient to state a claim for indirect and willful infringement. *See, e.g.*, *Litebook Co., Ltd. v. Verilux, Inc.*, C.A. No. 22-1124-CJC (JDEX), 2023 WL 2733463, at *4 (C.D. Cal. Feb. 7, 2023); *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-CV-00967-ADA, 2022 WL 2705269, at *5, *7 (W.D. Tex. July 12, 2022).

The complaint adequately pleads that Inspur Group either had actual knowledge of the February 4 letter or was willfully blind to the same, given that the letter itself (attached as Complaint Exhibit 11): (1) was sent to at least three individuals that should have some duty to alert Inspur Group of potential litigation involving IEIT Systems, those individuals being the CEO of Inspur Systems (now "Aivres"), which is a wholly-owned subsidiary of IEIT Systems, which itself is a subsidiary of Inspur Group, Inspur Systems' agent for service of process, and Inspur Systems' counsel in other litigation; (2) expressly stated HPE's interest in obtaining a meeting "any other related Inspur entity"; (3) expressly described HPE's past attempts to contact "Inspur through the US and China Inspur 'Contact Request' forms; (4) expressly accused of infringement INSPUR-branded products sold and offered for sale in the United States; and (5) expressly accused of infringement the NF5180M5 product that is the same as the INSPUR-branded NF5180M6 sold by Inspur Group subsidiary IEIT Systems. ECF No. 1 at Ex. 11. Given that these notice letters were described and attached to the Complaint, and that this Court must draw all reasonable inferences in HPE's favor at this pleadings stage, Inspur Group's motion must be denied. *Philips N.V. v. TTE Tech., Inc.*, C.A. No. 20-1406-CJC (MRWX), 2020 WL 13302815, at *2 (C.D. Cal. Sept. 3, 2020).

Separately, HPE has adequately pleaded adequate pre-suit knowledge by Inspur Group by virtue of pleading that Aivres, a subsidiary of Inspur Group, had such knowledge. A subsidiary's knowledge of infringement can be attributable to a parent under certain circumstances. *See Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1458, 1460 (D. Del. 1987). For example, in *ACQIS LLC v. Lenovo Grp. Ltd.*, the court found that the plaintiff's pleadings sufficiently imparted knowledge on each of the Lenovo entities where a letter was directed to the Chairman and Chief Executive Officer of Lenovo Group Ltd. No. 6:20-CV-00967-ADA, 2022 WL 2705269, at *7

(W.D. Tex. July 12, 2022). Additionally, the pleadings detailed the plaintiff's allegations of "a multinational conglomerate that operates under the name 'Lenovo.'" *Id*. Similarly here, the complaint alleges that the February 4 letter was sent to Aivres, and Aivres "functions as the United States face of the Inspur conglomerate, including Defendants IEIT Systems, Inspur Group, and KAYTUS." ECF No. 1 at ¶ 56. Thus, for the same reasons as in *Lenovo*, the knowledge of Inspur Group's subsidiaries IEIT Systems and Inspur Systems (now "Aivres") should be imputed to all of the affiliates in the conglomerate, including Inspur Group.

#### 4. HPE's Complaint Supports Post-Suit Indirect And Willful Infringement Claims Against Inspur Group.

Citing to three motion to dismiss opinions from the same judge, Inspur Group wrongly contends that "the filing of the complaint cannot supply the required notice." ECF No. 84 at 10-11 (citing *Splunk Inc. v. Cribl, Inc*., 662 F. Supp. 3d 1029, 1036 (N.D. Cal. 2023); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022); *Dental Monitoring SAS v. Align Tech., Inc*., No. 22-7335, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023)).[2] Not all Courts in this District share the same minority view. Indeed, Inspur Group itself cites in support of its argument a case holding the <u>opposite</u> view that filing of a Complaint confers knowledge of a patent and infringement to support post-suit indirect and willful infringement claims. *See* ECF No. 84 at 10 (citing *Omnitracs, LLC v. Motive Techs., Inc*., C.A. No. 23-5261-RFL, 2024 WL 2886047, at *4 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss because the complaint itself can be the source of knowledge for post-suit willful and indirect infringement claims)).

Indeed, the *Omnitracs* court "agree[d] with the majority view" when it held that the plaintiff adequately alleged willful and indirect infringement of the asserted patents as of the filing of the complaint. *Id*.; *see also Apple Inc. v. AliveCor, Inc*., No. 22-CV-07608-HSG, 2023

---

[2] Inspur Group's citation to *VLSI Tech*. is inapposite. ECF No. 84 at 10-11. In *VLSI Tech. LLC v. Intel Corp*., the court addressed the sufficiency of the evidence on a motion for summary judgment not the sufficiency of the allegations on a motion to dismiss. No. 17-5671, 2023 WL 8654391, at *31 (N.D. Cal. Dec. 14, 2023) (granting summary judgment because "VLSI's evidence does not create a genuine dispute of material fact that would preclude summary judgment of no willful or indirect infringement").

WL 4091287, at *2 (N.D. Cal. June 20, 2023) (following "the reasoning of the majority view" and allowing a patentee to assert a post-suit indirect infringement that relies on the complaint as the source of knowledge). As the *Omnitracs* court explained, a plaintiff can easily evade a formal requirement that the defendant have pre-suit knowledge by sending the defendant "a letter with same information [as the complaint] minutes before filing it." *Omnitracs*, 2024 WL 2886047, at *4. "It is illogical for [the defendant] to avoid liability simply because it instead learned of the patents from the Complaint itself." *Id.*; *see also ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, 2022 WL 611249, at *3 n.5 (D. Del. Feb. 7, 2022) (holding that complaint itself can support a post-suit willful infringement claim because there was "no meaningful difference" between the knowledge that the accused infringer received via a letter received on the same day as the complaint and the knowledge that it received from reviewing the original complaint); *Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) (acknowledging the split of authority and concluding that a party may maintain a claim for willful infringement made in an amended complaint if the accused infringer first gained knowledge of the patent from the original complaint).

For all of these reasons, the Court should adopt the majority view in holding that a well-pleaded Complaint can satisfy the knowledge requirements for willful and indirect infringement claims. Inspur Group's motion to dismiss HPE's post-suit willful and indirect infringement claims should be denied as a result.

## V. CONCLUSION

For the reasons set forth above, the Court should deny Inspur Group's motion to dismiss under Rule 12(b)(2). To the extent this Court finds additional facts are required to determine whether Inspur Group should be subject to personal jurisdiction in this District, HPE requests leave to take jurisdictional discovery. The Court also should deny Inspur Group's motion to dismiss indirect and willful infringement claims under Rule 12(b)(6) or, in the alternative, grant HPE leave to amend its Complaint.

Dated: September 9, 2024

Respectfully submitted,


By: _/s/ Sean C. Cunningham_

Sean C. Cunningham (Bar No. 174931)
sean.cunningham@us.dlapiper.com
Erin P. Gibson (Bar No. 229305)
erin.gibson@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401

Brent K. Yamashita (Bar No. 206890)
Brent.Yamashita@us.dlapiper.com
**DLA PIPER LLP (US)**
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

Helena D. Kiepura (*pro hac vice*)
helena.kiepura@us.dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000

Amy Lydon (*pro hac vice*)
Amy.Lydon@us.dlapiper.com
Claire Schuster (*pro hac vice)*
Claire.schuster@us.dlapiper.com
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100

Michael L. Burns (*pro hac vice*)
michael.burns@us.dlapiper.com
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301

Stephanie M. Piper (*pro hac vice)*
stephanie.piper@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone: (212) 335-4726
Facsimile: (212) 884-8526

Angela C. Whitesell (*pro hac vice*)
angela.whitesell@us.dlapiper.com
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341

Aima Mori (*pro hac vice*)
aima.mori@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606
Telephone: (312) 251-5710
Facsimile: (312) 236-7516

Michael Saulnier (*pro hac vice*)
Michael.saulnier@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado St., Suite 3000
Austin, TX 78701
Telephone: (512) 457-7234
Facsimile: (512) 721-2234

*Attorney for Plaintiff Hewlett Packard Enterprise Company*