Kevin W. Kirsch, SBN 166184
kkirsch@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215-4138
T: 614-228-1541
F: 614-462-2616

Attorney for Defendant
INSPUR GROUP CO., LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY<br><br>Plaintiff<br><br>v.<br><br>INSPUR GROUP CO., LTD., et al.<br><br>Defendants | Case No. 4:24-cv-02220-JST<br><br>**INSPUR GROUP CO., LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), OR ALTERNATIVELY UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Hearing Date: October 17, 2024<br>Hearing Time: 2:00 p.m.<br>Location: Videoconference |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................... 1
II. ARGUMENT .................................................................... 2
A. The Court lacks personal jurisdiction over Inspur Group. .................. 2
1. Inspur Group has not delivered any Accused Products into the California or United States "stream of commerce." ............ 2
a. No "technical documents" support HPE's allegations..... 3
b. No contact information supports HPE's allegations. ....... 3
c. No trademark supports HPE's allegations. ...................... 4
d. No "distribution channel" supports HPE's allegations. ....................................................... 5
2. HPE's fallback argument under Rule 4(k)(2) fails for the same reasons its "stream of commerce" argument fails. ........... 6
3. HPE is not entitled to jurisdictional discovery. ......................... 7
B. Even if the Court had personal jurisdiction over Inspur Group, HPE's claims would still fail. ............................................... 8
1. HPE fails to plausibly allege direct infringement. .................... 8
2. HPE fails to plausibly allege indirect and willful infringement. ..................................................................... 11
3. HPE should be denied leave to amend. .................................. 12
III. CONCLUSION .................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
No. 20-967, 2022 WL 2705269 (W.D. Tex. July 12, 2022) .............................. 11

*Aetna Cas. & Sur. Co. v. Watercloud Bed Co.*,
No. 88-200, 1988 WL 252578 (C.D. Cal. Nov. 17, 1988).................................. 10

*Afifeh v. Ahmadabadi*,
No. 22-928, 2022 WL 1060638 (C.D. Cal. Apr. 1, 2022) .................................... 4

*Afros S.P.A. v. Krauss-Maffei Corp.*,
671 F. Supp. 1458 (D. Del. 1987) ....................................................................... 11

*Alejandro Fernandez Tinto Pesquera, S.L v. Fernandez Perez*,
No. 20-2128, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021) .................................. 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ............................................................................... 1

*Briskin v. Shopify Inc.*,
No. 21-6269, 2022 WL 1427324 (N.D. Cal. May 5, 2022) .................................. 8

*Celgard, LLC v. Shenzhen Senior Tech. Material Co.*,
No. 19-5784, 2020 WL 1548513 (N.D. Cal. Mar. 5, 2020).................................. 1

*Cottle v. W. Skyways Inc.*,
No. 17-49, 2017 WL 1383277 (E.D. Cal. Apr. 18, 2017)..................................... 4

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .................................................................................. 4

*Dental Monitoring SAS v. Align Tech., Inc.*,
No. 22-7335, 2023 WL 4297570 (N.D. Cal. June 30, 2023) ............................. 12

*Dymatize Enters. v. Reflex Nutrition Ltd.*,
No. 07-907, 2008 WL 161021 (N.D. Tex. Jan. 17, 2008) .................................... 3

*Foskaris v. Experian Info. Sols., Inc.*,
808 F. App'x 436 (9th Cir. 2020) ... 13
*L.A. Gear, Inc. v. E.S. Originals, Inc.*,
859 F. Supp. 1294 (C.D. Cal. 1994) ... 10
*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ... 7
*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) ... 12
*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ... 7
*Monster Cable Prods., Inc. v. Euroflex S.R.L.*,
642 F. Supp. 2d 1001 (N.D. Cal. 2009) ... 4
*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) ... 7
*New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*,
847 F. Supp. 1452 (N.D. Cal. 1994) ... 10
*Resh, Inc. v. Skimlite Mfg. Inc.*,
666 F. Supp. 3d 1054 (N.D. Cal. 2023) ... 8
*Software Rsch., Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018) ... 11
*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022) ... 12
*Sound N Light Animatronics Co. v. Cloud b, Inc.*,
No. 16-5271, 2016 WL 7635950 (C.D. Cal. Nov. 10, 2016)) ... 9
*Splunk Inc. v. Cribl, Inc.*,
662 F. Supp. 3d 1029 (N.D. Cal. 2023) ... 12
*Stewart v. Screen Gems–EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) ... 9

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
No. 12-2582, 2012 WL 2343670 (N.D. Cal. June 20, 2012) .............................. 4

*Valinge Innovation AB v. Halstead New England Corp.*,
No. 16-1082, 2018 WL 2411218 (D. Del. May 29, 2018),
*R. & R. adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018) .......................... 12

*Yu v. Design Learned, Inc.*,
No. 15-5345, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ............................... 8

**Rules**

Federal Rule of Civil Procedure 4(k)(2) ............................................................. 6, 7

Federal Rule of Civil Procedure 12(b)(2) ........................................................... 2, 13

Federal Rule of Civil Procedure 12(b)(6) .................................................. 2, 8, 9, 13

## I. INTRODUCTION

HPE concedes that the Court lacks *general* personal jurisdiction over Inspur Group. (*See* ECF No. 92 at 1.) So HPE's claims against Inspur Group must be dismissed unless the Court has *specific* personal jurisdiction over Inspur Group. The only *specific* personal jurisdiction theory alleged in HPE's complaint is a "stream of commerce" theory. (*See id.*; ECF No. 1 ¶ 36.) This theory requires HPE to show that Inspur Group placed the Accused Products[1] into the stream of commerce, knowing that the products were destined for California. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994); *Celgard, LLC v. Shenzhen Senior Tech. Material Co.*, No. 19-5784, 2020 WL 1548513, at *5 (N.D. Cal. Mar. 5, 2020). HPE fails to plead, let alone prove, that Inspur Group did this. Inspur Group has offered unequivocal, uncontroverted sworn testimony that Inspur Group does not manufacture, use, ship, distribute or sell the Accused Products, let alone do so in the United States.

Indeed, HPE hardly pleads any facts about Inspur Group at all. HPE readily admits that its complaint "Employs Group Pleading." (ECF No. 92 at 17.) In other words, "the complaint makes collective allegations" about all Defendants instead of making individual allegations about Inspur Group. (*Id.* at 18.) HPE tries to cobble together pieces of exhibits to the complaint to prop up its jurisdictional allegations. But none of the exhibits show that Inspur Group took any action directed toward California or anywhere else in the United States. At most they show that some other Defendants distributed and sold the Accused Products. HPE's allegations fail to impute other Defendants' actions to Inspur Group. HPE admits, for example, that it alleges no facts imputing other companies' actions to Inspur Group "under an agency or alter ego theory." (*Id.* at 8.) And HPE offers no reason to believe that jurisdictional discovery would fix its complete lack of jurisdictional facts. HPE's claims against

[1] "Accused Products" has the same meaning as in Inspur Group's opening brief. (ECF No. 84 at 3.)

Inspur Group should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

Alternatively, HPE's claims against Inspur Group should be dismissed under Rule 12(b)(6) for failure to state a claim. HPE's "Group Pleading" fails to plausibly allege direct infringement, HPE's references to "Inspur" (not "Inspur Group") trademarks and documents do not save the "Group Pleading," and HPE's indirect and willful infringement claims lack any allegations that Inspur Group knew of the patents and the alleged infringement. HPE does not explain how an amended complaint would fix these problems, so its claims should be dismissed without leave to amend.

Under Rule 12(b)(2), or alternatively under Rule 12(b)(6), Inspur Group's motion to dismiss should be granted.

## II. ARGUMENT

### A. The Court lacks personal jurisdiction over Inspur Group.

HPE's "stream of commerce" theory of specific personal jurisdiction, including its contention that applying the theory would not be unreasonable, assumes that "Inspur Group Knowingly Delivers Products to California And The U.S. Server Market At Large." (ECF No. 92 at 7.) But this is plainly wrong and unequivocally rebutted by Inspur Group's sworn testimony. HPE's exhibits do not suggest otherwise. And no amount of jurisdictional discovery can change that Inspur Group has never made, used, sold, offered for sale or imported for sale any of the Accused Products, much less delivered them into the California or United States "stream of commerce."

#### 1. Inspur Group has not delivered any Accused Products into the California or United States "stream of commerce."

In addition to the conclusory allegations in the complaint, HPE tries to establish "stream of commerce" jurisdiction by citing miscellaneous excerpts from the complaint's exhibits. (*See id.* at 7–10.) But nothing in the complaint or exhibits sup-

ports HPE's speculation that "Inspur Group Knowingly Delivers Products To California And The U.S. Server Market At Large." (*Id.* at 7.) In fact, Inspur Group has not[2] delivered any Accused Products anywhere, let alone in the United States. Xu Decl. ¶ 4. HPE's scattershot references to purported Inspur Group "technical documents," contact information, trademarks, and "distribution channels" do not support HPE's speculation.

**a. No "technical documents" support HPE's allegations.**

HPE repeatedly cites what it calls "Inspur Group's technical documents." (*E.g.*, ECF No. 92 at 7) (citing ECF Nos. 92-2–92-7). But those are not Inspur Group's documents at all. Inspur Group has not drafted, written and revised any technical documents or specifications for the Accused Products. Xu Decl. ¶ 5. Mere reference to other companies' product information on one's website does not render the information one's own and does not confer personal jurisdiction. *See Dymatize Enters. v. Reflex Nutrition Ltd.*, No. 07-907, 2008 WL 161021, at *6 & n.33 (N.D. Tex. Jan. 17, 2008) (finding no personal jurisdiction over operator of website that directed visitors to third-party vendors).

**b. No contact information supports HPE's allegations.**

HPE cites what it purports to be "Inspur Group" email addresses and telephone numbers aimed at United States customers. (ECF No. 92 at 7, 10.) But the cited email addresses are not owned and controlled by Inspur Group and Inspur Group plays no role in managing calls to or from these numbers. Xu Decl. ¶¶ 6–8. As Inspur Group explained in its opening brief, Inspur Group has not had a telephone number in California or anywhere else in the United States. (ECF No. 84-1 ¶ 7.)

HPE also tries to dispute Inspur Group's sworn testimony that inspur.com "has not provided a means for customers in the United States to order or purchase

[2] HPE appears to argue that, when Inspur Group says it "has not" done something, Inspur Group "does not specify whether its statements are true for the entire damages period starting six years prior to filing the Complaint." (ECF No. 92 at 11.) To be clear, when Inspur Group says it "has not" done something, Inspur Group means that it has never done that thing at any time from 2018 to the present. Xu Decl. ¶ 3.

products." (*Id.* ¶ 12.) According to HPE, inspur.com once "provide[d] a phone number and contact information for sales." (ECF No. 92 at 11.) Even if this were true, it would be irrelevant. A website that merely provides contact information is a "passive" website that cannot confer personal jurisdiction. *Cottle v. W. Skyways Inc.*, No. 17-49, 2017 WL 1383277, at *6 (E.D. Cal. Apr. 18, 2017) (citing, among other cases, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). HPE cannot rely on inspur.com for personal jurisdiction over Inspur Group.

**c. No trademark supports HPE's allegations.**

HPE appears to have abandoned its argument that Inspur Group's mere "hold[ing]" of U.S. trademarks somehow confers specific jurisdiction. (ECF No. 1 ¶ 38.) After all, "[t]he law is clear that federal trademark registration does not confer personal jurisdiction upon the registrant." *Afifeh v. Ahmadabadi*, No. 22-928, 2022 WL 1060638, at *6 (C.D. Cal. Apr. 1, 2022) (collecting cases).[3]

HPE newly argues that the trademarks "plausibly" show "it is Inspur Group speaking when the Inspur USA website says, 'Inspur ships its IT products and services to more than 113 countries and regions around the world.'" (ECF No. 92 at 8) (citing ECF No. 84 at 7; ECF No. 1 ¶ 37.) But there is no proof of this speculation. Xu Decl. ¶ 9. Inspur Group has not shipped any accused products anywhere in the world. *Id.* Publicly available import records corroborate the declaration provided by Inspur Group—there is no record of Inspur Group importing any product into the U.S. at least since 2018. Kirsch Decl. ¶ 10. For these reasons, too, the trademarks do not confer specific jurisdiction.

[3] HPE's cited cases are not to the contrary. (*See* ECF No. 92 at 11–12) (citing *Alejandro Fernandez Tinto Pesquera, S.L v. Fernandez Perez*, No. 20-2128, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-2582, 2012 WL 2343670 (N.D. Cal. June 20, 2012); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009)). Those cases were trademark infringement cases, not patent infringement cases, so trademark registration was highly relevant to personal jurisdiction. And none of the plaintiffs in those cases asserted personal jurisdiction under a "stream of commerce" theory.

#### d. No "distribution channel" supports HPE's allegations.

Finally, HPE makes a catchall argument that Inspur Group has placed Accused Products into the stream of U.S. commerce through "established distribution channels." (ECF No. 92 at 8.) HPE concedes that "more than a mere website" is required to show that such channels exist. (*Id.* at 9.) But HPE fails to show more than a mere website. All of HPE's non-website allegations are incorrect:

**i.** HPE alleges that "Inspur Group manufactures[] and sells" the Accused Products. (ECF No. 92 at 9.) This allegation is incorrect. Inspur Group has neither manufactured nor sold any Accused Product. Xu Decl. ¶¶ 10–11.

**ii.** HPE alleges that "Inspur Group itself touts that it 'ships its IT products and servers . . . around the world,' including to the United States." (ECF No. 92 at 9.) As explained above, Inspur Group has not shipped any Accused Products anywhere in the world, including to the United States. Xu Decl. ¶ 9. Publicly available import records corroborate the declaration provided by Inspur Group—there is no record of Inspur Group importing any product into the U.S. at least since 2018. Kirsch Decl. ¶ 10.

**iii.** HPE alleges that Inspur Group's "distribution channel" is "composed entirely of its own subsidiaries." (ECF No. 92 at 9) (citing ECF No. 1 ¶¶ 15, 46, 77). This allegation is incorrect. Based on HPE's own allegations, the distribution channel consists of *IEIT* and *IEIT's* "indirect subsidiaries." (ECF No. 1 ¶ 15.) HPE alleges that IEIT "is one of three listed Chinese companies that comprise Defendant Inspur Group." (*Id.*) Inspur Group is a shareholder of IEIT, but it does not control IEIT's business. Xu Decl. ¶ 12.

**iv.** HPE alleges that "Inspur Group's LinkedIn page features a video showing it attended many industry conferences in the U.S [sic] . . . ." (ECF No. 92 at 10) (citing https://www.linkedin.com/company/inspur-group-co-ltd-/posts/?feedView=videos, "Inspur and NVIDIA are ushering in a new era of AI."). This allegation is incorrect. The video names four conferences hosted by NVIDIA: GPU Technology

Conference 2017 ("GTC 2017"), Supercomputing Conference 2018 ("SC 2018"), GPU Technology Conference 2019 ("GTC 2019"), and GPU Technology Conference 2020 ("GTC 2020"). Inspur Group, *Inspur and NVIDIA are ushering in a new era of AI*, LinkedIn, https://tinyurl.com/3pv4knjv, (last visited Sept. 16, 2024). No one from Inspur Group attended any of these conferences on behalf of Inspur Group. Xu Decl. ¶ 13.

**v.** HPE alleges that Inspur Group had an "R&D center," "bases and plants," and a physical office in "America." (ECF No. 92 at 10.) This allegation is incorrect. As Inspur Group showed in its opening brief, Inspur Group has not had a physical location in California or anywhere else in the United States and has not owned or leased any property in the United States. (ECF No. 84-1 ¶ 6.)

**vi.** HPE claims that it can "disprove" Inspur Group's sworn testimony that "Inspur Group has not shared a physical office with the other Defendants." (ECF No. 92 at 10) (citing ECF No. 84-1 ¶ 16). Specifically, HPE alleges that Inspur Group's physical address used to be "the same as" IEIT's physical address. (*Id.*) This allegation is incorrect. If Inspur Group and IEIT ever had the same physical address, that was because the address applies to an entire industrial park that hosts multiple companies. Xu Decl. ¶ 14. Inspur Group and IEIT have never shared a physical office. *Id.*

**2. HPE's fallback argument under Rule 4(k)(2) fails for the same reasons its "stream of commerce" argument fails.**

As a fallback to its "stream of commerce" argument, HPE argues that "this Court also has personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2)." (ECF No. 92 at 14.) HPE did not plead Rule 4(k)(2) jurisdiction in its complaint, which is why that rule was "not discussed" in Inspur Group's motion to dismiss. (*Id.*) In any event, Rule 4(k)(2) does not confer personal jurisdiction over Inspur Group.

To plead personal jurisdiction under Rule 4(k)(2), a plaintiff must plausibly allege (among other things) that Inspur Group has "sufficient contacts with the

United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). HPE's arguments for sufficient contacts with the United States are the same as its "stream of commerce" arguments. (*See* ECF No. 92 at 15) ("As established in Section A, HPE has pled far more contacts between Inspur Group and this forum that satisfy Rule 4(k)(2)."). So HPE's Rule 4(k)(2) arguments fail for the same reasons why its "stream of commerce" arguments fail.

### 3. HPE is not entitled to jurisdictional discovery.

HPE hedges its jurisdictional allegations by making a one-sentence request for jurisdictional discovery:

> However, to the extent the Court finds more information is required to decide the motion, the Court should grant HPE the opportunity to conduct jurisdictional discovery.

(ECF No. 92 at 10.) This generic request should be denied.

A plaintiff's request for jurisdictional discovery should be denied when the defendant has "specifically rebutted" the plaintiff's jurisdictional allegations and the plaintiff has not "provid[ed] any affidavit or evidence substantiating [its] request[] or describ[ed] with any precision how such discovery could be helpful to the Court." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022). A "single conclusory sentence," lacking any "indication of what facts might be developed through discovery," is not enough. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022). Because Inspur Group has rebutted HPE's jurisdictional allegations, and because HPE's request for jurisdictional discovery consists of a single conclusory sentence, HPE's request should be denied.

### B. Even if the Court had personal jurisdiction over Inspur Group, HPE's claims would still fail.

Even if the Court had personal jurisdiction over Inspur Group, HPE's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[4] HPE fails to plausibly allege direct, indirect, or willful infringement by Inspur Group.

#### 1. HPE fails to plausibly allege direct infringement.

HPE admits that it "Employs Group Pleading" in its direct infringement allegations. (ECF No. 92 at 17.) In other words, "the complaint makes collective allegations" of direct infringement by all "Inspur Defendants" instead of making individual allegations about Inspur Group. (*Id.* at 18.) Worse, HPE admits that "*all allegations* against the Inspur Defendants can reasonably be understood to be against *each Inspur Defendant* collectively and individually." (*Id.*) (emphasis added). This group pleading includes allegations of Inspur Group "acting in concert with" (ECF No. 1 ¶ 35) Inspur USA Inc.—a Defendant that HPE has voluntarily dismissed from this case. (ECF No. 89.) The lack of individual allegations about Inspur Group renders HPE's direct infringement claims against Inspur Group implausible. *See Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023); *Briskin v. Shopify Inc.*, No. 21-6269, 2022 WL 1427324, at *3 (N.D. Cal. May 5, 2022); *Yu v. Design Learned, Inc.*, No. 15-5345, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016).

Urging an exception to the general rule against group pleading, HPE argues that its allegations "do not impose . . . guessing" as to which Defendants took which actions because they include "allegations of individual activity by each defendant." (ECF No. 92 at 19.) According to HPE's complaint, however, Inspur Group's only "individual activity" is "'ship[ping] its IT products and services to more than 113 countries and regions around the world,' including to the United States." (*Id.*) (quoting ECF No. 1 ¶ 37). As explained above, HPE derives this allegation from a statement on the website of Inspur USA, a defendant that HPE has voluntarily dismissed.

[4] Inspur Group only makes these arguments in the alternative should the Court find that it has personal jurisdiction over Inspur Group.

(ECF No. 1 ¶ 37.) Inspur Group has not shipped any IT products or services anywhere in the world. Xu Decl. ¶ 9. Publicly available import records corroborate the declaration provided by Inspur Group—there is no record of Inspur Group importing any product into the U.S. at least since 2018. Kirsch Decl. ¶ 10. HPE's purported "individual" allegation against Inspur Group has nothing to do with Inspur Group.

Contrary to HPE's argument (ECF No. 92 at 17), the Court may consider these facts on Inspur Group's Rule 12(b)(6) motion. On a Rule 12(b)(6) motion, the Court may consider materials outside the complaint when they are "referenced in *or* relied on in the complaint *or* central to [p]laintiff's claims." *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d 938, 952 (N.D. Cal. 2015) (emphasis added). Inspur USA's website is referenced in the complaint *and* relied on in the complaint *and* central to HPE's claims. The Court may and should consider that HPE relies on Inspur USA's website, not Inspur Group's website, and that there is no support that the website describes Inspur Group's own activities.

HPE fails to identify any other relevant "individual activity" by Inspur Group. (ECF No. 92 at 19.) HPE agrees with Inspur Group that *Sound N Light* states the relevant legal standard. (*Compare* ECF No. 84 at 9–10 *with* ECF No. 92 at 15) (both citing *Sound N Light Animatronics Co. v. Cloud b, Inc.*, No. 16-5271, 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016)). Under *Sound N Light*, a website is not infringing unless "U.S. residents were able to purchase the [accused] product through the website" and an offer for sale on the website "was in some way directed at U.S. residents." 2016 WL 7635950, at *4. HPE neither alleges in its complaint nor shows in its brief that Inspur Group's website has met either of these requirements.

HPE's remaining direct infringement arguments largely depend on its allegations that Inspur Group's trademark, for the word "Inspur," appears on other Defendants' Accused Products. (ECF No. 92 at 16–17.) But the alleged presence of this

trademark is irrelevant to direct infringement unless Inspur Group exercised "sufficient control" over the other Defendants' products. *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1299 (C.D. Cal. 1994). HPE pleads no facts in support of this control. HPE simply assumes that, because U.S. trademark law requires some "monitoring of the quality of goods that a licensee produces under a trademark," Inspur Group "must exert some control" over the other Defendants' products. (ECF No. 92 at 17.) Whether Inspur Group *theoretically* exerts "*some* control" over product quality is a far cry from whether Inspur Group *actually* exerts "*sufficient* control" over other Defendant or their products. If "some" theoretical control over product quality were enough to prove direct infringement, then a trademark licensor would always be liable for patent infringement by its licensees. But that is not the law. *See L.A. Gear*, 859 F. Supp. at 1299 ("[T]rademark license agreements do not in and of themselves create an agency relationship . . . ."). The "Inspur" trademark does not support direct infringement by Inspur Group.

Finally, HPE argues that "Inspur Group technical documents" support direct infringement. (ECF No. 92 at 16.) According to HPE, these documents advertise Inspur Group's contact information and "commercial contract terms." (*Id.* at 16–17.) HPE is wrong. These documents do not advertise Inspur Group's information. Xu Decl. ¶ 15. Regardless, these documents are not evidence of direct infringement. "Only the unauthorized making, using or selling of a patented invention constitutes infringement . . . . [T]he mere advertising of a potentially infringing device does not itself constitute infringement." *New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*, 847 F. Supp. 1452, 1456 (N.D. Cal. 1994). So "advertising activities alone will not state a patent infringement claim unless coupled with allegations that the defendant manufactured or sold an infringing product." *Aetna Cas. & Sur. Co. v. Watercloud Bed Co.*, No. 88-200, 1988 WL 252578, at *4 (C.D. Cal. Nov. 17, 1988). As shown above, HPE makes no plausible allegations that Inspur Group has manufactured or sold an Accused Product. In fact, Inspur Group has unequivocally demonstrated

through sworn testimony and public records—which are unrebutted—that it has not manufactured or sold any Accused Products. Xu Decl. ¶¶ 10–11. For all these reasons, HPE fails to plead direct infringement.

**2. HPE fails to plausibly allege indirect and willful infringement.**

HPE concedes that its indirect and willful infringement claims require it to show that Inspur Group had "pre-suit knowledge of the asserted patents and infringement." (ECF No. 92 at 20.) HPE also concedes that Inspur Group did not directly receive this knowledge. (*See id.*) HPE instead argues that this knowledge should be "imputed" to Inspur Group through the other Defendants, which HPE calls "Inspur Group's subsidiaries." (*Id.*)[5] HPE does not dispute that, to impute a subsidiary's knowledge to a parent, the plaintiff must "set out more than just the bare fact of the parent/subsidiary relationship." *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1134 (N.D. Cal. 2018). But here, HPE has not pleaded—and cannot plead—this bare fact. Inspur Group is a shareholder of Defendant IEIT, but does not control IEIT's business. Xu Decl. ¶ 12. And even if HPE could plead a parent/subsidiary relationship, it has not pleaded anything more. HPE simply lists communications that HPE made to other Defendants, and then announces without support that Inspur Group "should have" known about those communications. (ECF No. 92 at 21.) This speculation is not enough to plead knowledge.

HPE's two cited cases, both of which are from outside this jurisdiction, do not hold otherwise. (*See* ECF No. 92 at 21–22) (citing *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 20-967, 2022 WL 2705269, at *7 (W.D. Tex. July 12, 2022); *Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1458, 1460 (D. Del. 1987)). In those cases, the plaintiff tried to impute a parent company's knowledge to its subsidiaries. *See ACQIS*, 2022 WL 2705269, at *6; *Afros*, 671 F. Supp. at 1459. But here, HPE is trying

[5] HPE purports to separately argue a "willful blindness" theory of knowledge, but this theory also depends on information allegedly provided to "Inspur Group's subsidiaries." (ECF No. 92 at 20.)

to impute knowledge in the other direction: from Inspur Group's alleged subsidiaries to Inspur Group. HPE cites no law in support of its attempt to impute knowledge in this direction.

HPE's failure to plead pre-suit knowledge requires dismissal of HPE's entire indirect and willful infringement claims—whether based on pre-suit or post-suit infringement. *Dental Monitoring SAS v. Align Tech., Inc.*, No. 22-7335, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1036 (N.D. Cal. 2023); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022)). HPE does not dispute that, if its pre-suit knowledge allegations are defective, then the pre-suit portions of the claims should be dismissed. (*See* ECF No. 92 at 22.)

As for the post-suit portions of the claims, HPE argues that its complaint alone "can satisfy the knowledge requirements" for indirect and willful infringement (*Id.* at 23.) HPE claims that this argument reflects a "majority view" (*id.* at 22), but HPE's reasoning is outdated. The trend toward a pre-suit knowledge requirement has accelerated since a 2017 willful infringement case in which the Federal Circuit declined to rule "that it did not matter whether the alleged infringing conduct was entirely 'post-suit' conduct." *Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082, 2018 WL 2411218, at *11 (D. Del. May 29, 2018), *R. & R. adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018) (citing *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017)) (emphasis omitted) (dismissing willful infringement claim for lack of alleged pre-suit knowledge). HPE's complaint cannot satisfy the knowledge element of its pre-suit or post-suit indirect and willful infringement claims. HPE's indirect and willful infringement claims should be dismissed entirely.

**3. HPE should be denied leave to amend.**

HPE hedges its indirect and willful infringement allegations (but not its direct infringement allegations) by making a one-sentence request for leave to amend:

> The Court also should deny Inspur Group's motion to dismiss indirect and willful infringement claims under Rule 12(b)(6) or, in the alternative, grant HPE leave to amend its Complaint.

(ECF No. 92 at 23.) This generic request, like HPE's generic request for jurisdictional discovery, should be denied as conclusory. A request for leave to amend must "explain how [the plaintiff] would cure the deficiencies in his pleading." *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 440 (9th Cir. 2020). HPE's lack of explanation defeats its request for leave to amend.

## III. CONCLUSION

All of HPE's claims against Inspur Group should be dismissed for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), or alternatively for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

**BAKER & HOSTETLER LLP**

Dated: September 16, 2024

By: */s/ Kevin W. Kirsch*
Kevin W. Kirsch

Attorney for Defendant
INSPUR GROUP CO., LTD.